United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

640 OCTAVIA, LLC,

Plaintiff,

v.

KARL-HEINZ PIEPER,

Defendant.
________________________________________/

No. C 18-01047 WHA

**AMENDED ORDER RE MOTION TO DISMISS AND MOTION FOR PROVISIONAL RELIEF**

## INTRODUCTION

In this landlord-tenant dispute, defendant moves to dismiss for lack of subject-matter jurisdiction and plaintiff moves for provisional relief. For the reasons stated below, defendant's motion to dismiss is **HELD IN ABEYANCE**. Plaintiff's motion for provisional relief is **DENIED**.

## STATEMENT

Defendant Karl-Heinz Pieper works full time as an IT consultant. In 1993, he signed a residential lease for Apartment 3 at 640 Octavia Street, a four-unit building in San Francisco. Defendant has had a roommate throughout his tenancy. In 2003, Edward Kountze and his partner, Jean Boldan, moved into the building and occupied a first-floor apartment approximately three months per year. Kountze later purchased the building and transferred ownership to plaintiff 640 Octavia, LLC, a limited liability company registered in Wyoming (Dkt. No. 19-1).

In 2014, defendant's current roommate, JM, moved into defendant's apartment. JM now readily admits that throughout 2017 he regularly had approximately twenty theretofore

strangers met online over to his apartment for sex on a weekly basis, yet the reason for the frequent visitors remained a mystery to the landlord. In early 2017, a private investigator, Samuel Brown, began surveillance on defendant's apartment to document the frequency of JM's visitors and to try to prove defendant's possible criminal activity. Brown's primary surveillance method was a peep-hole camera installed across the hall from defendant's unit. The camera captured the upstairs common area leading to the front door of defendant's apartment but did not capture any other part of the building. The security camera's footage, however, never captured any illegal conduct by defendant or JM (Dkt. Nos. 18, 19-1, 19-2, 56).[1]

Brown also sent a second private investigator, Myra Mira, to JM's place of work. Mira posed as a customer at JM's hair salon and asked JM a series of questions regarding "drugs and partying." Although Mira intended to induce JM into making comments indicating that JM had access to drugs, JM only responded that he does not drink alcohol (Dkt. Nos. 56).

While the parties generally agree that a large number of guests visited defendant's unit throughout 2017, they sharply dispute the extent to which defendant and JM's visitors engaged in unlawful or threatening conduct in the building. Defendant and JM testified that they have not used or sold drugs, prostituted themselves, or engaged in any other illegal activity. They also declared under penalty of perjury that their guests do not engage in unlawful conduct (Dkt. Nos. 14, 19-1, 19-2, 56).

According to Kountze, by contrast, there have been multiple incidents with JM and defendant's guests. For example, Kountze testified that he once observed a man with a large plastic bag full of pill bottles looking for defendant's apartment. Kountze testified that on another occasion, he observed a man, evidently a visitor to Apartment 3, smoking marijuana in the building. Kountze further claimed that multiple of JM's guests had attempted to open the door to Kountze's apartment. At the Court's request, plaintiff submitted video surveillance which purportedly documented these incidents. But while footage from the security camera

---

[1] Kountze originally hired Brown to investigate Itamar Herzberg, another tenant who lived at 640 Octavia Street. Herzberg ended his tenancy shortly after Brown's investigation, at which point Kountze expanded Brown's assignment and directed Brown to obtain evidence to be used in evicting defendant (Dkt. No. 56 at 58:17–59:15).

United States District Court
For the Northern District of California

showed frequent visitors to defendant's apartment, the footage did not document drug use, sales, or prostitution. Nor did the videos document any individual holding a bag of pills or attempting to enter Kountze's apartment. While the video surveillance showed one individual smoking in the building's *upstairs* hallway and putting the substance out on the wall prior to entering defendant's apartment, Kountze testified that he observed marijuana being smoked *downstairs* as a visitor left the building (Dkt. Nos. 14, 53, 56 at 109:25–113:13).

After plaintiff initiated this action in February 2018, defendant and JM started to maintain a log of each visitor to their apartment. According to the log, the number of visitors to defendant's apartment dropped substantially after this dispute began. For example, defendant and JM had only sixteen visitors in February 2018. At most, defendant and JM had twenty-five visitors in a given month, including visits from defendant's family members visiting from Germany. Although plaintiff landlord does not dispute the accuracy of the log, plaintiff submits that it cannot verify the log's contents because the security camera had occasionally been disabled by defendant and JM (Dkt. Nos. 19-1, 53; Def. Exh. 20).

Plaintiff now moves for a preliminary injunction, seeking to enjoin defendant from allowing his guests to threaten other tenants or members of the public, vandalize the property, or loiter around the building. Defendant, in turn, moves to dismiss the action for lack of subject-matter jurisdiction. This order follows full briefing, an evidentiary hearing on July 16, and oral argument (Dkt. Nos. 13, 20, 33, 51).

## ANALYSIS

### 1. MOTION TO DISMISS.

Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." A jurisdictional challenge under FRCP 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. In a factual attack, by

contrast, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. If the FRCP 12(b)(1) motion makes a facial attack, the court must accept all well-pled material factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, at least at the pleading stage. *Roberts v. Corrothers*, 812 F.2d 1173, 1178 (9th Cir. 1987). Here, defendant's FRCP 12(b)(1) motion involves both a facial and a factual challenge.

**A. Amount in Controversy.**

The amount-in-controversy requirement is generally determined by the amount claimed in the complaint, and this amount controls if the complaint was made in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). Nonetheless, a district court may be justified in dismissing the action where it appears to a legal certainty that the actual claim is less than the jurisdictional amount. *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 999 (9th Cir. 2007).

Here, the complaint seeks (1) an order evicting defendant from 640 Octavia, (2) a permanent injunction precluding defendant from engaging in future unlawful conduct, and (3) special, general, and punitive damages. With respect to damages, the complaint alleges that as a result of defendant's conduct Kountze has not been able to rent the building's two vacant units and has accordingly lost rental income in excess of $75,000. In particular, the complaint alleges plaintiff has lost between $3,500 and $4,500 per month for each of the two units that have been unoccupied for the past year. This is sufficient to meet the amount-in-controversy requirement.

Defendant's argument that Kountze has failed to mitigate his damages does not change this result. As our court of appeals has explained, albeit in a non-binding decision, potential affirmative defenses do not affect the amount in controversy analysis for purposes of determining federal jurisdiction. *Perez v. Alta–Dena Certified Dairy, LLC*, 647 Fed. App'x. 682, 684–85 (9th Cir. 2016). Defendant asserts no other basis from which to infer that plaintiff's damages allegations are made in bad faith. Defendant may renew his motion to dismiss if discovery in this action reveals evidence that the amount-in-controversy requirement is not met.



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**B. Diversity of Citizenship.**

In determining diversity jurisdiction, a limited liability company is a citizen of every state in which its owners/members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Citizenship, for purposes of diversity jurisdiction, is synonymous with an individual's domicile. An individual's domicile, in turn, is where he is both physically present and evinces an intention to remain indefinitely. *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986). For a corporation, by contrast, citizenship is synonymous with the corporation's state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

Here, the evidence as to who owns plaintiff LLC — and accordingly as to where plaintiff is a citizen — is in hopeless conflict. Initially, Kountze submitted a declaration under penalty of perjury stating that he was "part owner of 640 Octavia, LLC." In a subsequent declaration, Kountze declared that he had "an ownership interest in 640 Octavia LLC" and that "[n]o other people have an ownership interest." After the Court requested clarification on this issue, Kountze submitted a supplemental declaration describing himself as "the sole owner" of plaintiff (Dkt. Nos. 14, 24, 30).

The evidence submitted during the July 16 hearing only led to more contradictions. In text messages to former tenant Herzberg, Kountze stated that he had "several partners in the ownership of 640 Octavia." In a later text message, Kountze told Herzberg that Kountze had "emailed the other partners and asked what they want[ed] to do" in connection with buying out Herzberg's lease. Kountze testified that these statements "were a negotiating tactic" and that, in fact, "[he] did not have any other partners at the time [he] sent [the messages]." But in a March 2018 email to Kountze's friend, Neil Martinson, Kountze described 640 Octavia LLC as being owned by "Odlaw, Inc." Moreover, Kountze testified that "Odlaw, Inc., is a corporation, a Delaware corporation, that [Kountze] own[s], that owns the LLC, 640 Octavia, LLC." Plaintiff, in turn, submitted an operating agreement that listed "Edward Kountze" as the sole member of plaintiff LLC. The final page of that operating agreement, however, contained a "resolution" electing Odlaw, Inc. as a member of the LLC. Only upon the Court's inquiry did plaintiff's

counsel eventually submit a declaration explaining that the resolution "was never adopted." Accordingly, the evidence conflicts both as to whether or not plaintiff has multiple members and as to whether or not Kountze owns plaintiff as an individual or merely through a corporation (Def. Exhs. 6, 24; Pl. Exh. 4; Dkt. No. 56 at 78:19–81:21; Dkt. No. 60-2). In other words, plaintiff landlord's ever-changing story about ownership of the building has left the Court in grave doubt as to its jurisdiction.

The jury, rather than the instant order, should resolve this evidentiary conflict. FRCP 12(i) permits deferring the issue of diversity jurisdiction raised on a FRCP 12(b)(1) motion: "If a party so moves, any defense listed in Rule 12(b)(1)–(7) — whether made in a pleading or by motion — and a motion under Rule 12(c) must be heard and decided before trial *unless the court orders a deferral until trial*" (emphasis added). In a case like this, where the factfinder needs further information and testimony to interpret the significance of the facts, disposition by motion under FRCP 12(b)(1) is inappropriate. The issues raised by defendant's FRCP 12(b)(1) motion will accordingly be determined at the same or at a bifurcated trial as the merits. The ownership question will be decided by a jury. Defendant's motion to dismiss is therefore **HELD IN ABEYANCE**.

**2. PROVISIONAL RELIEF.**

To support a preliminary injunction, plaintiff must establish four elements: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest. *Winter v. Natural Resources Defense Council Inc.*, 555 U.S. 7, 20 (2008). Plaintiff moves for an injunction prohibiting defendant from allowing his guests to threaten other tenants or members of the public, vandalize the property, or loiter around the building. Except as follows, the record does not support granting provisional relief.

California law defines a private nuisance as "a nontrespassory interference with the private use and enjoyment of land." *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 937 (1996). Liability for private nuisance requires proof "that the invasion of the plaintiff's interest in the use and enjoyment of the land was *substantial*, *i.e.*, that it caused the

plaintiff to suffer 'substantial actual damage.'" *Id.* at 938. "The interference with the protected interest must not only be substantial, but it must also be *unreasonable*, *i.e.*, it must be of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land." *Ibid.* (internal quotation marks and citation omitted). Setting aside whether or not plaintiff has shown a likelihood of prevailing on its nuisance claim, plaintiff has failed to show irreparable harm absent provisional relief.

The record does not support plaintiff's contention that, at least since February 2018, defendant has caused the building to be "inherently unsafe" or that "it is only a matter of time" before Kountze or his wife "suffer[] physical harm or worse." While the frequency of JM's visitors may give rise to an inference of prostitution or other illegal conduct, the alternative explanation provided by JM during the evidentiary hearing is also plausible. More importantly, once these issues came to defendant's attention in early 2018, defendant and JM significantly reduced the number of visitors to their apartment. They also agreed to personally walk each of their visitors from the building's entrance to their apartment's entrance (Dkt. No. 19-2). Defendant and JM's self-restraint has significantly undercut the need for provisional relief. Plaintiff's motion for provisional relief on its private nuisance claim is accordingly **DENIED**.

Two points do concern the Court, however. Any future interference with plaintiff's security camera, including any trained on the common areas, will warrant provisional relief. Moreover, with the exception of the keys that have already been provided to Paolo Broggi, defendant and his roommate shall not give keys to the building to their visitors, as has already happened once, a huge lapse in judgment. This order further notes that plaintiff, as the landlord, has the ability to adopt reasonable rules and regulations concerning quiet hours and the safety of 640 Octavia — the violation of which rules may be grounds for eviction. Although plaintiff claimed during the July 16 hearing to have adopted such rules, the parties dispute whether or not plaintiff provided those rules to defendant. And while the Court attempted to resolve this problem by scheduling a supplemental hearing during which plaintiff would serve defendant

with the new rules in open court, plaintiff landlord later requested to vacate the hearing and to instead serve defendant without the Court's intervention (Dkt. Nos. 49, 56).[2]

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is **HELD IN ABEYANCE** until trial. Plaintiff's motion for a provisional relief is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 5, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] Defendant's administrative motion for leave to file a supplemental declaration is unopposed and is accordingly **GRANTED**. Defendant's objections to the declarations of Edward Kountze and Randi Hite following the evidentiary hearing are **DENIED AS MOOT**. Defendant's administrative motion to file under seal is **GRANTED**.



United States District Court
For the Northern District of California