Yosef Peretz (SBN 209288)
yperetz@peretzlaw.com
David Garibaldi (SBN 313641)
dgaribaldi@peretzlaw.com
PERETZ & ASSOCIATES
22 Battery Street, Suite 200
San Francisco, CA 94111
Tel: 415.732.3777
Fax: 415.732.3791

Attorneys for Defendant KARL-HEINZ PIEPER

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 640 OCTAVIA, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>KARL-HEINZ PIEPER and DOES 1-45, inclusive,<br><br>               Defendants. | Case No.  3:18-cv-01047<br><br>**DEFENDANT'S TRIAL BRIEF**<br><br>**Date:** March 25, 2019<br>**Time:** 7:30 a.m.<br>**Courtroom:** 12<br>**Judge:** Hon. William Alsup |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................- 1 -

II.     FACTUAL BACKGROUND................................................................- 3 -

    A.      Pieper Enjoyed a Peaceful Tenancy at the Building Before Plaintiff Became His Owner and While Kountze was a Tenant for Many Years - 3 -

    B.      Pieper and Montoya Do Not Make Any Unlawful Use of the Premises - 6 -

    C.      Plaintiff's and Kountze's Unlawful Attempts to Harass and Evict Pieper ....................................................................................... - 7 -

    D.      Plaintiff Seeks to Evict Pieper and Montoya Under the Ellis Act, in Spite of the Results of this Action .............................................. - 11 -

    E.      Plaintiff is a Citizen of California but Improperly Brought this Action in Federal Court, Asserting Diversity Jurisdiction ........................... - 11 -

III.    LEGAL ARGUMENT........................................................................- 14 -

    A.      Plaintiff has a Weak Likelihood of Success on the Merits ................ - 14 -

        1.      Plaintiff will be Unable to Prove Pieper is Liable for Private Nuisance ..- 14 -

        2.      Plaintiff Cannot Succeed on its Breach of Contract or Unlawful Detainer Claims Against Pieper........................................................- 16 -

        3.      The Plain Purpose of Plaintiff's Lawsuit is to Harass Pieper and Force him to Vacate the Premises................................................- 17 -

        4.      Plaintiff's True Motive was to Rip a Massive Financial Gain Out of the Building at the Expense of Pieper......................................- 19 -

        5.      Plaintiff Cannot Show that It Suffered Damages.............................- 20 -

    B.      Plaintiff Cannot Meet its Burden to Show that Diversity of Citizenship Exists in this Action .......................................................... - 21 -

IV.     CONCLUSION ..................................................................................- 23 -

# TABLE OF AUTHORITIES

**Cases**

*First Nat. Mortg. Co. v. Federal Realty Inv. Trust*, 633 F.Supp.2d 985, 994 (N.D. Cal. 2009)... - 21 -, - 24 -

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).................................................................- 22 -

*Kanter v. Warner-Lambert Co.* (9th Cir. 2001) 265 F.3d 853..............................................- 22 -

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).........................- 22 -

*Koll-Irvine Ctr. Prop. Owners Ass'n v. County of Orange,* 24 Cal.App.4th 1036, 1041-42 (1994).....................................................................................................................................- 16 -

*Millikan v. American Spectrum Real Estate Services California, Inc.*, 117 Cal.App.4th 1094, 1102 (2004)............................................................................................................................- 21 -

*San Diego Gas & Electric Co. v. Superior Court,* 13 Cal.4th 893, 937 (1996) ...................- 14 -

*Vanderpol v. Starr,* 194 Cal.App.4th 385 (2011) ................................................................- 16 -

*Vestar Development II, LLC v. General Dynamics* Corp, 249 F.3d 958, 961 (9th Cir. 2001) - 20 -, - 21 -, - 23 -, - 24 -


**Statutes**

28 U.S.C.A. § 1332(a)(1)........................................................................................................- 21 -

28 U.S.C.A. § 1332(c)(1)........................................................................................................- 22 -

Cal. Civil Code § 3301.............................................................................................- 20 -, - 23 -

Cal. Gov't Code § 7060, *et seq.*..............................................................................................- 2 -

Civ. Code §§ 3479—3481 .....................................................................................................- 14 -

## I.      INTRODUCTION

This is a run-of-the-mill eviction case concerning a long-term tenant, Defendant KARL-HEINZ PIEPER ("Pieper"), who occupies a highly-coveted, rent-regulated apartment in the soaring rental market in San Francisco.  The basis for the action *is not* the non-payment of rent, or even that Pieper is engaged in unlawful or illegal activity in his rental unit; rather, Plaintiff 640 OCTAVIA, LLC ("Plaintiff") is unhappy with the guests that are coming and going out of the rental unit.  The real motive behind this action is clear — Plaintiff trumped up the excuse of "uncanny guests" to support the eviction of a long-term tenant whose rent is *grossly under fair market value*.  Plaintiff is also razor-focused on evicting Pieper because *Pieper is the only tenant residing in the building*, and in the ever-soaring real estate market in San Francisco, the sale of a vacant multi-unit building would generate Plaintiff *hundreds of thousands of dollars in <u>additional profit</u>* for that reason alone.

As a threshold issue, to maintain this action in federal court and establish this Court's diversity jurisdiction, Defendant's real landlord and the owner and managing agent of Plaintiff, Edward Kountze ("Kountze"), incorporated Plaintiff as a limited liability company in Wyoming and not California and alleged in bad faith that this eviction action has over $75,000 in controversy.  However, this Court lacks all subject-matter jurisdiction over this action because there is no diversity of citizenship between the parties.  Diversity is lacking in this matter because both Plaintiff and Pieper are considered citizens of California.  Pieper is a citizen of California because he is domiciled in California, as he has resided at the apartment in question since 1993 and has no intent to leave San Francisco or California.  Plaintiff is a citizen of California because, as an LLC, it is a citizen of every state that its members are citizens of.  Plaintiff has two members: Kountze and a Delaware corporation named Odlaw, Inc. ("Odlaw").  The evidence will establish that Kountze is domiciled in California and is therefore a citizen of California.  The evidence will further establish that Odlaw's principal place of business is San Francisco, California, thereby rendering it a citizen of California as well.  Accordingly, in either case, Plaintiff is also rendered a citizen of California due to the citizenship of Kountze or Odlaw.

As for the merits of this action, Plaintiff has a *substantially weak likelihood of success* because there are no facts or evidence supporting Plaintiff's baseless accusations against Pieper. Pieper has not hosted any guests who have threatened any individuals, vandalized the apartment, or loitered at or around the apartment building.  While Plaintiff's own proffered evidence shows

that Pieper had numerous amounts of guests over to the apartment, the evidence utterly fails to show that the guests committed any of the alleged acts or any other unlawful or disturbing acts at all.  Further, Plaintiff will fail to address how any tenants of the subject building could have been threatened or bothered by Pieper's guests given that Pieper and his roommate *were the only individuals who resided in the entire building*.  Plaintiff cannot succeed on the merits of this action due to this lack of evidence.  Pieper has been able to have guests in his apartment for the past **25 years**, yet Plaintiff cannot produce evidence of a single specific instance where any individual has been threatened by one of Pieper's guests.

Further, Plaintiff will not be able to prove that it has suffered any actionable damages in this case.  Plaintiff alleges that he has been unable to rent vacant apartments within the subject building since Pieper's unlawful conduct began.  However, these apartments have been vacant since over **16 months** (Apartment 1) and **1 year (**Apartment 4), respectively, prior to the filing of this lawsuit.  The evidence will also show that Plaintiff has deliberately refused to fill these apartments with tenants of its own accord, rather than due to the behavior of Pieper's guests, and has even rejected Pieper's offers to help secure new tenants.

Furthermore, the evidence will also show that Plaintiff is in the process of evicting Pieper through use of the Ellis Act, Cal. Gov't Code § 7060, *et seq*. (the "Ellis Act"), which forces Plaintiff *to remove all of the units in the building from the rental market*, and ensures that he receives no future rental income from them.  Thus, Plaintiff utterly failed to mitigate its own damages in this matter and will not be entitled to any damages due to Pieper's conduct since Plaintiff would not have been renting out the units in the building before, during, or even after Pieper's tenancy there.

Finally, the evidence will show that Plaintiff's entire suit is motivated by ulterior motives: Plaintiff's financial gain from evicting Pieper, a long-term, elderly, disabled, and gay tenant paying significantly below market rate.  Because Plaintiff's entire eviction action is motivated by ulterior motives, Plaintiff's conduct runs afoul of the San Francisco Rent Stabilization and Arbitration Ordinance, San Francisco Administrative Code, Chapter 39 (the "Rent Ordinance"), which applies to the apartment in question and provides that Plaintiff is estopped from seeking possession of the apartment unless it is "in good faith, without ulterior reasons and with honest intent."  The evidence will show that Plaintiff's entire motivation for seeking Pieper's eviction is

improper financial gain, as well as his utter disregard and contempt for Pieper's protected status as a gay, immigrant, and disabled tenant.

## II. FACTUAL BACKGROUND

### A. Pieper Enjoyed a Peaceful Tenancy at the Building Before Plaintiff Became His Owner and While Kountze was a Tenant for Many Years

Pieper is a 59 year old single gay man, who works full time as an IT consultant for small- to mid-size law firms for the last 12 years. He is also an avid traveler and a published fine art photographer for his entire adult life. Pieper is the tenant at Apartment #3 (the "Premises") in the building at 640 Octavia Street, San Francisco, CA 94102 (the "Building") for almost 25 years. On or about September 9, 1993, Pieper signed a residential lease agreement (the "Lease") with Bob and Colbert Dare (the "Dares"), who were the then owners of the Building.

The Building is a 2-story residential building that includes 4 residential units, two on each floor, a parking garage located on the ground floor, and a cottage in the back that is set up as another residential unit; the Building was first built on or about 1923. The Premises is a one-bedroom/one-bathroom apartment that is being used a two-bedroom apartment for many years. The Premises are therefore subject to the Rent Ordinance, because the Building is a residential building that was first occupied before 1979, and thus the Premises comes within the definition of a "rental unit" under Rent Ordinance § 37.2(r). [A true and correct copy of the Rent Ordinance is attached to the Request for Judicial Notice in support of this Pre-Trial Brief at Exhibit A.]

Upon Pieper's move-in, it was clear that the Premises had never been remodeled for many years. Pieper, nonetheless, has been taking a good care of his home, and he has spent a great deal of time and money in fixing it up over the years that he lived there. Pieper had the walls painted upon move-in, and had the kitchen and bathroom floors repaired in 2015 with the owners' permission. Pieper vacuums the common area hallways at least twice per month, cleans the garage once per year on average, and has fixed the Building's front doorstop and doorknob continuously for years.

Pieper enjoyed a peaceful and mutually respectful relationship with the Dares during the 22 years they owned the Building. The Dares never questioned or challenged Pieper about his habits, his guests, or the frequency he had visitors. Pieper has had a roommate living with him on the Premises through his tenancy, and he was never challenged by the Dares over this issue as well. The Dares routinely provided Pieper with written authorization and approval for each of

Pieper's proposed roommates, and they have never disapproved any of the roommates he proposed.

On or around May 1, 2003, Edward Kountze ("Kountze") and his partner, Jean Boldan ("Boldan"), moved into Apartment 2 in the Building. Kountze and Boldan moved into the Building as tenants, and remain as such for over 13 years, until Kountze purchased the Building in late December 2016. Kountze and Boldan would occupy Apartment 2 for approximately 6 months at a time, and, since 2016, would let other guests stay there during the months they were gone.

Throughout their tenancy, Kountze and Boldan were friendly to Pieper. Pieper hosted Kountze and Boldan for social gatherings on several occasions over the years, and Kountze and Boldan invited Pieper out for a social dinner in a Peruvian restaurant in the fall of 2015 after Pieper returned from a long trip to Peru as they seemed to be interested in Pieper's photography and experience. Kountze and Boldan also seemed to trust Pieper because they gave him a key to their apartment in April 2014 when the Building was up for sale, asking Pieper to be present when their apartment is shown to potential buyers, which he did.

Kountze and Boldan were fully aware of the many guests that came to the Premises to either visit Pieper or his roommates over the years; they have also personally met Montoya during one of their visits to the Premises. At no occasion during their 13-year tenancy at the Building did Kountze and Boldan raise any concerns or complained to Pieper about his guests or the guests that visited his roommates. Similarly, Kountze and Boldan never complained or challenged Pieper over the frequency, the number, or the character of any of the guests that came to visit the Premises when they were tenants. To the contrary, Kountze and Boldan seemed to have genuine interest in maintaining a good relationship with Pieper, and they did not seem to mind any of his guests.

On or around April 22, 2014, the Dares sold the Building to another owner, and thereafter Gaetani Building Maintenance ("Gaetani") took over the property management of the Building. In the fall of 2014, Jose Montoya moved into the Premises as Pieper's new roommate ("Montoya") to replace another roommate that moved out. Montoya is a 29 year old gay man that sought and granted asylum in the U.S. after he has been persecuted for his sexual orientation in Mexico where he was born. Montoya works as a full-time hair stylist for the last 3 years, earning his livelihood from this work only. Prior to Montoya's move, Pieper sought and received

consent from Gaetani to have him as his roommate, and was even served with a formal notice acknowledging the residency of Montoya at the Premises.

In or around December 2016, after 13 years of living in Apartment 2, Kountze purchased the Building.  At the time of purchase, Kountze still lived sporadically in Apartment 2 while Pieper and Montoya resided in Apartment 3.  Earlier that year, when the Building was up for sale again, on March 3, 2016, Kountze and Boldan met with Pieper and the tenants then residing in Apartment 1 at the Building, Matthew Ball ("Ball") and Hannah Felts ("Felts").  During that meeting, Kountze suggested that the 5 participants create a 501K nonprofit and purchase the Building together through that entity.  No decision was made over that issue even though Pieper was excited about the idea; Kountze only returned with vague information and soon stopped following up on the subject altogether.

At the time Kountze purchased the Building, Apartment 1 *was already vacant*; it has been vacant since approximately May 2016, when the last tenants living there, Ball and Felts, moved out, having purchased a condominium in San Francisco located just around the corner from the Building.  Felts and Ball did not move from the Building because of any issues they had with Pieper, Montoya or their guests; they simply were able to afford to purchase a home to move into.  Similarly, Pieper and Montoya never learned from Plaintiff, Kountze or anyone else that Felts and Ball decided to move out, in part or in full, as a result of any conduct or nuisance created by them or their guests.

Apartment 4 was occupied by Itamar Herzberg ("Herzberg") at the time Kountze bought the Building, but Herzberg moved out in or around April 2017, and he moved into the home that he purchased earlier in San Francisco.  Before he moved out, Hertzberg was hardly occupying his unit at the Building, and he had never complained to Pieper or Montoya that he took any issues with their conduct or guests.  Pieper and Montoya never learned from Plaintiff, Kountze or anyone else that Hertzberg decided to move out, in part or in full, as a result of any conduct or nuisance created by them or their guests.

Since he bought the Building, Kountze *has not sought out new tenants for Apartments 1 or 4 and both apartments have remained vacant to date*.  After purchasing the Building, Kountze and Boldan continued to occupy Apartment 2 sporadically, for about 2 to 3 weeks every other month, until January 2018, at which point they no longer appeared to be occupying Apartment 2

1 for the time being, to the present.  Kountze, nevertheless, came to visit the Building in the middle
2 of the night on a couple of occasions in February and April, at around 2-3am each time.

3      The current monthly rent Pieper pays for the Premises is $976.92.  Upon gaining
4 ownership of the Building, Kountze functioned as its landlord and collected rent from the master
5 tenants: Pieper and Herzberg.  Pieper had to initiate contact with Kountze to determine how the
6 rent should be paid, and passed this information on to Herzberg.  Pieper paid the monthly rent
7 largely by leaving checks for Kountze under the doormat of Apartment 3, and Kountze accepted
such method of payment throughout Pieper's tenancy until sometime in 2019.

8 **B.**        **Pieper and Montoya Do Not Make Any Unlawful Use of the Premises**

9      Pieper and Montoya routinely have had guests over to their apartment, both before and
10 after Kountze purchased the Building.  Contrary to Plaintiff's assertions, Pieper's and Montoya's
11 guests are not "strangers" but mostly regular visitors, and are clean, quiet, and considerate.  Until
12 this action was filed, Pieper hosted about four to five friends at a time for occasional dinner parties
13 or social gatherings, on average once or twice a week, while Montoya has friends and
14 acquaintances over more frequently, approximately twenty people per week.  None of these guests
15 make excessive noise, loiter in front of the Building, vandalize any portions of the Building, or
16 otherwise engage in any unlawful acts.  *At no time prior to December 2017 did Kountze complain*
17 *or raise concerns with either Pieper or Montoya that they were hosting too many guests, that*
18 *their guests were "unruly," that they made excessive noise or loitered in front of the Building,*
19 *that the guests vandalized the Building, or otherwise engaged in any unlawful conduct or conduct*
20 *that would cause Pieper to breach the Lease*.  At any event, after Pieper and Montoya became
21 aware that Plaintiff had an issue with the number of guests they hosted, they reduced the number
of guests *dramatically*, and later began keeping a written record of each guest they hosted.

22      Pieper himself is a self-described "neat freak" who keeps his home spotless and routinely
23 cleans the common area hallway in the Building.  Pieper even had Montoya agree and promise,
24 in writing in their roommate agreement, to keep the Premises clean and drug-free as a condition
25 of Montoya becoming a roommate.  [A true and correct copy of this roommate agreement is
26 attached to this Pre-Trial Brief as Exhibit 1.]  Pieper is not using illegal substances, is not a drug
27 user, does not sell or deal drugs (not from the Premises and not from anywhere else), and does
28 not engage in prostitution or any other illegal activity (not from the Premises and not from
anywhere else).  Like Pieper, Montoya is a clean and drug-free individual.  Montoya is not using

illegal substances, is not a drug user, does not sell or deal drugs (not from the Premises and not from anywhere else), and does not engage in prostitution or any other illegal activity (not from the Premises and not from anywhere else).

At no time have Pieper or Montoya ever made unauthorized copies of keys and distributed them to any of their guests.  The only individual other than Pieper and Montoya with keys to the Premises is Pieper's friend Paolo Broggi ("Broggi"), who has power of attorney for Pieper and access to his bank accounts and was previously his roommate at the Premises for 11 years; Pieper disclosed this to Kountze on November 29, 2017.  Kountze was already familiar with Broggi given that he resided in the Building when Broggi did.

When they resided at the Building, Ball and Felts were never bothered or threatened by any of Pieper's or Montoya's guests and never observed these guests loiter around the building, attempt to break locks, cause a mess, or engage in any activity that appeared to be unlawful or improper within a residential neighborhood.  Now living around the corner from the Building and walking near it very frequently, Ball and Felts have still never noticed any individuals loiter outside of the Building, nor have they heard anyone in the neighborhood refer to the Building as a "drug house."  Similarly, Herzberg never had issues with Pieper when he lived at the Building, he never observed and never had any issues with Pieper or Montoya because of any of the guests they had.

## C.   Plaintiff's and Kountze's Unlawful Attempts to Harass and Evict Pieper

In November 2017, Kountze wrote a harassing letter to Pieper, alleging that *in August 2017,* Montoya had improperly made copies of keys to the Building and had given a copy to a friend of his, "Miguel", in violation of the Lease.  Kountze demanded that Pieper and Montoya identify "Miguel," state his business at the Building and his possession of keys, and state how many other copies of keys had been made and given to any other persons and to state the dates these individuals entered and exited the building.  In reality, Miguel (last name unknown) did not possess a key to the Building — he had simply been visiting Montoya and needed to retrieve something from his car, so he borrowed Montoya's key to let himself back into the Building without disturbing anyone.  It happened that Kountze ran into Miguel and became irrationally furious, threatening to call 911 immediately upon encountering him; from his apartment, Montoya heard Kountze screaming, so Montoya explained that Miguel was his guest, at which point

Kountze let Miguel go.  Kountze later drafted the November 2017 letter in a brazen attempt to intimidate Pieper and Montoya over an incident that happened 3 months earlier.

On or around November 14, 2017, Plaintiff mailed Pieper a letter entitled "Notice of Violation of Lease Agreement," alleging that Pieper was improperly hosting numerous disruptive late-night visitors, distributing unauthorized copies of keys of the Building, and improperly sharing his unit with Montoya.  [A true and correct copy of this letter is attached hereto as Exhibit 2.]  The letter falsely noted that "dual occupancy of the unit may be grounds for your eviction," despite the fact that Montoya was fully authorized as a roommate by Plaintiff's predecessor-in-interest.  [*Id.*]

Pieper attempted to de-escalate the situation in good faith by writing an email response to Plaintiff on November 29, 2017, in which he explained and apologized for Miguel's behavior and indicated that he and Montoya would have less frequent visitors and would make sure all guests would be clean, quiet, and courteous.  [A true and correct copy of this email is response is attached hereto as Exhibit 3.]  Pieper also promised that the only individual with a copy of key to the Building (other than Pieper and Montoya) was Pieper's friend and former roommate Broggi, who has power of attorney for Pieper and whom Kountze was already acquainted with.  [*Id.*]  Plaintiff did not respond to this email.

Despite this good faith attempt to resolve the conflict, on December 1, 2017, Pieper received a "Ten-Day Notice to Cure or Quit" for breach of covenant ("Ten Day Notice").  [A true and correct copy of this December 1, 2017 Notice is attached hereto as Exhibit 4.]  The Ten Day Notice purported to terminate Pieper's tenancy by virtue of Pieper's breach of ¶¶ 9 and 13 of the Lease that state that no more than one person will occupy the Premises and that Pieper cannot sublet the Premises, respectively.  [*Id.*]  The Ten Day Notice completely ignored the fact that Montoya was a fully authorized roommate by Plaintiff's predecessor-in-interest, and that Pieper is entitled to a roommate under the Section 37.9(C)(i) of the Rent Ordinance.  [*Id.*]  The Ten Day Notice made no mention of Plaintiff's baseless accusations that Pieper had an improper amount of visitors or guests to the Premises or that Pieper had improperly distributed copies of keys to the Building to others.  [*Id.*]  Finally, the Ten Day Notice also failed to include the Notice to Tenant required by Section 37.9(C) of the San Francisco Rent Ordinance.  [*Id.*]

On December 6, 2017, counsel for Pieper wrote to Plaintiff, alleging that the Ten Day Notice was procedurally and substantively defective and asked Plaintiff to cease and desist from

further harassment of Plaintiff.  [A true and correct copy of this response is attached hereto as Exhibit 5.]  Plaintiff did not respond to this letter, and instead, on December 15, 2017, Plaintiff issued Pieper a new "Three-Day Notice to Quit or Cure" for "maintaining a nuisance" and "illegal activity," (the "First Three Day Notice").  [A true and correct copy of this December 15, 2017 First Three Day Notice is attached hereto as Exhibit 6.]  The First Three Day Notice falsely alleged that Pieper created a nuisance by "creating noise, waste, disturbing the enjoyment of others, [an]d performing unlawful acts" by hosting a significant number of visitors at Apartment 3 "nearly every 10-15 minutes between the hours of 11pm and 3am," and by creating copies of keys and giving them to "strangers" who then used said keys "to access the common areas of the building in order to go to your unit," completely ignoring that Pieper had already identified every individual who possessed a key to the Premises in his November 29, 2017 email.  [*Id.*]  The First Three Day Notice also failed to include the Notice to Tenant required by Section 37.9(C) of the San Francisco Rent Ordinance.  [*Id.*]  Pieper's counsel again wrote to Plaintiff on December 19, 2017, stating that the First Three Day Notice was also procedurally and substantively defective and asked Plaintiff to cease and desist from further harassment of Plaintiff.  [A true and correct copy of this correspondence is attached hereto as Exhibit 7.]  Plaintiff again did not respond to this letter.

On January 29, 2018, Pieper received another Three Day Notice to Quit based on the same allegations that "random people" and "random strangers" were visiting the Premises to get to Pieper's unit and that these visitors were causing numerous disturbances, including creating noise, forcibly accessing the building, ringing every doorbell, picking locks, and gathering outside the building in a threatening manner, from September 2017 to January 2018 (the "Second Three Day Notice").  [A true and correct copy of this January 29, 2018 Second Three Day Notice is attached hereto as Exhibit 8.]  The Second Three Day Notice was equally baseless.  [*Id.*]  The Second Three Day Notice again failed to include the Notice to Tenant required by Rent Ordinance § 37.9(C).  [*Id.*]  Pieper did not respond to the Second Three Day Notice, believing it to again be procedurally and substantively defective, which it was.  [*Id.*]

However, upon receiving the Second Three Day Notice, Pieper and Montoya began to keep a written log of all visitors they had at their apartment, and had each visitor sign off on their entrances and exits.  [A true and correct copy of Pieper and Montoya's Log of Visitors, updated to date, is attached hereto as Exhibit 9.]

On February 16, 2018, Plaintiff then filed the present action.  On February 23, 2018, Pieper received *yet another* Three Day Notice to Quit, which was posted on his front door (the "Third Three Day Notice").  [This February 23, 2018 Third Three Day Notice is attached hereto as Exhibit 10.]  The Third Three Day Notice was identical to the Second Three Day Notice, except that Plaintiff further alleged that in February 2018, a guest of Pieper's had "kicked [the front door] in from the inside," breaking the locks, that "strangers are now accessing the building by using the code to the garage door," and that Pieper had refused to give Plaintiff the keypad code to the garage.  [*Id.*]  In reality, none of Pieper's or Montoya's guests had broken the lock to the front door, nor had Pieper had ever changed the keycode to the garage.  In fact, Pieper was the individual who alerted Kountze to the fact that the front door's lock had been damaged through a text message he sent him on February 10, 2018, shortly after noticing the front gate did not lock in the evening, hours after he had heard loud door slams and the front gate being kicked by an unknown individual.  Kountze sought out a locksmith to fix the issue without accusing Pieper or his guests of having done the damage.  Pieper also noted these instances in his and Montoya's log of entries and exits to his apartment.  [*See* Exhibit 9.]

During this same time, Pieper had noticed Neil Martinson staying in Kountze's apartment — less than two months after Mr. Martinson first stayed at the Building and previously claimed he would never return.  The evidence will show that Mr. Martinson, contrary to being a short-term tenant who was intimidated by Pieper's guests at the Building, is actually the "appointed agent" of Plaintiff and was hired by Plaintiff to "secure" the Building and stay there temporarily throughout 2017 and 2018 in a blatant attempt to intimidate Pieper.  [A true and correct copy of email correspondence appointing Martinson as the "appointed agent" of Plaintiff is attached hereto as Exhibit 11.]

Finally, in the midst of these flurry of actions, Kountze has improperly maintained a pigeon infestation on the south side and garage of the Building, and has repeatedly failed to make necessary repairs to the Premises that Pieper has requested on numerous occasions.  Pigeons have begun to nest in the garage and left numerous amounts of feces on the garage floor and in the light-well.  These are the only sources of debris and filth around the Building.  Kountze has not taken any steps to address this infestation to date, despite numerous reports from Pieper about the infestation.  Similarly, Pieper's stove has been broken since 2017 and Pieper reported the issue to Kountze numerous times, but Kountze refused to repair or replace the stove, instead blaming the

1    issue on a "gas" leak, diverting responsibility to the Premises' utility provider, and even once

2    having the utility provider shut off the gas to the Premises in bad faith.

3    **D.    Plaintiff Seeks to Evict Pieper and Montoya Under the Ellis Act, in Spite of the Results of this Action**

4    On or about January 16, 2019, nearly one year after initiating this action (filed on February

5    16, 2018), Plaintiff served on Pieper and Montoya two Notices to Quit Based on Landlord's

6    Forthcoming Notice of Intent to Withdraw Units Under Ellis Act  (the "Notices to Quit").  [The

7    Notices to Quit are attached hereto as Exhibits 12 and 13, respectively.]  The Ellis Act "sets forth

8    the procedure by which a landlord may go out of business by removing all of his or her rental

9    units in a building from the market."  *Coyne v. De Leo*, 26 Cal.App.5th 801, 804 (2018).  As

10   implemented by the City of San Francisco, the Ellis Act allows a landlord in San Francisco to

11   endeavor to recover possession of a rental unit if the landlord "wishes to withdraw from rent or

     lease all rental units" in the building.  [*See* RJN Ex. A, Rent Ordinance § 37(a)(13).]

12   Pursuant to the Rent Ordinance, the Notices to Quit informed Pieper and Montoya that

13   Plaintiff would be terminating their lease agreement pursuant to the Rent Ordinance due to

14   Plaintiff's desire "to withdraw from rent or lease all rental units located at 640 Octavia Street,

15   San Francisco, CA 94102, including but not limited to the Premises under the Lease," and that

16   Plaintiff would be filing a notice with the city of San Francisco to that effect.  [Exhibits 12 and

17   13 at ¶ 2.]  Accordingly, the Notices to Quit further informed Pieper and Montoya that they would

18   have 120 days after the filing of the subsequent notice with the city of San Francisco to vacate

19   the premises, pursuant to the Rent Ordinance, so they are required to vacate the Subject Premises

     *by no later than May 26, 2019*.  [*Id*. at ¶ 3.]

20   On or about January 24, 2019, Plaintiff filed with the City of San Francisco and served on

21   Pieper its Notice of Intent to Withdraw Residential Units from the Rental Market pursuant to Rent

22   Ordinance § 37.9A (the "Notice of Intent"), informing the city of San Francisco that 640 Octavia

23   desired to withdraw all residential units at the Subject Building from the rental market, and put

24   Pieper and Montoya on notice that they would have 120 days from that date to vacate the Subject

25   Premises.  [The Notice of Intent is attached hereto as Exhibit 14.]

26   **E.    Plaintiff is a Citizen of California but Improperly Brought this Action in Federal Court, Asserting Diversity Jurisdiction**

27   On December 15, 2016, Kountze appears to have incorporated Plaintiff 640 Octavia, LLC,

28   as a limited liability company in Wyoming.  [A true and correct copy of Plaintiff's certificate of

incorporation is attached hereto as Exhibit 15.]   On its Articles of Organization, Plaintiff's registered agent, mailing address, principal office address, and organizer are all the same: Capital Administrations, LLC, 1712 Pioneer Avenue, Suites 115 and 500, Cheyenne, WY, 82001.   [A true and correct copy of Plaintiff's Articles of Organization is attached hereto as Exhibit 16.]   In or around October 2017, Kountze transferred ownership of the Building to Plaintiff corporate entity, 640 Octavia, LLC.   Plaintiff is comprised of two members, Kountze and a Delaware corporation, Odlaw, according to a corporate resolution naming Odlaw as a member, dated December 15, 2016 (the "Resolution").   [A true and correct copy of the Resolution is attached hereto as Exhibit 17.]

On April 13, 2018, Pieper filed a Motion to Dismiss this action for lack of subject-matter jurisdiction.   [Dkt. No. 20.]   Pieper alleged that the Court lacked jurisdiction over this matter because the facts would show that the citizenship of Plaintiff included California, defeating diversity jurisdiction.   [*Id*.]   Plaintiff opposed the Motion, alleging that diversity of citizenship did exist because Plaintiff was incorporated in Wyoming, Kountze was the "sole owner" of Plaintiff, and Kountze was not domiciled in California but in Florida, rendering Plaintiff a citizen of Wyoming and Florida, but not California, preserving diversity.   [Dkt. No. 24.]   Strangely, however, in support of Plaintiff's Motion for a Preliminary Injunction, which was filed before the Motion to Dismiss, Kountze had already represented to the Court that he was only "**part owner**" of 640 Octavia, LLC.   [Dkt. No. 14, ¶ 1.]   Defendant pointed this discrepancy out in its reply briefing to the Motion to Dismiss.   To resolve the confusion, the Court ordered Plaintiff to clarify "whether any other person or entity has an ownership interest in plaintiff 640 Octavia, LLC or whether Kountz is the sole member/owner of the LLC.   [Dkt. No. 29.]   Kountze submitted an additional Declaration to the Court, affirming that he was the "sole owner" of 640 Octavia, LLC. [Dkt. No. 30.]   Kountze made no mention of Odlaw, Inc. despite being ordered by the Court to name all members of 640 Octavia, LLC.   [*Id*.]

Upon obtaining limited discovery into these issues, Defendant learned that Kountze represented to numerous individuals that he was *not* the "sole" owner of Plaintiff.   For example, in text messages to Herzberg, a tenant, dated February 4, 2017 to February 25, 2017, Kountze stated "I have several partners in the ownership of 640 Octavia".   [A true and correct copy of this correspondence is attached hereto as Exhibit 18.]   In another email to Martinson, Kountze stated: "This is from 640 LLC,and Odlaw,Inc.owners of 640 LLC,and owner of 640 Octavia building"

[sic] [*See* Exhibit 11.]  In that same email, Kountze wrote that Mr. Martinson was to be the "appointed agent for 640 LLC, has been hired to secure the premesis at 640 Octavia building for the owners and managers of the building since Dec 22, 2016."  [*Id.*]

At this deposition, Kountze testified that he was the "sole partner" *and* the "sole member" of 640 Octavia, LLC.  [True and correct copies of relevant excerpts from Kountze's Deposition Testimony ("Kountze Depo") are attached hereto as Exhibit 19, at 18:19-19:21, 20:12-16 ("sole partner") and 20:17-22 ("sole member").]  Kountze also testified that he had no ownership interest "in any organization besides 640 Octavia LLC that has an ownership interest in any property in California."  [Exhibit 19, Kountze Depo at 21:5-11.]  Kountze also explained that his sworn statement that he was a "part owner" of 640 Octavia LLC was a "mistake."  [Exhibit 19, Kountze Depo at 255:2-9.]  Kountze *did not mention* Odlaw, Inc. at any time during his deposition.

Then, at an evidentiary hearing in this matter on July 16, 2018 ("Evidentiary Hearing"), Kountze changed his testimony after being faced with his prior correspondence showing that he had told other individuals that he was not the sole owner of Plaintiff, but that he had partners, and that Odlaw was one of them.  Kountze explained that he owned Odlaw, that he was its sole owner, and that Odlaw owned Plaintiff.  [True and correct copies of excerpts from Kountze's testimony given at the Evidentiary Hearing ("Kountze Test.") are attached hereto as Exhibit 20, at 81:15-82:14.]  When asked by Defendant why Plaintiff's operating agreement did not appear to name Odlaw as an owner, and when asked why he never mentioned the existence of Odlaw in his prior testimony, Kountze merely stated that he would "have to refer to my attorney" and was "not certain" if Odlaw had been "activated."  [Exhibit 20, Kountze Test. at 115:1-117:4.]

Following this evasive testimony, Plaintiff's attorney attempted to correct the issue on the record upon questioning by the Court.  Plaintiff's counsel, Gregory Walston, stated that it was Plaintiff's contention that Odlaw "does not own the LLC [640 Octavia] despite what the emails [Exhibits 11 and 18] say."  [True and correct copies of Plaintiff's counsel's representations ("Walston Test.") are attached hereto as Exhibit 21, at 136:10-17.]  Mr. Walston asked the Court to "believe the document" and *not* his own client, whom stated that Odlaw was an owner of 640 Octavia, LLC.  [Walston Test. at 136:18-138:2.]  Mr. Walston urged the Court to rely solely on the documents submitted to the Court, particularly Exhibit 104, in determining the ownership interests behind 640 Octavia LLC.

As the Court had observed and noted during that hearing, the Resolution of Plaintiff dated December 15, 2016, *which was also the same day that Plaintiff LLC was formed,* Plaintiff resolved that Odlaw was elected as a "member" of Plaintiff, with "full authority to manage, control, and operate" Plaintiff.  Odlaw was also given authority to "make decisions in the ordinary course of business, including…decisions regarding sales, purchases, and employees…the right to open a bank account, lines of credit, contractual agreements, and other financial agreements in the name of" 640 Octavia LLC.  [Exhibit 17, Resolution at ¶¶ 3-5.]  The Resolution was signed at the bottom by Plaintiff's Organizer, affirming that it was put into full effect on that date.  [*See Id.*]

Finally, at the Evidentiary Hearing, Kountze admitted that Martinson was Odlaw's agent (by virtue of being 640 Octavia LLC's agent), as Kountze stated in an email dated March 1, 2018 [Exhibit 11; Exhibit 20, Kountze Test. at 81:1-25.]   At his deposition, Mr. Martinson testified that he is a California citizen and resident, and has been so for no less than one year and a half. [True and correct copies of excerpts of Mr. Martinson's deposition ("Martinson Depo") are attached hereto as Exhibit 22, at 8:21-9:3.]

## III.   LEGAL ARGUMENT

### A.   Plaintiff has a Weak Likelihood of Success on the Merits

Plaintiff has alleged claims against Pieper for unlawful detainer, breach of his residential lease agreement, and private nuisance.  As explained below, Plaintiff will be unable to prove a likelihood of success on the merits on any of these claims.

#### 1.   Plaintiff will be Unable to Prove Pieper is Liable for Private Nuisance

A cause of action for private nuisance is one for a "nontrespassory interference with the private use and enjoyment of land." *San Diego Gas & Electric Co. v. Superior Court,* 13 Cal.4th 893, 937 (1996); *see also* Civ. Code §§ 3479-3481.  To succeed on a claim of private nuisance, a plaintiff must prove "interference with plaintiffs' use and enjoyment of the property." *San Diego Gas & Electric Co.,* 13 Cal.4th at 937.  Plaintiff must also prove that the invasion on the plaintiffs' interest "caused the plaintiff to suffer 'substantial actual damage.'" *Id.* at 938.  The damage must be judged by "an objective standard, i.e., what effect would the invasion have on persons of normal health and sensibilities living in the same community?" *Id.*  Finally, Plaintiff must also prove that the interference of its use and enjoyment is also "unreasonable." *Id.*  "The primary test determining whether the invasion is unreasonable is whether the gravity of the harm outweighs

the social utility of the plaintiff's conduct." *Id.*, *citing* Rest. 2d Torts, §§ 826-831. "Again the standard is objective: the question is not whether the particular plaintiff found the invasion unreasonable, but 'whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable.'" *Id.*

Here, Plaintiff cannot show that any of Pieper's alleged conduct interfered with their use and enjoyment of the Building. Kountze and Boldan resided at the Building well before Kountze bought the property and afterwards. Even after Pieper's and Montoya's guests were alleged to have become "unruly," in December 2016, Kountze and Boldan still resided at the property at various points throughout the year. It is only since January 2018 that they have stopped living in the property outright, and based on their prior behavior, it is likely that they will seek to return. Kountze admittedly still visits the Building in the middle of the night on occasions.

Moreover, Plaintiff cannot show that it has suffered "substantial" damage, because Pieper's and Montoya's guests have never acted "unruly" or engaged in unlawful or threatening acts. Contrary to Plaintiff's assertions, Pieper's and Montoya's guests are not "strangers" but regular visitors, and are clean, quiet, and considerate. Their guests have not made excessive noise, threatened any individuals, loitered in front of the property, engaged in vandalism, or otherwise engaged in any unlawful acts, both before and after Kountze purchased the property in December 2016. Pieper himself is a self-described "neat freak" who routinely cleans the common area hallway in the Premises, and had Montoya agree to, in writing, to keep the Premises clean and drug-free as a condition of his occupancy as a roommate. Pieper and Montoya are not using illegal substances, are not drug users, do not sell or deal drugs (not from the Premises and not from anywhere else), and do not engage in prostitution or any other illegal activity (not from the Premises and not from anywhere else). Neighbors have never noticed any individuals loiter outside of the Building, nor have they heard anyone in the neighborhood refer to the Building as a "drug house." As such, Pieper and his guests are not engaged in any behavior that had any harm on the health or safety of anyone living in the Building or the surrounding neighborhood, so there are no "substantial" damages to Plaintiff.

Plaintiff also cannot show that Pieper's activities are unreasonable. ***There is no evidence whatsoever*** that Pieper's guests are engaged in any unlawful conduct. The only relevant evidence that will be offered by Plaintiff is self-serving testimony of Kountze and Boldan, as well as that of Justin Hutto ("Hutto") and Martinson, who are both engaged in a business relationship with

Kountze and Plaintiff and function as their agents.  None of their testimony will affirmatively state that Pieper's visitors are engaged in any unlawful activity, and they all merely "suspect" that Pieper's visitors come to the Premises to engage in unlawful conduct, without any basis whatsoever.  Sam Brown ("Brown"), the investigator hired by Kountze, proves that there are no "groups" of unwanted visitors loitering outside the Building, as his report only shows instances of guests arriving one at a time.  Brown's report does not show any of these guests engaged in any unlawful conduct whatsoever.  Plaintiff's allegations are based on nothing more than their supposed "fear" that Pieper's visitors will engage in unlawful conduct that will eventually injure Plaintiff.  However, a private nuisance action cannot be maintained for interference with use and enjoyment of land based solely on the fear of future injury.  *See Vanderpol v. Starr,* 194 Cal.App.4th 385 (2011) (no unreasonable interference found based on plaintiff's unsubstantiated fear that electromagnetic fields would cause physical harm); *Koll-Irvine Ctr. Prop. Owners Ass'n v. County of Orange,* 24 Cal.App.4th 1036, 1041-42 (1994) (no actionable nuisance based on neighboring landowners fear of injury from explosion of Pieper's fuel storage tanks).  Not only is their "fear" is purely speculative, it *has not materialized for years,* as Kountze has testified that these "disruptions" have been going on for such a long time.

Pieper's and Montoya's guests are their friends or acquaintances and come over routinely for dinner parties or to simply pass the time.  As oppose to the "speculations" and unsubstantiated "fear" cast by Plaintiff, both Pieper and Montoya have normative lives, full time jobs, and they affirmatively state that they do not use the Premises for either drug use or drug dealing, prostitution or any other illegal activity.  Pieper and Montoya have the right to associate with persons of their choice.  The social utility of this conduct, protected by the First Amendment to the U.S. Constitution, vastly outweighs the gravity of the harm supposedly suffered by Plaintiff, which is non-existent.  *See San Diego Gas & Electric Co.,* 13 Cal.4th at 938; Rest.2d Torts §§ 826-831.  Accordingly, Plaintiff will not be able to succeed on the merits in his private nuisance claim against Pieper.

2.      **Plaintiff Cannot Succeed on its Breach of Contract or Unlawful Detainer Claims Against Pieper**

Plaintiff alleges that Pieper is violating the Lease by having guests over, as the Lease purportedly requires Pieper to "[r]efrain from violating the building's Rules and Regulations, which, *inter alia,* preclude him disrupting other tenants after 10 p.m., having threatening or disruptive guests at any time," and to "[r]efrain from handing out copies of the keys to the

building."  However, the Lease itself does not appear to contain this exact language and makes no reference to the Building's "Rules and Regulations."  Further, the Building does not have any written "Rules and Regulations," and did not have any such rules in effect during the time where Pieper and Montoya were having guests over to the Premises on a more regular basis.  Thus, Plaintiff will not be able to show that Pieper actually violated the Lease by hosting threatening and disruptive guests, as this has simply never occurred.  It was much later that Plaintiff served Pieper with House Rules, on July 17, 2018, and Plaintiff made no allegations that these house rules have ever been violated by Pieper.

Kountze and Boldan never complained or challenged Pieper over the frequency, the number, or the character of any of the guests that came to visit the Premises until almost one year after Kountze purchased the Building.  Kountze then engaged in a lengthy pattern of eviction attempts against Pieper, beginning in November 2017, soon after Pieper remained the last and only tenant in the Building.  Kountze alleged a multitude of different conduct as being in violation of the Lease, including Pieper's having a roommate and allegedly distributing keys to third parties, before settling on Pieper's numerous guests as the pretext with the most likelihood of success.  Kountze's allegations about Pieper's guests then evolved, from them merely being unruly and creating too much noise, to them making physical threats and vandalizing the Building.

Contrary to Plaintiff's assertions, Pieper's and Montoya's guests are not "strangers" but are regular visitors and acquaintances.  Their guests have not made excessive noise, threatened any individuals, loitered in front of the property, engaged in vandalism, or otherwise engaged in any unlawful acts, both before and after Kountze purchased the property.  Pieper and Montoya are not using illegal substances, are not drug users, do not sell or deal drugs (not from the Premises and not from anywhere else), and do not engage in prostitution or any other illegal activity (not from the Premises and not from anywhere else).  Neighbors have never noticed any individuals loiter outside of the Building, nor have they heard anyone in the neighborhood refer to the Building as a "drug house."  Even Brown's report proves only that Pieper and Montoya have a significant number of guests, but it does not show any of these guests engaging in any unlawful conduct whatsoever, and in a few instances even reports on the activity of Kountze himself.  As such, Pieper and Montoya are not acting in violation of the Lease.

**3.** **The Plain Purpose of Plaintiff's Lawsuit is to Harass Pieper and Force him to Vacate the Premises**

Most critically, Plaintiff cannot show a likelihood of success on the merits of this action because the true purpose of this lawsuit is to force Pieper, the last remaining tenant of the Building, to vacate the Premises. Since November 2017, about 11 months after purchasing the property, Plaintiff has engaged in a repeated pattern of attempting to evict Pieper for a wide variety of fabricated and frivolous reasons, but has been unable to do so due to the protections created by the Rent Ordinance, which apply to the Premises.

On or around November 2017, Kountze first tried to harass Pieper by alleging that Pieper and Montoya had improperly distributed numerous copies of keys to the building to others, with no basis in fact beyond Montoya allowing a friend to borrow his set of keys to retrieve something from his car. On or around November 14, 2017, Plaintiff accused Pieper of improperly hosting numerous disruptive late-night visitors, distributing unauthorized copies of keys of the Building, and improperly sharing his unit with Montoya, and falsely claimed that Montoya's occupancy was grounds for Pieper's eviction. On December 1, 2017, Plaintiff again tried to terminate Pieper's tenancy by falsely claiming that Pieper breached the Lease by having an unauthorized roommate, which is not true and is not unlawful pursuant to the Rent Ordinance. Failing to show any wrongdoing in all these instances, on December 15, 2017, Plaintiff again tried to terminate Pieper's tenancy, this time by alleging Pieper created a nuisance by hosting a significant number of visitors and creating copies of keys and giving them to "strangers." When this failed, Plaintiff doubled-down and, on January 29, 2018, again tried to evict Pieper based on the same allegations that "random people" and "random strangers" were visiting the Premises to get to Pieper's unit and that these visitors were causing numerous disturbances. When it became clear that Pieper would not vacate the Premises following all of this harassment, Plaintiff then filed the present action on February 16, 2018. Further, just to harass Pieper yet again, on February 23, 2018, Plaintiff tried another eviction attempt by making more baseless and false accusations that Pieper's visitors of having "kicked [the front door] in from the inside," breaking the locks, that "strangers are now accessing the building by using the code to the garage door," and that Pieper had refused to give Plaintiff the keypad code to the garage. In the midst of all this conduct, Kountze has improperly maintained a pigeon infestation on the south side and garage of the Building, and failed to make any necessary repairs to the Premises such as repairing or replacing Pieper's malfunctioning stove.

Pieper is the last remaining tenant of the Building; Kountze occupies Apartment 1 but does not reside there year-round, while Ball and Felts moved out of Apartment 2 in May 2016 (shortly before Kountze's purchase of the Building) and Herzberg moved out of Apartment 4 in April 2017.  Kountze has had **16 months** to find a new tenant for Apartment 2 and **1 year** to find a new tenant for Apartment 4 since the filing of the lawsuit, but did not do so.  When Pieper offered to help Kountze secure new tenants in February 2017, Kountze indicated that the apartments were unavailable because he was "getting floors refinished" and refused any help. Kountze later engaged in his repeated pattern of harassment against Pieper described above.  As such, this entire lawsuit is nothing more than a brazen attempt to force Pieper to vacate his rent-controlled apartment in the hottest real estate market in the United States, so that Plaintiff can then move on to sell the entire building at a significant profit.  For these reasons, Plaintiff's claims have no likelihood of success on the merits.

### 4. Plaintiff's True Motive was to Rip a Massive Financial Gain Out of the Building at the Expense of Pieper

The Building is a four-unit property built in 1923 with three one-bedroom apartments and one two-bedroom apartment, a parking garage located on the ground floor, and a cottage in the back that is set up as another residential unit.  The Building is located in the Hayes Valley district of San Francisco, a neighborhood of good quality and appeal and in close proximity to schools, shopping, hospitals, parks and employment.  The Premises is a one bedroom apartment located within the Building and its total rent is $976.92 per month.  The monthly rent is at or around the maximum allowable level under the San Francisco Rent Ordinance.  According to an expert in the real estate market in San Francisco, Frank Jay Faustini ("Faustini"), listing for comparable one bedroom properties within the Hayes Valley district range "from $2,590 to $5,400, **with predominate value above $4,000**," and "no current listings with an asking rent below $2,500." (emphasis added.)  Thus, it can be reasonably concluded that Pieper's current rent of $976.92 is well below market value, at least 50% less than the current market rate.

Kountze purchased the Building on December 22, 2016 for $2,400,000.  At the time of the purchase, only one of the apartments was vacant, as Herzberg occupied Apartment 4. According to Faustini, buildings with vacant units, or owner-occupied units delivered vacant, have much "greater market appeal than buildings containing units with controlled rents significantly below current market rates."  Rent-controlled apartments within buildings in Hayes Valley have a "discernible effect upon the sales price" of the building, between 2% to over 10%

of the sales price per unit.  Given that Kountze purchased the Building with at least two occupied rent-controlled units, it is reasonable to assume that the purchase price was discounted between 4% and 20% of the purchase price.  Taking away this discount, **Kountze could earn something between an additional $96,000 (4% of his purchase price) to $480,000** (20% of his purchase price) from selling the Building, without accounting for inflation or any other variables likely to raise the price even further.  This gives Kountze significant financial incentive to evict Pieper from his rent-controlled apartment.  This also explains why Kountze has allowed the other units in the Building to remain vacant for 16 months and 1 year without seeking new tenants, even after Pieper offered his help in securing new tenants.

### 5.        Plaintiff Cannot Show that It Suffered Damages

Even if Plaintiff proves liability, it cannot prove any damages because they are too speculative.  Cal. Civil Code § 3301 ("[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."); *Vestar Development II, LLC v. General Dynamics* Corp, 249 F.3d 958, 961 (9th Cir. 2001) ("the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged.").   The evidence shows that Plaintiff was never interested in renting out units in the Building not because he was objectively unable to do so because of Pieper's and Montoya's conduct, but because he is simply not interested in being a landlord.  Two apartments in the Building have been vacant since over **16 months** (Apartment 1) and **1 year (**Apartment 4), respectively, prior to the filing of this lawsuit.  The evidence will also show that Plaintiff has deliberately refused to fill these apartments with tenants of its own accord, rather than due to the behavior of Pieper's guests, and has even rejected Pieper's offers to help secure new tenants.  In contrast, Plaintiff has allowed various friends of Kountze to stay in the Building without any charge, including Martinson and Dan Amarel.  If Plaintiff was interested in renting apartments in the Building, it could have done so since Kountze's friends have been residing in the Building without any interference.  Finally, Plaintiff decided to formally get out of the rental market by serving Pieper with the Notices to Quit that remove all apartment from the rental market under the Ellis Act.  Once again, this decision demonstrates a clear desire by Plaintiff to get out of the business of being a landlord altogether and shows that his prior eviction attempts were motivated by this reason, rather than any actions undertaken by Pieper or Montoya.

Plaintiff cannot show what should be a measure of damages because it has provided no evidence and has retained no expert to testify about the rental value of each of the apartments in the Building.  As stated above, Plaintiff has the burden to prove his damages "with reasonable certainty and probability."  *Vestar Development II, LLC*, 249 F.3d at 961.  The rental value of a given property is generally determined by expert testimony and other technical evidence.  *See First Nat. Mortg. Co. v. Federal Realty Inv. Trust*, 633 F.Supp.2d 985, 994 (N.D. Cal. 2009) (calculation of reasonable imputed rental value for specific period based in part on expert testimony presented at trial in tandem with technical evidence); *see also Millikan v. American Spectrum Real Estate Services California, Inc.*, 117 Cal.App.4th 1094, 1102 (2004) (evidence establishing whether a landlord recovered value of lost rental by a favorable sale "would necessarily require expert opinion testimony" and required application of an assumed capitalization rate.)  Plaintiff has utterly failed to offer any such evidence.  Its only proof relating to the market value of the rental units at the Building is self-serving testimony from Kountze that he would have priced the rental units at a specific rate if he actually bothered to seek out tenants.  This evidence falls far short of what is necessary for Plaintiff to meet its burden of proof.  As such, Plaintiff's claims damages are entirely speculative, barring it from any recovery.

**B.      Plaintiff Cannot Meet its Burden to Show that Diversity of Citizenship Exists in this Action**

Diversity jurisdiction exists where an action is between citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000).   28 U.S.C.A. § 1332(a)(1).  A party seeking to invoke diversity jurisdiction *must affirmatively allege the actual citizenship* of the relevant parties.  *Kanter v. Warner-Lambert Co.* (9th Cir. 2001) 265 F.3d 853.  The burden of persuasion for establishing diversity jurisdiction *lies with the party asserting it* — in this case, Plaintiff.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

With respect to limited liability companies like Plaintiff, "an LLC is a citizen of every state of which its owners/**members** are citizens."  *Johnson v. Columbia Properties Anchorage, LP* (2006) 437 F.3d 894, 899 (emphasis added); *see also Cosgrove v. Bartlotta* (7th Cir. 1998) 150 F.3d 729, 731 ("the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members.").

With respect to a corporation, like Odlaw, a corporation is deemed to be a citizen of both the state where it has been incorporated and the state where it has its "principal place of business."  28 U.S.C.A. § 1332(c)(1).  A corporation's "principal place of business" is "the place where a

corporation's officers direct, control, and coordinate the corporation's activities," or in other words, its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)

Here, Plaintiff cannot meet its burden to establish that it is not a citizen of California and that diversity jurisdiction exists here. First, Kountze represented to the Court that he was the "part owner" of Plaintiff. [Dkt. No. 14, ¶ 1.] Once the citizenship of Plaintiff became an issue, Kountze backpedaled and claimed he was the sole owner of Plaintiff. [Dkt. No. 24, ¶ 1.] This was despite the fact that, in the past, he had represented to others that he was *not* the sole owner, and that "Odlaw, Inc." was also an owner of Plaintiff. [Exhibits 11 and 18.] Even after being ordered by the Court to name all members of 640 Octavia, LLC [Dkt. No. 29], Kountze affirmed he was the "sole owner" of 640 Octavia, LLC and did not mention Odlaw. [Dkt. No. 30.] At his deposition, Kountze doubled down and affirmed he was the "sole owner" *and* "sole member" of Plaintiff, and made no mention of Odlaw, Inc. [Kountze Depo at 18:19-19:21, 20:12-16 ("sole partner"); 20:17-22 ("sole member").] Then at the Evidentiary Hearing, Kountze changed his story entirely and claimed he owned Odlaw, Inc. and that Odlaw, Inc. was the sole owner of Plaintiff. [Kountze Test. at 81:15-82:14.] When asked about all of these discrepancies, Kountze simply blamed his lawyers. [Kountze Test. at 115:1-117:4.] Then, Plaintiff's counsel implored the Court to *disregard* his own client's testimony and believe the documents submitted to the Court regarding the ownership structure of Plaintiff, apparently not realizing that the Resolution showed that Odlaw, is in fact a member of Plaintiff, and has been since its inception. [Walston Test. at 136:18-138:2; Exhibit 17.] The confusion raised by all of the conflicting evidence above led the Court to leave the determination of Plaintiff's citizenship in the hands of the jury, by holding Pieper's motion to dismiss this action for lack of subject-matter jurisdiction in abeyance. [Dkt. No. 62.]

Plaintiff no doubt wanted to avoid representing to the Court that Odlaw, is a member of Plaintiff, at all costs, because then Plaintiff would have to show that Odlaw does not have its "principal place of business" in California in order to defeat diversity jurisdiction, which Plaintiff will not be able to show at trial. Martinson, who is the only known agent of Odlaw, Inc. and operates its principle place of business — resides in and is a citizen of California. [Exh. 24; Kountze Test. 81:1-25; Martinson Depo at 8:21-9:3.] Moreover, even if Odlaw were a shell corporation without any real activity, its status as a member of 640 Octavia LLC means that 640 Octavia, LLC's "principal place of business" would effectively be Odlaw's principal place of business. This "place" is California, as Plaintiff owns and operates no other property, nor does it

conduct any business other than owning and operating the Building.  Accordingly, Plaintiff will not be able to show that diversity of citizenship exists in this action.

Finally, as described above, Plaintiff will not and cannot demonstrate that it suffered damages in an amount exceeding $75,000, because its damages are far too speculative  Cal. Civil Code § 3301; *Vestar Development II,* 249 F.3d at 961.  The evidence shows that Plaintiff was never interested in renting out units in the Building not because he was objectively unable to do so because of Pieper's and Montoya's conduct, but because he simply not interested in being a landlord.  Two apartments in the Building have been vacant since over **16 months** (Apartment 1) and **1 year** (Apartment 4), respectively, prior to the filing of this lawsuit.  The evidence will also show that Plaintiff has deliberately refused to fill these apartments with tenants of its own accord, rather than due to the behavior of Pieper's guests, and has even rejected Pieper's offers to help secure new tenants.  In contrast, Plaintiff has allowed various friends of Kountze to stay in the Building without any charge, including Martinson and Dan Amarel.  If Plaintiff was interested in renting apartments in the Building, it could have done so since Kountze's friends has been residing in the Building without any interference.  Further, Plaintiff decided to formally get out of the rental market by serving Pieper with the Notices to Quite that remove all apartment from the rental market under the Ellis Act.  Once again, this decision demonstrates a clear desire by Plaintiff to get out of the business of being a landlord altogether and shows that his prior eviction attempts were motivated by this reason, rather than any actions undertaken by Pieper or Montoya. Finally, Plaintiff will not meet its burden of proof to establish any damages for lost rent because it will not proffer any expert or technical evidence on this point, such that the damages may be calculated with "reasonable certainty and probability."  *Vestar Development II,* 249 F.3d at 961; *First Nat. Mortg. Co.*, 633 F.Supp.2d at 994.   As such, Plaintiff cannot demonstrate the jurisdictional minimum to establish the Court's diversity jurisdiction over this action.

## IV.    CONCLUSION

Based on the foregoing, this action should be dismissed because Plaintiff will not be able to establish that this Court has any subject-matter jurisdiction over this action, because there is no diversity jurisdiction, as the evidence will show that Plaintiff and Pieper are both citizens of California.  Further, even if Plaintiff could overcome this impossible hurdle, the jury will still find in Pieper's favor on the merits, as Plaintiff will not meet its burden of proof or persuasion on any of its claims against Pieper.

1

2

3     Dated: March 13, 2019                    PERETZ & ASSOCIATES

4

5

6                                             By: _____

7                                                 Yosef Peretz
                                                  David Garibaldi
                                                  Attorneys for Pieper
8                                                 KARL-HEINZ PIEPER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

October 07, 2014

This document stands as an agreement between Jose Montoya Garcia and Kalle Pieper in regard to Mr. Jose Montoya Garcia's month-to -month tenancy as a sub-tenant at 640 Octavia Street #3, San Francisco, CA, 94102.

Mr. Jose Montoya Garcia agrees to pay $471.80 and $243.20 utilities, furniture rental and cleaning services for the common areas (total of $725.00) a month as rent and utilities effective November first and will also pay $450.00 as a deposit against damage of the premises. Rent and utilities, furniture rental and cleaning services for the common areas will henceforth be due on the 1st calendar day of each following month. All monies will be paid to Kalle Pieper. Mr. Jose Montoya Garcia also acknowledges he has received and read the San Francisco Rent Board's Ordinance, Section 6.15C, on Master Tenants acting as landlords. As stated in the ordinance, Kalle Pieper (Master Tenant) retains the right to terminate this month-to-month tenancy agreement with Mr. Jose Montoya Garcia (sub-tenant) at any time for any reason with 30 days notice. Mr. Jose Montoya Garcia also may terminate this month-to-month agreement with Kalle Pieper for any reason at any time with 30 days notice.

As also stated in the Rent Board Ordinance, Section 6.15C, Kalle Pieper hereby informs Mr. Jose Montoya Garcia in writing that the total rent for 640 Octavia St # 3 is $943.61 per month.

The Monthly amount of $725.00 per month that Mr. Jose Montoya Garcia pays to Kalle Pieper will cover the rent and Mr. Jose Montoya Garcia share of the cost for PG&E, high speed internet access, water, and garbage, furniture rental and cleaning services of the common areas. The rent of $471.80 per month paid by Mr. Jose Montoya Garcia entitles him to one room for his exclusive use (the bedroom to the left side at end of hallway). In addition, Mr. Jose Montoya Garcia will have full access to the common areas including the kitchen and the bathroom. Access to the garage for one bicycle storage is also included. Laundry facilities or the use thereof are not included.

By signing below, Mr. Jose Montoya Garcia also confirms illegal drugs, smoking and excessive drinking of alcohol are not allowed at 640 Octavia St. #3 Street, San Francisco, CA 94102. Mr. Jose Montoya Garcia also agrees to tidy up the common areas after each use, to recycle and to clean up the kitchen and the shower after each use, leaving them the way he found them.

Aside from the month-to-month agreement stated above, this agreement may not be used to infer or exercise any other rights regarding 640 Octavia Street #3, San Francisco, CA, 94102.

Signed, this October 07th 2014 by:

Kalle Pieper:                                     Jose Montoya Garcia:

# Topic No. 359: Section 6.15c(3) Petitions Based on Proportional Rent

Pursuant to Rules and Regulations Section 6.15C(3), a master tenant who shares a rental unit with one or more subtenants cannot charge any subtenant more than a proportional share of the total rent the master tenant pays to the landlord. For tenancies that commenced after May 24, 1998, the master tenant is required to provide each subtenant a written disclosure of the amount of rent the master tenant is obligated to pay the owner, prior to commencement of the sub tenancy.

The allowable proportional share of total rent may be calculated based on equal division among occupants, or the square footage shared with and/or occupied exclusively by the subtenant, or any other method that allocates the rent such that the subtenant pays no more to the master tenant than the master tenant pays to the landlord for the subtenant's housing and housing services. In determining the proper base rent, additional housing services (such as furnishings or utilities) provided by the master tenant and/or any special obligations of the master tenant and/or evidence of the relative amenities or value of rooms, may be considered.

If the total rent paid by the master tenant to the landlord increases due to a lawful rent increase or pass-through, the subtenant's share of the rent may be proportionately increased without regard to the subtenant's anniversary date. Similarly, if the total rent owed to the landlord by the master tenant decreases, the subtenant's proportional share of rent should be decreased accordingly.

A subtenant who believes he or she is paying more than a proportional share of the total rent may file a Tenant Petition against the master tenant on that basis. If the subtenant prevails, the Administrative Law Judge will adjust the rent and order the master tenant to refund any rent overpayments.

To receive a copy of the Tenant Petition form, you can fax it to yourself through our Fax Back system by calling 252-4660 or visit our website at www.sfgov.org/rentboard. The form is also available at our office.

June 2006

Kalle Pieper acknowledges the receipt of

$725.00 for November 2014,
$725.00 for the last month rent and Utilities
$450.00 for security deposit

Total of $1900 for 640 Octavia St. #3

From Jose Montoya Garcia

Kalle Pieper, October 07th 2014

*[signature]*   10 - 15 - 14

# EXHIBIT 2



The
**WALSTON**
LAW GROUP

November 14, 2017

Karl-Heinz Pieper
640 Octavia St., #3
San Francisco, CA 94102

**Re: Notice of Violation of Lease Agreement**

Dear Mr. Pieper,

It has come to my attention that you are in violation of the terms of your lease agreement.

Pursuant to paragraph 4 of your lease, you are not to interfere with the use and enjoyment of the premises for other tenants or engage in unlawful acts. Your constant, almost daily stream of late night visitors disturbs the peace and quiet of the other tenants. Sometimes they knock on the wrong door waking up your neighbor. There have also been several incidents of guests coming from/going to your unit who have harassed neighbors. As a reminder, quiet hours for the building are 10 p.m. to 7 a.m. This disruptive behavior must cease immediately or further action will be taken.

Additionally, you have violated provision (h) of the terms of your lease by passing out copies of keys to the building to strangers. Copies of keys to the building are for your use only. This is a stark violation of the safety of the other tenants and must be ceased at once. Otherwise, compromising the safety of the building may be grounds for eviction.

It has also come to my attention that you are sharing your unit with another person. This is also a violation of your lease. Paragraphs 7 and 13 of the lease expressly state that your unit is for one adult only and that you may not sublet the unit. As the master tenant, it is your duty to inform the person you are sharing your unit with that he or she is not allowed to reside on the premises. Otherwise, dual occupancy of the unit may be grounds for your eviction.

Four Charlton Court · San Francisco, California 94123 · Telephone: (415) 956-9200 · Facsimile: (415) 956-9205

Please contact me if you have any further questions.

Thank you for your consideration.

Regards,

The Walston Law Group

Gregory S. Walston
Attorney at Law

**EXHIBIT 3**

**From:** Kalle Pieper <kallepieper@yahoo.com>
**To:** "jean.boldan@gmail.com" <jean.boldan@gmail.com>
**Cc:** "gilberthitchcockfinancial@gmail.com" <gilberthitchcockfinancial@gmail.com>; Montoyajose19 <montoyajose19@yahoo.com>
**Sent:** Wednesday, November 29, 2017 10:21 PM
**Subject:** Ed's letter regarding the incident on Aug 21st 2017

Hello Ed and Jean,

I am using Jean's email since in the past that was the one Ed and I used to communicate during the sale of the building.
I hope that this is O.K with Jean, and you, Ed,since I have no postal address where I could reach you faster.

Please let me know which email - or postal address you prefer me to use in the future.

First of all I thank you for your letter and apologize for the experience you had on the 21st of August.
I had no idea and share your concerns around the safety and who has keys and access to the building.

After Jose came home from his work tonight him and I had a conversation about the importance of trust between him and us,

and the importance of security.
How important it is, that you and I can trust him to make responsible choices around the people that come into your building and my home.

Regarding the incident on August 21st, Jose told me that he remembers having his friend Miguel over on that Monday evening. Jose reports that Miguel had left something in his car and wanted to go to his car to get it.

Since the doorbell hadn't been working for over a year, Jose felt is would be O.K. to give his friend Miguel his only set of keys so Miguel could step outside and come right back after retrieving something from his car.

Jose told me tonight that he remembers the verbal exchange between Miguel and Ed, and we are both very sorry for Miguel's behavior.
Jose also assured me tonight that Miguel did return the keys to 640 Octavia Street right after he came back up.

Personally I also recall that there was a time in August where Jose had more visitors than I felt comfortable with.
At that time - a few month ago - Jose and I had a conversation and I asked Jose to stop having numerous visitors.
Of course I am not always home when Jose is home and vice verso, but as far as I can tell, I never noticed any further incidents of several visitors coming and going into the 640 Octavia St. Building during the same day.

Tonight during my conversation with Jose, we talked about how much we enjoy living at this apartment and in fact how we both depend on staying in this apartment in order to continue our lives in San Francisco.


I am sincerely sorry for any trouble Jose's visitors have caused you that night and probably in generall in the past.
After my conversation with Jose tonight, It seems to me that Jose sincerely regrets his visitors behavior and understands the importance to keep visitors to a very low key minimum.


In regards to your question on how many keys to 640 Octavia are with any of our friends, Jose assures me that there are no friends or family on his part that have any keys to the building - as he stated earlier, Miguel returned the key the same night.


I have 1 set of keys for the front door, and my apartment front and back door with my friend of 30 years and employer for 12 plus years, Paolo Broggi.
He also has power of attorney for my financial and health matters and access to my bank accounts.
As I have keys to his condominium and access to his accounts.

He knows my family in Europe and I know his family in Europe.

Jean and you probably remember him, he used to live here at 640 Octavia St with me for over 10 years when you 2 moved in.

I can assure you that there is nothing for you or anybody to worry about with Paolo having keys,
I like him to be able to check on things when I travel occasionally, especially my house plants who have not done so well under Jose's care 2 years ago, before you bought the building.


anyway, Jose has asked me to include his email address and his cell phone number, so that you can please let him and of course me, know right away if there is any concern or problem.


his email is montoyajose19@yahoo.com and his cell phone number is (415) 812-5556


We hope very much to be able to get your trust and confidence back and to make this work for you.


Please let me know if you have any questions at this time.


Peace,


Kalle

# EXHIBIT 4

# TEN-DAY NOTICE TO CURE OR QUIT
## (BREACH OF COVENANT)

**TO:** Mr. Karl-Heinz Pieper

**PLEASE TAKE NOTICE** that you have violated the following covenant(s) of your apartment rental agreement/lease dated September 9, 1993, for the premises located at: 640 Octavia St., #3, San Francisco, CA 94102.

1) **Paragraph 9**, which provides that the premises shall not be occupied in whole or part by any person other than the renter/lessee, Karl-Heinz Pieper. This covenant has been violated in that some unknown individual has been residing in the subject premises without the landlord's express consent.

2) **Paragraph 13**, which maintains that the subject premises shall not be assigned, let or sublet to a third party because the premises are for the exclusive use of the lessee. This covenant has been violated in that some unknown individual has been residing in the subject premises without the landlord's express consent.

Pursuant to the San Francisco Rent Ordinance, Sections 37.9 a(2)(D) and 6.15E, if this violation is not cured within **TEN (10) days** after service of this notice upon you, the undersigned will commence legal proceedings against you to 1) declare a forfeiture of your rental agreement/lease, 2) to recover possession of the premises, and 3) to recover damages for each day you occupy the premises after the periods covered by this notice and costs of suit.

Please refer to the San Francisco Rent Board if you desire further advice.

Dated: December 1, 2017

Gregory S. Walston
Attorney for 640 Octavia, LLC

The Walston Law Group
Four Charlton Court
San Francisco, CA 94123
T: 415-956-9200
Email: gwalston@walstonlaw.com

# EXHIBIT 5

# g3mh

ATTORNEYS AT LAW

GOLDSTEIN, GELLMAN, MELBOSTAD, HARRIS & McSPARRAN LLP

1388 SUTTER STREET
SUITE 1000
SAN FRANCISCO
CALIFORNIA 94109
(415) 673-5600 TEL
(415) 673-5606 FAX
www.g3mh.com

**Via Email and First Class Mail**
Gregory Walston
The Walston Law Group
Four Charlton Court
San Francisco, CA 94123

December 6, 2017

Re:   *640 Octavia Street, #3, San Francisco, CA 94102 (the "Premises")*
      Our File No.

Dear Mr. Walston,

Our office represents Mr. Kalle Pieper with regard to the above-referenced property.  Please address all communications regarding this matter to me.

We are in receipt of your 10-Day Notice to Cure or Quit Dated December 1, 2017 (the "Notice"). Your Notice fails to comply with the San Francisco Rent Ordinance, both procedurally and substantively.  Moreover, your client's xenophobic communications and general antagonism toward Mr. Pieper wreak of bad faith in light of his age and long-term tenancy.

Mr. Pieper is permitted to sublease the Premises under the terms of his current lease.  In 1995, Mr. Pieper began subletting the Premises to a roommate with the written approval of his former landlord. Since then, he has continued to sublease the Premises to roommates at a one-for-one basis. His current roommate, Jose Montoya, moved in to the Premises in 2014, again with the written approval of Mr. Pieper's former landlord.

Furthermore, under Section 37.9(a)(2) of the San Francisco Rent Ordinance, a landlord shall not endeavor to recover possession of a rental unit for the tenant's addition of occupants to the rental unit, so long as they do not exceed the maximum number of allowable occupants.

On November 29, 2017, after receiving threatening communications from your client and your office, our client wrote to Mr. Kountze confirming the identity of a guest with whom Mr. Kountze had interacted, and providing further contact information for his roommate. In this letter he mentioned that he depends on staying in the apartment in order to continue his life in San Francisco. Two days later he received the deficient Notice from your office threatening him with eviction.

December 6, 2017
Page 2

We request that you immediately rescind, in writing, the Notice of December 1, 2017 and desist from further harassment of Mr. Pieper and his roommate.  Otherwise Mr. Pieper will not hesitate to seek any and all legal remedies available to him.

Very truly yours,

Ashley E. Klein
120417B.docx

**EXHIBIT 6**

# THREE-DAY NOTICE TO QUIT OR CURE
## (MAINTAINING A NUISANCE/ ILLEGAL ACTIVITY)

TO: Mr. Karl-Heinz Pieper

**PLEASE TAKE NOTICE** that you are hereby requested to **cease the nuisance** and violation of the quiet use and enjoyment of the landlord and/ or tenants within **THREE (3) days** after service of this notice upon you, otherwise you will be subject to a **THREE-DAY NOTICE TO QUIT** and return possession of the premises.

You have repeatedly violated the following covenant(s) of your apartment rental agreement/lease dated September 9, 1993, for the premises located at: 640 Octavia St., #3, San Francisco, CA 94102.

1) **Paragraph 4**, which provides that the renter/lessee, Karl-Heinz Pieper, will refrain from "creating noise, waste, disturbing the enjoyment of others, [and] performing unlawful acts." This covenant has been violated almost nightly.

   Nearly every 10-15 minutes between the hours of 11pm and 3am, there is a parade of random people traipsing in and out of your unit and fumbling around the building, disturbing the quiet and enjoyment of the other tenants. Sometimes the tenants knock on the wrong door, disturbing other tenants. There have even been instances of your guests harassing other neighbors. This behavior has been persistent and on-going since at least June 2017.

2) **Paragraph 15(h)**, expressly states that "keys are to be retained for lessee's use only." There have been multiple occasions of strangers using keys to access the common areas of the building in order to go to your unit. Additionally, there have also been occasions of strangers using the garage code to gain entry to the building. These are clear violations of your rental agreement/lease and jeopardizes the safety of all the tenants in the building.

You have received prior written warning about discontinuing this nuisance on November 22, 2017. You are committing or permitting to exist a continuous nuisance in the rental unit and to the common areas of the building containing the rental unit, and are creating unreasonable interference with the comfort, safety and enjoyment of any other residents of the building.

Pursuant to the San Francisco Rent Ordinance, Sections 37.9(a)(3) and 37.9(c), if you do not cease this nuisance within **THREE (3) days** after service of this notice upon you, the undersigned will commence legal proceedings against you to 1) declare a forfeiture of your rental agreement/ lease, 2) to recover possession of the premises, and 3) to recover damages for each day you occupy the premises after the periods covered by this notice and costs of suit.

Please refer to the San Francisco Rent Board if you desire further advice. www.sfrb.org

Dated: December 15, 2017

Gregory S. Walston
Attorney for 640 Octavia, LLC
The Walston Law Group
Four Charlton Court
San Francisco, CA 94123
T: 415-956-9200
Email: gwalston@walstonlaw.com

**EXHIBIT 7**



ATTORNEYS AT LAW

GOLDSTEIN, GELLMAN, MELBOSTAD, HARRIS & McSPARRAN LLP

1388 SUTTER STREET
SUITE 1000
SAN FRANCISCO
CALIFORNIA 94109
(415) 673-5600 TEL
(415) 673-5606 FAX

**www.g3mh.com**

**Via Email and First Class Mail**
Gregory Walston
The Walston Law Group
Four Charlton Court
San Francisco, CA 94123

December 19, 2017

Re:     *640 Octavia Street, #3, San Francisco, CA 94102 (the "Premises")*
          Our File No. 9474

Dear Ms. Walston,

On December 6, 2017, I wrote to you informing you that our office represents Mr. Kalle Pieper with regard to the above-referenced property.  We requested that you address all communications regarding this matter to me.  We further requested that rescind your Notice served on December 1, 2017 and desist from further harassment of Mr. Pieper and his roommate.  Our office received no response.

On December 15, 2017, your firm sent the attached Three-Day Notice to Quit or Cure to Mr. Pieper, which was again, substantively and procedurally deficient.  These frivolous Notices contain patent falsehoods and gross exaggerations, and can only be intended to harass my client and his roommate, who have every right to enter and leave the Premises as they choose.  My client further maintains his right to have guests and visitors—however he notes that neither he nor his roommate have even had visitors during the timeframe alleged in your most recent Notice.

///

///

///

///

December 19, 2017
Page 2

This influx of senseless and hostile correspondence to my client, threatening eviction over the holiday season, can only be interpreted as an attempt by your client to drive him out of his home of the past twenty-four years.  We are again requesting that you rescind both your Notice of December 1, 2017 and your Notice of December 15, 2017 and cease and desist from further harassment of my client and his roommate.  We request that you respond no later than December 22, 2017, or we will have no choice but to pursue any and all legal remedies available to Mr. Pieper.

Very truly yours,

Ashley E. Klein
Encl.
121817C.docx

# EXHIBIT 8

# JANUARY 29, 2018
# THREE-DAY NOTICE TO QUIT
## (MAINTAINING A NUISANCE/ ILLEGAL ACTIVITY)

**TO:** Mr. Karl-Heinz Pieper

**PLEASE TAKE NOTICE** that <u>at the expiration of **THREE (3) days**</u> after service of this notice upon you, you are hereby requested to quit, and return possession of the premises now held and occupied by you at <u>640 Octavia St., #3, San Francisco, CA 94102</u>.

The reason for terminating your tenancy is as follows:

You have received several prior warnings and written notices about nuisance, as well as a Three-Day Notice to Quit or Cure. You are committing or permitting to exist a continuous nuisance in the rental unit and to the common areas of the building containing the rental unit, and are creating unreasonable interference with the comfort, safety and enjoyment of any other residents of the building.

September 28-30, 2017:

> On an ongoing and constant basis at all hours, including between the hours of 11pm and 3am, there was a parade of random people traveling in and out of the lessee's unit and fumbling around the building, disturbing the quiet and enjoyment of the other tenants. Some of the subjects inexplicably have keys (which were apparently given them by you), some forcibly access the building, and some stand outside ringing every doorbell to the building. All these individuals were apparently going to your unit. This is a violation of your rental agreement/lease and jeopardizes the safety of all residents.

October 1-31, 2017

> Nearly every day at all hours, including between the hours of 11pm and 3am, there was a parade of random people traipsing in and out of the lessee's unit and fumbling around the building, disturbing the quiet and enjoyment of the other tenants.

> There were been multiple occasions of strangers using keys to access the common areas of the building in order to go to your unit. This is a violation of your rental agreement/lease and jeopardizes the safety of all the tenants in the building.

November 17-19, 2017

> Despite being on notice of the aforementioned violations, the inexplicable stream of strangers accessing the building continued, with strangers gathering outside, going inside (sometimes with keys), and going into your unit for 15 minutes or so before leaving. Some of the strangers even forcibly accessed the building, and some stand outside ringing every doorbell to the building.

December 10-17, 2017
>Random strangers gathered outside late at night in a threatening manner and loudly rang ringing all of the buzzers in the building attempting to get into your unit and also trying to pick the locks to the front door to gain access.

December 24-28, 2017
>Random strangers were coming into the building during all hours of the day and night, this time by accessing the back stairs to avoid being seen in the front of the building. This commotion was disturbing the tenant next door as well as a short-term tenant inside the building, who was frightened and had to lock himself inside his unit. He had difficulty sleeping due to the nightly disturbance and also felt unsafe due to the traffic of strangers going in and out of the building for apparently illicit purposes.

January 5-28, 2018

>Approximately 35 strangers went in and out of the building, fumbling around the common areas before entering your unit. They stayed for a brief time, between 15 and 45 minutes, before leaving.

You have received a prior written Three-Day Notice to Quit or Cure about discontinuing this nuisance on December 15, 2017. Since you failed to heed this notice, **pursuant to the San Francisco Rent Ordinance, Sections 37.9(a)(3) and 37.9(c), if you fail to vacate within THREE (3) days after service of this notice upon you, the undersigned will commence legal proceedings against you to 1) declare a forfeiture of your rental agreement/ lease, 2) to recover possession of the premises, and 3) to recover damages for each day you occupy the premises after the periods covered by this notice and costs of suit.**

Please refer to the San Francisco Rent Board if you desire further advice.

Dated: January 29, 2018

Gregory S. Walston
Attorney for 640 Octavia, LLC

The Walston Law Group
Four Charlton Court
San Francisco, CA 94123
T: 415-956-9200
Email: gwalston@walstonlaw.com

# EXHIBIT 9

| DATE | TIME | IN | OUT | INITIAL OF VISITOR | OBSERVED |
|------|------|-----|------|------|------|
| 1-30-18 | 7:00 PM | X | | | KP |
| 1-31-18 | 8:30 PM | X | | | J.R. |
| 2-1-18 | 7:AM | | X | | K.P. |
| " | 10:41 AM | X | | | KP |
| 2-1-18 | 11:30a | | X | | J.M. |
| " | 4:30 | | X | | K.P. |
| " | 6:00 | X | | | J.R. |
| " | 10:15 P | X | | | J.R. |
| 2-2-18 | 7:45 AM | | X | | JM |
| " | 9:45am | X | | | JM |
| " | 10:10am | | X | | JM |
| " | 10:15am | X | | X | JM |
| " | 11:00am | | X | | JM |
| " | 11:05am | X | | | J.R. |
| " | 11:30am | | X | | K? |
| 2-2-18 | 12:0, P | | X | | K.?. |
| " | 12:30P | X | | | K.?. |
| " | 12:55 | | X | | " |
| " | 15:20 | X | | | " |
| " | 15:30 | | X | | " |
| " | 16:45 | X | | | JM |
| " | 8:29 | X | | | JM |
| " | 9:47 | | X | | |

| DATE | TIME | IN | OUT | INITIAL VISITOR | OBSERVER |
|---|---|---|---|---|---|
| 2-3-18 | 12:05 | X | | ~~JW~~ | JM |
| " | 8:40 | | X | | " |
| " | 9:25am | X | | | " |
| " | 10:20am | | X | | " |
| " | 13:00 | X | | | KP |
| " | 16:10 | X | | JOHN | |
| " | 16:40 | X | X | JOHN | |
| " | 18:20 | X | X | | KP |
| " | 7:40pm | X | | | JM |
| " | 8:20am | | X | | JM |
| " | 8:30m | X | | | KP |
| 2/4/18 | 8:02 | X | | | JM |
| " | 10:00am | | X | | JM |
| " | 11:15 | | X | | KP |
| " | 16:15 | X | | | KP |
| " | 17:20 | | | ASCAN | |
| " | 8:50pm | X | | | JM |
| " | 8:30m | | X | ASCAN | |
| " | 9:45 | | X | | KP |
| 2-5-18 | 0100 | X | | ~~FU~~ | KP |
| " | 10:00 | | X | | KP |
| 2-5-18 | 17:30 | X | | | KP |

| DATE | TIME | IN | OUT | VISITOR | WS |
|------|------|----|----|---------|-----|
| 2-5-18 | 18:15 | | X | | CP |
| " | 21:00 | X | | | K.P. |
| 2-6-18 | | | | | |
| " | 3pm | X | | | JM |
| " | 19:45 | X | | | JED |
| " | 8.pm | | X | | JM |
| " | 9:41pm | X | X | | JM |
| " | 10:53pm | X | | C L | CL |
| " | 11:08pm | | X | C L | CL |
| " | 10:00 PM | | X | | K.P |
| " | 11:30 PM | X | | | K.P. |
| 2-7-18 | 9:00 AM | | X | | P.P. |
| " | 11:30 | X | | | K.P. |
| " | 10:00 am | X | | | J.A. |
| " | 11:30 am | | X | | J.N. |
| " | 12:05 | | X | | K.P |
| " | 20:45 | X | | | KM |
| " | 8:47 | X | | | JM |
| 2-8-18 | 8:40 | | X | | JM |
| " | 9:36 | X | X | | JM |
| " | 11:09 | | X | | JM |
| " | 17:20 | X | | | KP |

④

| DATE | TIME | IN | OUT | VISITOR | WS |
|------|------|----|-----|---------|-----|
| 2-8-18 | 23:45 | | X | | KP |
| " | 11:10pm | X | | | JM |
| 2-09-18 | 01:25 | X | | ?? EP | |
| " | 7:27 | X | X | | EP |
| " | 9:50 | X | | | JM |
| " | 10:15 | | X | | JM |
| " | 11:00am | | X | | KP |
| " | 18:25 | X | | | JM |
| " | 20:15 | X | | ISRAEL | KP |
| " | 8:41 | X | | | |
| " | 20:20 | | X | ISRAEL SCW | JM |
| " | 23:00 | X | | ACW | |
| " | 24:05 | | X | ACW | |
| 2-10-18 | 10:00am | | X | | JM |
| " | 16:— | | X | | KP |
| " | 19:20 | X | | " | |
| " | 19:30 | | X | | KP |
| " | 19:15 | X | | | |
| " | 7:35 | X | | | JM |
| " | 11:33 | X X | X | | |
| " | 11:00 | | X | | DR. MARTIN |
| " | 22:00 | | X | | KP |

Pieper 000080

| DATE | TIME | IN | OUT | GUEST | U | No |
|------|------|-----|-----|-------|---|----|
| 2-11-18 | 1:10 | X | | | K?. | |
| " | 11:300 | | ✗ | | J.? | |
| " | 7:30pm | X | | | JM | |
| 2-12-18 | 9:35pm | | X | | JM | |
| " | 12:31pm | X | | | JM | |
| " | 1:20 pm | | X | | JM. | |
| " | 6pm | X | | | JM | |
| " | 5:00 pm | X | | | KB | |
| " | 18:15 | | X | | K?. | |
| " | 21:30 | X | | | K.B. | |
| 2-13-18 | 10:46 | | X | | JM | |
| " | 4:06 | X | | | JM | |
| " | 18:45 | X | | | KB | |
| " | 18:58 | | X | | J.? | |
| " | ~~1:00pm~~ | | ~~X~~ | | ~~JM~~ | |
| " | 7:80pm | X | | | JM | |
| " | 22:35 | | X | | KB | |
| 2-14-18 | 1:30 | X | | | KB | |
| " | 11:08 | | X | | J.M. | |
| " | 8:00pm | X | | | JM | |
| " | 18:50 | X | | | KB. | |
| " | 26:50 | X | | | | |
| 23:00 | 28:15 | X | | TAC<br>TAC | | |

Pieper 000081

| DATE | TIME | IN | OUT | GUEST | US | NOTE (6) |
|------|------|-----|-----|-------|-----|------|
| 2-15-18 | 9:55 | | X | | K.P. | |
| " | 9:54am | X | | Chris | JL | NEIGHBOR IN CHINATOWN |
| " | 10:42am | | X | Chris | | |
| " | 11:34pm | | X | | JM | |
| " | 13:20 | X | | | KP | |
| 2-16-18 | 0:45 | X | | | KP | |
| " | 7:32 | | X | | JM | |
| " | 7:12 | X↑ | X↓ | GARAGE DOOR | | GARAGE DOOR |
| " | 9:43 | X | | | JM | |
| " | 11:00 | | X | | KP | |
| " | 17:50 | X | | | KP | |
| " | 18:00 | | X | | | HARTINSON EXITS BLDG |
| " | 20:30 | | | 12↓ | | |
| " | 9:15pm | X | | | JM | |
| " | 9:35pm | | X | | JM | |
| " | 22:5 | | X | 12↓ | JM | |
| " | 7:50am | X | | | JM | |
| " | 8:05am | | X | | | |
| Fri-Sat-17-18 | | | | | | |
| " | 7:50am | X | | | JM | |
| " | 8:05am | | X | | JM | |
| " | 8:53am | X | | | JM | |

Pieper 000082

⑦

| Date | Time | In | Out | Guest | US | Notes |
|------|------|----|----|-------|----|-------|
| 2-17-18 | 10:30am | | X | | JM | |
| " | 16 | X | | Gator | | |
| " | 17 | | X | GiD Port KP | | |
| " | 18 50 | X | | GiD 2Tr # | | |
| " | 19:0 | | X | | | |
| " | 8:00pm | X | | | KP | |
| " | 8:25pm | | X | | JM | |
| 2-18-18 | 12:00 | X | | | JM | |
| " | 11 co | X | | | KP | |
| " | 7:18 | | X | | JM | |
| " | 9:88 | X | | | JM | |
| " | 10:40 | | X | | KP | |
| " | 8:50 | X | | | KP | |
| " | 7:37pm | X | | | | |
| " | 8:17pm | | X | | JM | |
| " | 9:05 | X | | GAVIN | JM | |
| 2/19/18 | 1:22am | X | | | JM | |
| " | 1:00 | | X | GAVIN | | |
| " | 10:30 | | X | | KP | |
| " | 11:40am | X | X | Mike M | | |
| " | 11:59am | X | X | " | | |

Pieper 000083

⑤

| DATE | TIME | IN | OUT | GUEST | us |
|------|------|----|----|-------|-----|
| 02-19-18 | 12:07pm | X | | Cody | |
| " | 12:40pm | | X | Cody | |
| 02-20-18 | | | | | |
| " | 17:00 | X | | | KB |
| " | 5:42pm | | X | | JM |
| " | 7:20pm | X | | | JM |
| " | 10:38am | | X | | JM |
| " | 12:37pm | X | X | | JM |
| " | 2:32pm | | X | | JM |
| " | 6:00pm | X | X | | JM |
| " | 6:51pm | | X | | JM |
| " | 6:52 | X | | | KB |
| " | 8pm | X | | | Jose |
| " | 8pm | | | Javier | |
| " | 9:40pm | | X | Javier | |
| " | 21:00 | | X | | KB |
| 02-21-18 | 0:50 | X | | | KB |
| " | 6:20 | | | | GARBAGE Truck |
| " | 7:19am | | X | | JM  CRACKED  NO BOX |
| " | 10:16am | X | | | JM |
| " | 16:35 | X | | | JM |
| " | 16:40 | | X | | KB |
| " | 18:20 | X | | | KB |

| DATE | TIME | IN | OUT | CREDIT | WS | REPORT |
|---|---|---|---|---|---|---|
| 02-21-18 | 2:02 | X | | Trust Bruce | | |
| 11 | 11:30 am | | X | | Jose M | |
| 11 | 8:28 pm | X | | | JM. | |
| 11 | 10:45 | | X | Bruce R. | JM | |
| 2-22-18 | 8:31 am | | X | | JM | |
| 11 | 9:44 am | X | | | JM | |
| 11 | 11:00 am | | X | | K8 | |
| 11 | 11:00 am | | | | JM | |
| 11 | 8:20 | X | | | 48 | |
| 11 | 8:54 | X | | | JM | |
| 11 | 23:10 | | X | | K.P | |
| 2-23-18 | 2:00 am | X | | | KP | |
| 11 | 7:44 am | | X | | JM | |
| 11 | 9:38 | X | | | JM | |
| 11 | 10:15 | | X | | K.P. | |
| 11 | 11:21 am | | X | | JM | |
| 11 | 18:00 | X | | | PP. | |
| 11 | 18:35 | | X | | KP | |
| 11 | 8:49 pm | X | | | JM — 3 day | |
| 11 | 9:07 pm | | X | | JM out NOTICE | |
| 11 | 11:40 | X | | | K8 — ASHES w/PED | |

2 week 3 sub  0 ES SPY CAMERA

| DATE | TIME | IN | OUT | GUEST | US | Sandia |
|------|------|-----|------|-------|------|--------|
| 2-24-18 | 7:36am | X | | | JM | |
| " | 7:52am | | X | | JM | |
| " | 8:47am | X | | | JMi | |
| " | 9:22am | | X | | JM | |
| " | 10:21am | | X | | JM | |
| " | 12:15 | | X | | K? | |
| " | 7:50pm | X | | | JM | |
| " | 8:28 | X | | Erick | | |
| " | 9:50 | | X | Erick | | |
| 7/25/18 | 7:00 | X | | | U.7 | 2:30 AM |
| " | 19:10 | X | | | K? | EN GARAGE |
| " | 8:55pm | | X | | JM | |
| " | 19:30 | | X | | K? | |
| " | 22:40 | X | | | K? | 3Cue |
| | | | | | | STICKER ON |
| 2/26/18 | 2:26am | X | | | JM | |
| " | 9:44am | | X | | JM | |
| " | 10:00A | | X | | K? | |
| " | 17:05 | X | | | K7 | |
| " | 18:15 | | X | | E7 | |
| " | 9:00 | X | | | K?. | |
| 2-27-18 | 9:05 | | X | | K.?. | |
| " | 12:00 (noon) | X | | | JM. | |

Pieper 000086

| DATE | TIME | IN | OUT | GUEST (s) | |
|---|---|---|---|---|---|
| 2-27-18 | 1:25pm | X | | MJ | |
| " | 2:10pm | | X | MJ | |
| " | 3:17pm | X | | Nick | |
| " | 3:30pm | | X | NICK | |
| " | 4:45pm | | X | JM " | |
| " | 4:35pm | X | | JM | |
| " | 5:22 | | X | JM " | #2 WATER Running |
| " | 5:58 | X | | KD | |
| " | 18:30 | X | | KP | |
| " | 21:15 | | X | KP | |
| 2/28/18 | 23:45 | X | | JM | |
| " | 7:28am | | X | JM | |
| " | 9:37am | X | | KP | Running water |
| " | 10:35 | X | | KP | |
| " | 11:28 | | X | JM | |
| " | 11:35 | | X | KP | |
| 2/28/18 | 19:45 | X | | KD | Maintenance left |
| " | 19:55 | | X | KP | |
| " | 16:16 | X | | KP | |
| " | 18:50 | | X | KP | |
| | 9:40pm | X | | JM | |

Pieper 000087

(13)

| DATE | TIME | IN | OUT | GUEST | US | |
|------|------|----|----|-------|----|----|
| 2/28/18 | 9:37pm | X | | Daniel | | |
| " | 10:00am | | X | Daniel | | |
| " | 10:30pm | X | X | | K? | 10:45 MARTILSON LEFT. |
| 3-1-18 | 7:76am | | X | | JM | |
| " | 8:40 | | X | | K.? | |
| " | 8:48 | X | | | JM | |
| " | 11:05am | | X | | JM | — 3CW E TAPE REMOVE FROM CASE |
| | 18:00 | X | | | K? | |
| " | 19:50pm | X | | | JM | SAVED MAIL RENEW PHN #2 |
| " | 22:25 | | X | | K? | |
| 3-2-18 | 1:00 | X | | | K? | |
| " | 7:21am | | X | | JM | |
| " | 10:00am | X | | | JM | |
| " | 11:10am | | X | | K? | |
| " | 10:12 | | X | | K? | |
| " | 18:30 | X | X | | K? | LIGHT DOWN #2 FEW DAYS NOW |
| " | 8:28pm | | X | | JM. | |
| " | 8:42 | X | | Russel CITY | JM | |
| " | 8:37 | X | X | | | |
| " | 11:23pm | X | | Joshua | | |
| " | 11:50pm | | X | Joshua Russell CITY | | |
| 3-3-18 | 6:40 AN | | X | | | |

Pieper 000088

| DATE | TIME | IN | OUT | GUEST (S) | |
|---|---|---|---|---|---|
| 3-3-18 | 8:09 am | | X | JM | |
| ~~ ~~ | ~~ ~~ | | ~~ ~~ | ~~ ~~ | |
| ~~ ~~ | ~~ ~~ | | ~~ ~~ | ~~ ~~ | |
| // | 9:00 am | X | | JM | |
| // | 10:05 am | | X | KP | |
| // | 10:18 am | | X | JM | |
| // | 19:10 pm | X | | JM | |
| // | 20:15 | X | | KP. | ? |
| // | 28.05 | | X | K.P. | |
| 3-4-18 | 0:17 | X | | K.P. | |
| // | 15:28 | | X | JM | got the House. 00 00 " GATE |
| // | 15:45 | X | | Proto | |
| // | 16:10 | X | | ADD AN GARY | |
| // | 18:50 | X | | JM | |
| // | 19:50 | X | | | Taylor |
| // | 20:00 | X | X | | Taylor JM |
| // | 20:00 | | X | | Taylor |
| // | 21:21 pm | | X | JM | |
| // | 22:00 | | | Carlton | |
| // | 23:45 | | X | Gary | |
| 3-5-18 | 12:31 | X | | JM | |
| // | 7:30 am | | X | JM | |
| // | 11:17 am | X | | JM | |

Pieper 000089

| DATE | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 3-8-18 | 11:20am | | X | | JM |
| " | 11:45am | X | | | JM |
| " | 1:29pm | | X | | JM |
| " | 3:20pm | X | | | JM |
| " | 3:45pm | | X | | JM |
| " | 10:5A | | X | | K? |
| " | 17:15 | X | | | K? |
| " | 18:15 | | X | | K? |
| " | 20:40 | X | | | K? |
| 3-6-18 | 7:00am | X | | | JM |
| " | 7:17am | | X | | JM |
| " | 8:16am | X | | | JM |
| " | 9:37am | | X | | JM |
| " | 10:05 am | | X | | K? |
| " | 3:40 pm | X | | | JM |
| " | 18:10 | X | | | K? |
| " | 21:15 | | X | | K? |
| " | 11:25 | X | | | K? |
| 3-7-18 | 7:00am | | X | | JM |
| " | 8:34am | X | | | JM |
| " | 11:29am | | X | | Guy from the 2nd with voltage |
| " | 11:30am | | X | | JM |
| " | 10:15 | | X | | K? |

Pieper 000090

| DATE | TIME | IN | OUT | GUEST | us |
|---|---|---|---|---|---|
| 31-7-18 | 0:00 | X | | | KP |
| " | 18:30 | | X | | KP |
| " | 20:50 | X | | | KP |
| " | 8:50 pm | X | | | JM |
| 3/8/18 | 7:05 am | | X | | JM |
| " | 8:00 Am | X | | | JM |
| " | 10:30 A | | X | | KP |
| " | 11:26 am | | X | | JM |
| " | 12:50 | X | | | KP |
| " | 18:30 | X | DA | DAVID | |
| " | 21:15 | | X | DAVID | |
| " | 10:29 pm | X | | | JM |
| " | 23:00 | | X | | KP |
| 3/9/18 | 0:50 | X | | | KP |
| " | 7:25 am | | X | | JM |
| " | 10:12 am | X | | | JM JM |
| " | 11:25 am | | X | | JM |
| " | 17:30 | X | | | KP JM |
| " | 0:30B | | X | | JM |
| " | 20:00 | X | | 3x Am | |
| | 22:20 | | | | |

Pieper 000091

(16)

| DATE | TIME | IN | OUT | Guest | US |
|------|------|-----|------|-------|-----|
| 3-10-18 | 7:00am | | X | | JM |
| " | 7:56 am | X | | | JW |
| " | 9:20am | | X | | JM |
| " | 15:05 | | X | | F.? |
| " | 8:22pm | X | | | JM |
| " | 9:56pm | X | | Cody | |
| " | 10:37pm | | X | Cody | |
| 3-11-18 | 0:53 | X | | | JM |
| " | 8:23am | | X | | JM |
| " | 8:50am | X | | | JM |
| " | 9:22am | | X | | JM |
| " | 9:40am | X | | | JM |
| " | 9:57am | | X | | JM |
| " | 10:01am | X | | | JM |
| " | 10:30am | | X | | JM |
| " | 14:30² | | X | | KP. |
| " | 17:40 | X | | | KP. |
| " | 15:50 | X | | JOSEF 1 | |
| " | 17:25 | X | | GEORG | |
| " | 17:30 | | X | GEORG | |
| " | 17:40 | | X | JOSEF | |
| 18 | 18:15 | | X | G | KP |
| " | 18:15 | | X | Gregor | |

Pieper 000092

| Date | Time | In | Out | Guest | US |
|------|------|----|----|-------|-----|
| 3-11-18 | 6:57pm | X | | | JM |
| " | 18:20 | x | | | KP |
| " | 18:20 | x | | Georg | |
| " | 8:57pm | | X | | JM |
| " | 21:00 | | x | Georg | |
| 3/12/18 | 8:3050 | | X | | JM |
| " | 10:15 | | x | | KP? |
| " | 11:45am | X | | | JM |
| " | 12:19pm | X | | | JM |
| " | 3:25pm | X | | | JM JM |
| " | 4:10pm | | x | GV | |
| " | 4:36pm | x | | GV | |
| " | 17:20 | X | | | KP |
| " | 18:30 | | x | | |
| " | 17:30 | | x | | JM |
| " | 18:50 | | x | | KP? |
| " | 08:15 | x | | | KP? |
| " | 5:06pm | X | | Keith | |
| " | 5:37pm | | X | Keith | |
| " | 8:37pm | | X | | JM |
| | 9:21pm | X | | | JM |

Pieper 000093

(18)

| DATE | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 3-13-18 | 9:20pm | | X | | JM |
| " | 10:10 | | X | | K? |
| " | 1:58 | X | | | JM |
| " | 1:36 | | X | | JM |
| " | 2:03 PM | X | | | JM |
| " | 4:07 | | X | | JM |
| " | 4:45 | X | | | JM |
| " | | | | KEITH | |
| " | 18:15 | X | | | K? |
| " | 20:15 | | X | | K? |
| 3-14 | 0:15 | X | X | | JM |
| " | 9am | | | | |
| " | 10:10am | X | | | JM |
| " | 10:45 | | X | | K? |
| " | 11:30am | | X | | JM |
| " | 9:03pm | X | | | JM |
| " | 22:20 | X | | | KP |
| 3-15-18 | 6:24am | | X | | JM |
| " | 8:41am | X | | | JM |
| " | 11:00 | | X | | K? |
| " | 18:10 | X | | | KP |
| " | 18:30 | | X | | K? |
| " | 9:57pm | X | | | JM |

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 2-16-18 | 0550 | ⟨ |  |  | KP |
| " | 1:20am | X |  | Keith | KP |
| " | 10:45A | | ⟨ |  | KP |
| " | 11:15am | | X | Keith | |
| | | | X | | JM |
| " | 18:50 | ⟨ |  |  | KP |
| " | 8:47pm | X |  |  | JM |
| " | 9:59pm | | X |  | JM |
| " | 11:44pm | X |  |  | JM |
| 3/17/18 | 10:30am | | X |  | JM |
| | 15:30 | | ⟨ |  | KP |
| " | 7:30pm | X |  |  | JM |
| " | 9pm | | X |  | JM |
| " | 12:03am | 12:03am |  |  | JM |
| 3-18-18 | 1:10 | X |  |  | KP |
| " | 11:45 | | ⟨ |  | JM |
| " | 13:90 | | ⟨ |  | KP |
| " | 10:30 | ⟨ |  |  | KP |
| " | 15:30 | | ⟨ | ISAAC | $1500. |
| " | 8:45 pm | X |  |  | JM   Fron J.A |
| 3-19-18 | 9:00 pm | | ⟨ |  | JM |
| " | 9:30am | X |  |  | JM |

(20)

| Date | Time | In | Out | Guests | US. |
|------|------|----|----|--------|-----|
| 3/19/18 | 11:18am | X | | Kevin | |
| " | 11:35am | | X | Kevin | |
| " | 11:56am | | X | J | JM |
| " | 15:00 | X | | | KP |
| " | 15:25 | | X | | KP |
| " | 4:28pm | X | | | JM |
| " | 6:04pm | | X | | JM |
| " | 8:37 | X | | | JM |
| " | 16:45 | | X | Kai+Anna | Kai |
| " | 16:45 | | X | | Kaile |
| " | 21:30 | X | | Kai | |
| " | 21:30 | X | | | K.P. |
| 3/19/18 | 9:54pm | | X | | JM |
| 3/20/18 | 9:23 am | X | | | JM |
| " | 10:35am | | X | | JM |
| " | 1:15 pm | X | | | JM |
| " | 1:57pm | | X | | JM |
| " | 2:05pm | X | | | JM |
| " | 2:25pm | X | | J. | |
| " | 2:31 pm | | X | J. | |
| " | 2:49am | | X | | JM |
| " | 4:04pm | X | | | JM |

| Date | Time | in | out | Guest | JS. (2) |
|------|------|----|-----|-------|---------|
| 3/20/18 | 4:42pm | X | | Kitthes | Kait Anna |
| " | 6:10 | X | | | KPc |
| " | 8:33pm | | ⊤ | | JM |
| " | 2:50 | | X | | K?. |
| 3-21-18 | 0:45 | x | | | K? |
| " | 9:30am | | X | | JM |
| " | 10:00 | | X | Kti | |
| " | 11:00 | | x | ANNA | |
| " | 10:20 | | X | | K? |
| " | 11:40am | | X | | JM |
| " | 17:45 | X | | k2i | |
| " | 17:45 | X | | Anu2 | |
| " | 17:43 | X | | | KD |
| " | 18:0 | | X | | K? |
| " | 18: | | X | -K2i | |
| " | 18:00 | X | | | K? |
| " | 19:00 | X | | KAi | |
| " | 8:52pm | X | | | JM |
| " | 22:90 | | ⊤ | | K8 |
| 3-22-18 | 0:05 | X | | | K5 |
| " | 7:00am | | X | | JM |
| " | 9:30am | X | | | JM |

Pieper 000097

(22)

| Date | Time | in | out | Guests | Us |
|---|---|---|---|---|---|
| 3-22-18 | 11:50 ✓ | | × | | KD |
| 1· | 11:30am | | × | | JM |
| " | 11:30 am | | × | Kai + Anna | |
| " | 18:25 72 | × | | | KD |
| " | 18:57 74 | × | | KAi Anna | |
| " | 19:40 | | × | KA, | KD |
| " | 21:45 | × | | Kai | |
| '' | 10:00 pm | × | | | JM |
| '' | 10:34 pm | | × | | JM |
| '' | 11:35 pm | × | | | JM |
| 3-23-18 | 0:50 | × | | | KD |
| " | 10:15 AM | | × | | Kalle |
| " | 10:30 AM | | × | Kai + Anna | |
| " | 9:00 am | | × | | JM |
| '' | 10:09 am | × | | | JM |
| '' | 12:23 | | × | | JM |
| " | 14:35 | × | | Kai + Anna | |
| '' | 17:15 | | × | Kai + Anna | KD |
| " | 18: | × | | | |
| '' | 9:00 pm | × | | | JM |
| " | 21:30 | | < | KD → | KD |
| " | 22:50 | × | | Kai + Anna | |

| Date | Time | In | Out | Guests | DL |
|------|------|-----|-----|--------|-----|
| 3/23/18 | 9:02pm | X | | | JM |
| " | 9:40 | X | | | |
| " | 11:26pm | | X | Marcell | |
| 3/23/18 | 12:09am | | X | Marcell | |
| " | 1:13am | X | X | | JM |
| " | 1:15am | X | X | | JM K.P. |
| 3/24/18 | 6:30am | | X | | JM |
| " | 9:38am | X | X | | JM |
| " | 10:35 | | X | | JM |
| " | 11:10 | | X | Swah | , |
| " | 11:10 | | X | Kdi | |
| " | 11:10 | | X | | KP |
| " | 7:15pm | X | | | JM |
| " | 22:00 | X | | Kdi + Swan | |
| " | 22:00 | X | | , | KD |
| " | 22:80 | | X | | KP |
| 3-25-18 | 1:05 | X | | | KD |
| " | 9:57 | | X | | JM |
| " | 10:00 | | X | Kdi + Swan | |
| " | 10:20 | | X | | KP |
| " | 8:pm | X | | | JM |

| Date | time | In | Out | Guests | Us. |
|------|------|----|----|--------|-----|
| 3/25/18 | 10:45 | X | | KAi Ai | K? |
| " | 10:49 | X | | | K? |
| " | 12:00 | | X | Ei Ai | K? |
| " | 12:20 | | X | | K? |
| " | 9:29 Pm | X | | Keith | |
| 3/26/18 | 11:38 am | | X | | JM |
| " | 11:40 am | X | | | JM |
| " | 12:24 pm | | X | Keith | JM |
| " | 4:15 pm | X | | Keith | JM |
| " | 4:33 pm | | X | Keith | JM |
| " | 11:10 pm | X | | Ana + Kai | Kalle |
| " | 10:15 | X | | KEITH | |
| " | 20:15 | X | | | |
| " | 2:45 | | X | | JM |
| 3-27-18 | 0:02 | X | | | K? |
| " | 9:00 | | X | KEITH | K? |
| " | 9:25 am | | X | | JM |
| " | 10:15 am | | X | | Kalle |
| " | 10:40 am | | X | Kai + Ana | |
| " | 1:46 pm | X | | | JM |
| " | 2:13 pm | X | | Dante | |
| " | 2:27 pm | | X | Dante | |

(25)

| Date | Time | In | Out | Guests | Oi |
|------|------|-----|-----|--------|-----|
| 3/27/18 | 2:43pm | X | | Joshua | |
| " | 3pm | X | X | Joshua | |
| " | 4:35 | X | | Vea Avery | |
| " | 5:40 | | X | Kai | |
| " | 6pm | | X | | JM |
| " | 6:13 | X | | Vast bron | |
| " | 18:32 | X | | | KD |
| " | 18:32 | | X | Kai + Ava | |
| " | 18:32 | | X | | R? |
| " | 7:01pm | X | | | JM |
| " | 7:54pm | X | | JK | |
| " | 8:09pm | | X | JK | |
| " | 9:54pm | X | | Cameron | |
| " | 10:10pm | | X | Cameron | |
| " | 23:152 | X | | Kai David | |
| " | 23:150 | | X | | KP |
| 3/28/18 | 8:57av | X | | | Jus |
| " | 11:35 | | X | | Kalli |
| " | 11:55 | | X | Ayra+Kai | |
| " | 11:57 | X | | | JM |
| " | 12:30pm | | X | | JM |
| " | 1330 pm | X | | Ama+Kai | |
| " | 1400 pm | | X | Ama+Kai | |

(16)

| DATE | TIME | IN | OUT | GUEST | WS |
|---|---|---|---|---|---|
| 3-28-18 | 18:44 | X | | | K? |
| " | 20:50 | | X | | K? |
| " | 9:06 pm | X | | | JM |
| " | 9:36 | | X | | JM |
| " | 9:46 | X | | | JM |
| 3/29/18 | 7:22 am | X | X | | JM |
| " | 0:50 | X | | | K? |
| " | 10:21 | X | | | JM |
| " | 10:22 | | X | | JM |
| " | 10:30 | | X | | K? |
| " | 10:25 am | X | | | JM |
| " | 10:27 am | | + | | JM |
| " | 10:42 am | X | | | JM |
| " | 11:31 am | | X | | JM |
| " | 17:00 | X | | | K? |
| " | 18:03 | | X | | K? |
| " | 11:50 | X | | JOHN | K? |
| " | 4:56 | X | | | K?. |
| 3-30-18 | 12:17 am | X | | | JM |
| " | 5:45 | | X | JOHN | JM |
| " | 7:06 am | | X | | JM |
| " | 10:16 am | X | | | JM |
| " | 11:30 am | | X | | JM |

(27)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|----|----|
| 3-30-18 | 18:30 | | ٨ | | K.P. |
| " | 19:15 | ٨ | | | KS. |
| " | 21:05 | ٨ | | Ricardo | |
| " | 22:03 | | x | " | |
| " | 12:25 | ٨ | | " | |
| " | 01:35 | | x | " | |
| " | 8:30pm | | X | | JM |
| 3/31/18 | 7:04am | X | X | | JM |
| " | 9:15am | | X | | JM |
| " | 9:22am | X | | | JM |
| " | 10:05am | | X | | JM |
| " | 10:24am | X | | | JM |
| " | 1:15pm | X | | Winston | |
| " | 1:32pm | | X | Winston | JM |
| " | 14:32 | | ٨ | | K.P. |
| " | 18:50 | ٨ | | | K.P. |
| | 20:27 | ٨ | x | | K.P |
| | 0:47 | ٨ | | | JM |
| | 1:09 | | x | | K.P. |
| " | 12:47am | X | | | JM |

(28)

| DATE | TIME | IN | OUT | GUEST | WS | |
|------|------|----|----|-------|----|----|
| 4/1/18 | 8:35am | | X | | JM | |
| " | 9:26 | ↗ | | DOUG | | |
| " | 15:05 | → | ↗ | DOUG | | |
| " | 12:51 | | → | VIDEO DOWNLOAD | | APT #Y |
| " | 13:29 | | | VIDEO DOWNLOAD | | APT #Y |
| " | 13:29 | | | | | APT #Y |
| 4-2-18 | 10:00 Am | | ↙ | | K.? | |
| " | 17:30 | X | X | | K? | |
| " | 18:15 | | X | | K? | |
| " | 20:46 | ↙ | | | K? | |
| " | 1309 | → | → | VIDEO DOWNLOAD | | APT #Y |
| " | 13526 | | | VIDEO DOWNLOAD | | APT #Y |
| " | 17:30 | . | | VIDEO DOWNLOAD | | APT #Y |
| " | 1406 | | | | | |
| 4-3-18 | 1409 | | | | | |
| " | 15:40 | | X | | K.? | |
| " | 19:15 | X | | | K? | |
| " | 19:40 | | X | | | |
| " | 20:22 | X | | | K? | |
| → " | 10:31 | X | | | JM | |
| " | 10:31 | X | | Keith | | |
| " | 21:52 | X | X | | K.? | |
| 4-4-18 | 0:30 | X | | | K.? | |
| " | 9:00 | | X | KE.TH | | |
| " | 9:00 | | X | | J.? | |

(29)

| DATE | TIME | IN | OUT | GUEST | WS |
|------|------|----|----|-------|-----|
| 4-4-18 | 8:20 | | x | | KP |
| " | 10:25 | " | | | KP |
| " | 10:06 | X | | | JM |
| " | 11:02 | | x | MARTINS LEFT & LEFT CAR | |
| " | 11:11 | | X | | JM |
| " | 12:00 | | x | | KP |
| " | 18:40 | x | | | KP |
| " | 9:50PM | X | | | JM |
| " | 20:40 | x | | * RICARDO | |
| " | 22:01 | | x | * " | |
| " | 20:40 | | → | CHEWING GUM | |
| 4-5-18 | 0:15 | | → | FRONT DOOR | |
| " | 0:20 | | → | STEPS & VACANT # 1 | |
| " | 10:02AM | | X | | JM |
| " | 12:34AM | X | | | JM |
| " | 5:55 | | → | KP HEARS BANG | |
| " | 7:46AM | | X | STAIRS | |
| " | 10:07AM | X | | | JM |
| " | 11:47AM | | x | | JM |
| " | 18:05 | x | | | KP |
| | 22: | | | | |

* PICK UP + WALK OUT

Pieper 000105

(30)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|----|
| 4-5-18 | 10 pm | X | | | JM |
| " | 22:40 | | X | | K? |
| 4-10-18 | 1:10 | X | | | K? |
| | 5:30 ^ | | X | | K? |
| | 11:35 | X | X | | J? |
| | 17:08 | ^ | | | K? |
| | 19:00 | | X | | K? |
| 4/6/18 | 10:10 pm | X | | | JM |
| " | 11:50 | X | | | K? |
| " | 8:00 am | | X | | JM |
| " | 9:10 | X | | | J ? |
| " | 10:30 | | X | | J ?? |
| " | 7:50 pm | X | | | JM |
| 4-7-18 | 8:00 A n | X | | | K? |
| 4-7-18 | 1:00 | A s | PULLED INTO GARAGE | EO & #4 GATES. - IN #2 & #1 & DOG | |
| | 10:00 A-- | | | STEPS DOWNSTAIRS IN #2 | |
| " | 10:20 am | | X | | JM |
| " | 12:05 | X | | * JEFF US XXXX | |
| " | 14:17 | | X | * " | |
| " | 15:16 | | X | | K? |
| " | 15:18 | X | | | K? |
| " | 8:00 pm | X | | | JM |

| Date | Time | In | Out | Guest | Us |
|------|------|-----|-----|-------|-----|
| 4-8th-18 | 9:11pm | X | | *Cameron | |
| " | 9:40pm | | X | *Cameron | |
| " | 9:40pm | | X | | JM |
| " 9:55 | | X | X | | JM |
| " | 10:13pm | | X | | JM |
| " | 10:49pm | X | | | JM |
| 4/9/18 | 12:38 | | X | | JM |
| " | 18:63 | X | X | | JM |
| " | 19:40 | X | X | | |
| " | 8:50pm | | X | *ACAN | JM |
| " | 9:18pm | X | | | JM |
| " | 22:20 | | X | *ACAN | |
| 4-10-18 | 8:31am | | X | | JM |
| " | 9:28am | X | | | JM |
| " | 10:10 AM | | X | | K.P. |
| " | 10:42am | | X | | JM |
| " | 6:20pm | X | | | JM |
| " | 6:25pm | X | | | K.P |
| " | 7:17pm | | X | | JM+KP |
| " | 10:06pm | X | | | JM+KP |
| " | 22:20pm | | X | | K.P. |
| " | 10:29pm | | X | | JM |

(32)

| DATE | TIME | IN | OUT | GUEST | US - CONTRESS |
|------|------|-----|-----|-------|---------------|
| 4/10/18 | 10:50pm | X | | | JM |
| 4-11-18 | 1:00 AM | X | | | K.P |
| '' | 7:52am | | X | | JM |
| '' | 10:40am | X | | | JM |
| '' | 11:10am | | X | | JM |
| '' | 12:40 | ⟨ | | | K.? |
| '' | 21:34 | ⟨ | | | K.? |
| '' | 20:30 | ⟨ | | | √ R |
| '' | 21:33 | ⟨ | | | |
| '' | 9:33pm | X | | *Taylor | |
| '' | 10:13pm | — | X | *Taylor | |
| 4/12/18 | 8:20 pm | | X | | JM |
| '' | 10:27pm | X | | | JM |
| '' | 11:30 | | ⟨ | | K.? |
| '' | 11:33 | | X | | JM |
| '' | 21:55 | ⟨ | | | K.? |
| '' | 10:10pm | X | 🗲 | | JM |
| '' | 10:35 | | X | | K.? |
| '' | 10:36pm | X | | *FA | |
| '' | 11:26pm | | X | *Fa | K.? |
| 4-13-18 | 12:55 | ⟨ | | | K.? |
| '' | 8:20am | | X | | JM |

(33)

| DATE | TIME | IN | OUT | GUEST | US COMMENTS |
|------|------|-----|------|-------|-------------|
| 4-13-18 | 9:36am | X | | | JM |
| " | 11:00a | L | | | K? |
| " | 11:30am | | X | | JM |
| " | 13:10 | L | X | | K? |
| " | 13:40 | | X | | K? |
| " | A:30 | X | | | K? |
| " | 20:15 | | X | | K? |
| " | 8:40 | X | | | JM |
| " | 8:49pm | | X | Keith | JM |
| " | 9:08pm | X | | Keith | JM |
| Sat 4-14-18 | 9:00am | | X | | JM |
| " | 9:20am | X | | | JM |
| " | 10:00am | | X | Keith | |
| " | 10:7pm | | X | | JM |
| " | 15:30 | | X | | K? |
| " | 18:30 | X | | | K? |
| " | 7:45pm | X | | | JM |
| " | 8:20pm | | X | | JM |
| " | 21:030 | | X | | KP |
| " | 21:50 | X | | | KP |
| " | 21:52 | | X | | KP |
| 4-15-18 | 0:40 | X | | | KP |
| " | 9:40am | X | | | JM |

| DATE | TIME | IN | OUT | GUEST | US | ③4 |
|------|------|----|----|-------|----|----|
| 4/15/18 | 10:28 | | X | | JM | |
| " | 17:50 | X | | ☆ ACAN CM | | |
| 4 | 18:50 | | X | ☆ ACAN C.M | | |
| " | 7:45pm | X | | | JM | |
| " | 10:41pm | | X | | JM | |
| " | 11:50pm | X | | | Jon K.? | |
| 4/16/18 | 10:25 | | X | | JM | |
| " | 10:39am | | X | | JM | |
| " | 11:34am | X | | | JM | |
| " | 11:53am | | X | | JM | |
| " | 2:37pm | X | | ☆ Keith | JM | |
| " | 2:50pm | | X | Keith | JM | |
| " | 4:30pm | X | | Keith | JM | |
| " | 5:40pm | | X | Keith | | |
| " | 17:55 | X | | | K.? | |
| " | 6:37pm | | X | | JM | |
| " | 5:43pm | X | | | JM | |
| " | 7:14pm | | X | | JM | |
| " | 7:35pm | X | | | JM | |
| " | 8:28pm | | X | | JM | |
| 4-17-18 | 9:30pm | X | | Keith | | |
| " | 8:80am | | X | Keith | | |

(15)

| DATE | TIME | IN | OUT | GUEST | WS |
|---|---|---|---|---|---|
| 04-17-19 | 9:35 Am | | X | | K.?. |
| " | 10.40 am | | X | | JM |
| " | 11:20 | X | | | K.?. |
| " | 4:52 | | X | | K.? |
| " | 5:18 pm | X | | | JM |
| " | 18:00 | X | | | K.?. |
| " | 7:25 pm | | X | | JM |
| " | 9:13 pm | X | | | JM |
| " | 22:05 | | X | | K.?. |
| 4-18-18 | 12:55 | X | | | K.? BACK DOOR #2 |
| " | 1:27 | | | GARAGE DOOR OPENED = CODE | |
| " | 8:07 am | | X | | JM |
| " | 10:10 An | | X | | K.?. |
| 1. | 11:30 am | | X | | JM |
| " | 11:20 | X | | | K.? |
| " | 11:35 | | X | | K.? |
| " | 17:15 | X | | | K.? |
| " | 18:31 | X | | *Cody | |
| " | 18:35 | X | | *Russel | |
| " | 8:54 pm | X | | | JM JM |
| " | 9:15 pm | | X | *Cody | |
| " | 22:00 | | X | Russbl | |
| | 22:00 | | X | | |

(36)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 4-18-18 | 10:39 pm | X | | | JM |
| " | 22:45 | X | | *DREX | |
| " | 23:55 | | X | *DREX | |
| 4/19/18 | 7:37 am | | X | | JM |
| " | 10:10 | | X | | K.P. |
| " | 10:27 am | X | | | JM |
| " | 11:07 am | X | | *Dave. | |
| " | 11:18 am | | X | *Dave | |
| " | 16:30 pm | | X | | JM |
| " | 18:20 | X | | | K.P. |
| " | 9:01 pm | | | | JM |
| " | 10:12 pm | X | | *Patrick | |
| " | 10:30 pm | | X | | K.P. |
| " | 11:11 pm | | X | *Patrick | JM |
| 4-20-18 | 6:11 am | X | | | K.P. |
| " | 1:44 pm | X | | | JM |
| " | 8:05 am | | X | | JM |
| " | 9:13 am | X | | | JM |
| " | 10:09 am | | X | *Matt | |
| " | 10:31 am | | X | *Matt | |
| " | 6:30 am | | X | | K.P. |
| " | 11:16 am | | X | | JM |

| DATE | TIME | iN | ouT | GuEST | uS (31) |
|------|------|-----|-----|-------|---------|
| 4-20-18 | 16.15 | X | | | K? |
| " | 16:40 | | X | | K.? |
| " | 18:40 | X | | | K.? |
| " | 18:45 | | | | K.? |
| " | 9:42pn | X | ☜ | | Jm |
| " | 10:04pn | | X | | JM |
| " | 11:25 | X | | *JOAN | |
| " | 14:25 | X | | | K?. |
| " | 11:56pr | X | | *Keyth | JM |
| 4-21-18 | 6:45 | | X | *JoAN | |
| " | 9:20am | / | X | * Keith | |
| " | 10:18am | | X | | JM |
| " | 10:40 | | X | | X.P. |
| " | 7:05pn | X | | | JM |
| " | 8:00pn | | X | | JM |
| " | 11:33 | X | | | K? |
| 4/22/18 | 12:40; | X | | | JM |
| " | 8:25an | | X | | JM |
| " | 9:25an | X | | | JM |
| " | 10:30an | | X | | JM |
| " | 10:35T | X | | | JM |
| " | 10:3. | | X | GX72 4 B | |
| " | 11:13. | | X | G *228B | KD |

| DATE | Time | In | Out | Guest | GS | (38) |
|------|------|----|-----|-------|-----|------|
| 4-22-18 | 13:15 | X | | | K.? | |
| " | 13:37 | | X | | K.? | |
| " | 16:55 | X | | | K.? | |
| " | 6:03pm | X | | | JM | |
| " | 19:20 | | X | | K.? | |
| " | 9:20pm | | X | | JM | |
| " | 22:20 | X | | | K.? | |
| " | 11:09pm | X | | | JM | |
| 4/23/18 | 6:13am | | X | | JM | |
| " | 9:56am | X | | | JM | |
| " | 10:30 | | X | | K.? | |
| " | 10:30 | | X | | JM | |
| " | 17:20 | X | | | K.? | |
| " | 22:20 | X | | X | K.? | |
| " | 22:20 | X | | | | |
| 4-24-18 | 10:15 | | X | | KP | |
| " | 18:15 | X | | | K.? | |
| " | 18:15 | | | → NEIL MARTINSON LEFT | K.? JEG AND TOOK LIFT | |
| " | 8:10pm | X | | | JM | |
| " | 8:38pm | | X | | JM | |
| " | 22:00 | | X | | K.? | |
| " | 10:35pm | X | | | JM | |

| DATE | TIME | IN | OUT | GUEST | CB |
|---|---|---|---|---|---|
| 4-25-18 | 05:40 | X | | | KD |
| '' | 7:54am | | X | | JM |
| '' | 10:35am | | X | | JM |
| '' | 15:00 | X | | | K? |
| '' | 9:30am | X | | ✱Keith | JM |
| '' | 22:40 | ↙ | | ✱Mike | |
| '' | 23:00 | | | NEIL MARTIN | TAKINO CTS CREW ON |
| 4-26-18 | 6:50 | X | | ✱Mike | |
| ~~'' ~~ | ~~ ~~ | ~~X~~ | | | ~~ ~~ |
| '' | 10:45am | | X | ✱Keith | |
| '' | 11:22am | | X | | JM |
| '' | 13:45 | / | X | | F? |
| '' | 16:00 | X | | | K?. |
| '' | 17:20 | | X | | K.?. |
| '' | 9:56pm | X | | at 11:57 someone came upstairs and checked the camera | JM |
| 4/27/18 | 7:10am | | X | | JM |
| '' | 10:14am | X | | | JM |
| '' | 11:20am | | X | | JM |
| '' | 6:53pm | | | | ✱ Bald guy came up with people |
| '' | 9:15pm | X | | | JM |
| '' | 10:18pm | X | | ✱ Jesse | |
| '' | 10:80pm | | X | '' (86 and E) | |

| DATE | TIME | IN | OUT | GUEST | US (40) |
|---|---|---|---|---|---|
| 4/28/18 | 7:51am | | X | | JM |
| " | 8:46am | X | | | JM |
| " | 10:28am | | X | | JM |
| " | 8:19pm | X | | | JM |
| " | 10:36pm | X | | | |
| " | 11:25pm | | X | ✳John ✳John | |
| 4/29/18 | 8:47am | | X | | Bald guy leaving |
| " | 10:20am | | X | | JM |
| " | 7:40pm | X | | | JM |
| 4/30/18 | 8:55am | X | | | JM |
| " | 12:38pm | X | | | JM |
| " | 1:16pm | | X | | JM |
| " | 1:23pm | X | | | JM laundry |
| " | 2:14pm | X | | | JM |
| " | 2:17pm | X | | | JM |
| " | 4:10pm | | X | | JM |
| " | 6:28pm | X | | | JM |
| 5/1/18 | 9:54am | | X | | JM grocery |
| " | 10:08am | X | | | JM shopping |
| " | 11:30am | | X | | JM |
| " | 7:20pm | X | | | JM |
| " | 7:55pm | | X | | JM |
| " | 10:00pm | X | | | JM |



| Date | Time | In | Out | Guest | Us |
|------|------|-----|-----|-------|-----|
| 8/2/18 | 7:30am | | X | | JM |
| " | 9:28am | X | | | JM |
| " | 10:10am | X | | | JM |
| " | 10:09 PM | X | X | ✱ Keith | JM |
| 8/3/18 | 9:13am | | X | ✱ Keith | JM |
| " | 10:30am | X | | | JM |
| " | 11:35am | | X | | JM |
| " | 10:40pm | X | | | JM |
| 8/4/18 | 7:30am | | X | | JM |
| " | 10:15am | X | | | JM |
| " | 11:35am | | X | | JM |
| " | 10:28pm | X | | | JM |
| 8/5/18 | 8:22am | | X | | JM |
| " | 9:15am | X | | | Jay |
| " | 10:22am | X | | (there is no light in hallway) | JM |
| " | 8:14pm | X | | | JM |
| " | 8:46pm | X | | ✱ Keith | |
| 8/6/18 | 10:16am | | X | ✱ Keith | Jay |
| " | 10:40am | | X | | Jay |
| " | 7:40pm | X | | | JM |
| " | 10:03pm | X | | | JM |
| 8/7/18 | 1:57am | X | | | JM |



| Date | Time | In | Out | Guests | US |
|------|------|----|----|--------|-----|
| 5-7-18 | 8:40am | | X | | JM |
| " | 1:48pm | X | X | | JM |
| " | 6:46pm | | X | | JM |
| " | 8:24am | X | | | JM |
| " | 9:41pm | | X | | JM |
| 5/8/18 | 1pm | X | X | * Keith | JM |
| " | 1:07pm | | X | * Keith | JM |
| " | 4:03 | X | | * Keith | JM |
| " | 4:46pm | | X | * Keith | JM |
| " | 5:52pm | | X | | JM |
| " | 10:24pm | X | | | JM |
| 5/9/18 | 7:22am | X | X | | JM |
| " | 10:15am | X | X | | JM |
| " | 11:30am | X | X | | JM |
| " | 8:40am | X | | | JM |
| 5/10/18 | 7:10am | X | X | | JM |
| " | 8:18am | X | X | | JM |
| " | 10:54am | | X | | JM |
| " | 10:45pm | X | | * Keith | JM |
| " | 10:45pm | | | Ed and guy with the hat left | |
| 5/11/18 | 8:59am | | X | * Keith | JM |
| " | 10:05am | | X | | |



| Date | Time | In | Out | Guest | US | Notes |
|------|------|-----|-----|-------|-----|-------|
| 5/11/18 | 1:20pm | X | | | JM | |
| " | 1:38pm | | X | | JM | |
| 5/12/18 | 12:21am | X | | | JM | |
| " | 12:33am | | X | | JM | |
| " | 1:45am | X | | | JM | |
| " | 10:05 | X | | * Thomas Setzer | | |
| 5/13/18 | 10:12 | | X | * Thomas | JM | |
| " | 9:50pm | X | | | JM | |
| " | 11:08pm | X | | * Marshall | | |
| " | 11:24pm | | X | * Marshall | | |
| 5/14/18 | 6:18am | X | | * Nate | | |
| " | 6:44am | | X | * Nate | JM | |
| " | 10:33am | X | | | JM | |
| " | 2:30pm | | | Mr Martinson coming in and out of Bld. | | |
| " | 4:46pm | X | | * Thomas Setzer | | |
| " | 5:25pm | | X | * Thomas | JM | |
| " | 9:10pm | X | | | JM | |
| " | 11:40pm | | | Ed and leave | Mr Martinson together in car | |
| 5/15/18 | 10:47am | | X | | JM | |
| " | 3:03pm | X | | | JM | |
| " | 3:32pm | | X | | JM | |
| " | 6:06pm | X | | | JM | |

Pieper 000119



| Date | Time | In | Out | Guests | Us | Notes |
|------|------|----|----|--------|----|-------|
| 5/15/18 | 7:37am | | X | | JM | |
| " | 7:43am | X | | | JM | laundry |
| " | 8:22am | | X | | JM | |
| " | 8:25am | X | | | JM | |
| " | 9:13am | | X | | JM | |
| 5/16/18 | 6:50am | X | | | JM | |
| " | 7:10am | | X | | JM | |
| " | 10:30am | X | | | JM | |
| " | 11:25am | | X | | JM | |
| " | 10:10am | X | | | JM | |
| 5/17/18 | 7:18am | | X | | JM | |
| " | 9:35am | X | | | JM | |
| " | 11:05 | | X | | JM | |
| " | 8:49am | X | | | JM | |
| " | 10:30am | | X | | JM | |
| 5/18/18 | 9:22am | X | | | JM | |
| " | 11:25am | | X | | JM | |
| " | 8:51am | X | | | JM | |
| " | 8:58am | | X | | JM | |
| 5/19/18 | 12:18am | X | | | JM | |
| " | | | | | | |
| " | 8:10am | – | X | | JM | |
| " | 7:42am | X | | | JM | |



| Date | Time | In | Out | Guests | UJ | Notes |
|------|------|----|----|--------|----|----|
| 5/19/18 | 8:37pm | | X | | Jm | |
| " | 8:52pm | X | | | Jm | |
| " | 9:16pm | X | | *Jan | | |
| " | 10:38pm | | X | *Jan | | |
| 5/20/18 | 12:05am | X | X | *Keith | | |
| " | 12:51am | | X | *Keith | | |
| " | 7:10am | / | X | | Jm | |
| " | 10:34am | X | | *Keith | Jm | |
| " | 11:16am | | X | *Keith | Jm | |
| " | 9:13pm | X | | *Keith | Jm | |
| " | 9:20pm | | X | *Keith | Jm | |
| 5/21/18 | 11:20am | X | | *Adam | | |
| " | 12:02pm | | X | *Adam | | |
| " | 1:40pm | X | | *█Reece | | |
| " | 2:00pm | | X | *█Reece | | |
| " | 7:27pm | | X | | Jm | |
| 5/22/18 | 1:37pm | X | | | Jm | |
| " | 2:20pm | | X | | Jm | |
| " | 6:47pm | X | | | Jm | |
| " | 7:15pm | | X | | Jm | |
| " | 8:29pm | X | | | Jm | |
| " | 9:20pm | | X | | Jm | |

Pieper 000121



(46)

| Date | time | In | Out | Guests | US |
|---|---|---|---|---|---|
| 5/23/18 | 7:50 am | X | | | JM |
| " | 8:13 am | | X | | JM |
| " | 10:28 am | X | | | JM |
| " | 11:17 am | | X | | JM |
| 5-23-18 | 9:40 | X | | | KP |
| " | | | X | | K.P |
| " | 10:05 | X | | | K.P. |
| " | 6:50 | | X | | KP |
| " | 9:00 | X | | | K.P. |
| " | 8:50 pm | X | | | JM |
| " | 9:10?? | | X | | KP |
| " | 11:58 pm | | | | K.P. |
| 5/24/18 | 7:27 am | | X | | JM |
| " | 9:50 am | X | | | JM / KP |
| " | 11:00 | | X | | JM |
| " | 11:32 am | | X | | JM |
| " | 8:00 | X | | | KP |
| " | 1:08 | X | | | |
| " | | | X | SAMUEC / SAMUEC AP | JM |
| " | 11:47 pm | X | | | JM |
| 5-25-18 | 12:05 | | X | SAMUEC | JM |
| " | 9:30 am | | X | | JM |
| " | 10:03 am | X | | | JM |

Pieper 000122



| Date | Time | In | Out | Guests | UI |
|------|------|-----|-----|--------|-----|
| 8/25/18 | 10:07am | | X | | JM |
| " | 10:25 | | X | | K?? |
| " | 10:15am | X | | | JM |
| " | 11:33am | | X | | JM |
| " | 16:13 | X | | | K?? |
| " | 16:35 | | X | | K.? |
| " | 16:58 | X | | | K.?. |
| " | 20:0 | X | | RUSSEL J 3 | J.M. |
| " | 8:50pm | X | | | J.M. |
| " | 8:55pm | | X | | JM |
| " | 22:0 | | X | RUSSEL J 3 | K.?. |
| " | 22:22 | | X | | JM |
| " | 10:55pm | X | | | K.? |
| 5-26-18 | 12:40 | X | | | JM |
| " | 10:10am | | X | | |
| " | 1/30 | | X | LEOVE | |
| " | 14:56 | | X | LANIEL | |
| " | 14:50 | | X | | K? |
| " | 16:50 | X | | | K? |
| " | 8:50 | | | NO BODY | |
| 17 | 7:23pm | X | | | JM |
| | 22:0 | | | | |



| Date | Time | In | Out | Guests | US |
|------|------|-----|-----|--------|-----|
| 3-26-18 | 8:35pm | X | | ✱ Mark | |
| '' | 9:00pm | | X | ✱ Mark. | |
| '' | 22:01 | | X | AC Jesus | |
| 3-27-18 | 10:15am | | X | | JM |
| '' | 14:40 | | | | K? |
| '' | 17:00 | X | | Jones | |
| '' | 17:00 | X | X | | K? |
| '' | 7:28pm | X | | J | JM |
| '' | 7:5pm | | X | | JM |
| '' | 21:58 | | X | Jones | |
| '' | 21:50 | | X | | K? |
| 3-28-18 | 18:50 | X | | | K? |
| '' | 8:28am | X | | | JM |
| '' | 9:35am | | X | | JM |
| '' | 4:27pm | X | | | JM  K? |
| '' | 10:15 | | X | | K? |
| '' | 17:10 | X | | | K? |
| '' | 17:35 | | X | | JM |
| '' | 8:22pm | | X | | JM  K? |
| '' | 23:30 | X | | | JM  K? |
| 3-29-18 | 1:42am | X | | | JM |
| | 10:05 AL | | X | | K? |

(48)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 5-29-18 | 11:06am | X | | *Matt | |
| " | 11:59am | | X | *Matt | |
| " | 12:18pm | X | | *Shawn | |
| " | 12:20pm | X | | * Dan | |
| " | 12:30pm | | X | * Dan | |
| " | 12:52pm | | X | * Shawn | |
| " | 3:00pm | | X | | JM |
| " | 18:00 | X | | | K? |
| " | 9:25pm | | X | | JM |
| " | 10:40pm | X | | *Keith | |
| 5-30-18 | 12:15 | X | | | K? |
| " | 8:25am | | X | *Keith | JM |
| " | 827 | | X | | J?, |
| " | 8:35 | | X | | K? |
| " | 10:13am | X | | | JM |
| " | 11:30am | | X | | JM |
| " | 16:00pm | X | | | K? |
| " | 16:35pm | | X | | K? |
| " | 16:55 | X | | | K? |
| " | 16:55 | X | | GARY B. | |
| " | 17:45 | | X | GARY B | |
| " | 17:75 | | X | | K? |

$2000

(50)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 5-30-18 | 4:00pm | X | | | JM |
| " | 7:00 | X | | | K.? |
| " | 9:25pm | | X | | JM |
| " | 11:21pm | X | | | JM |
| 5/31/18 | 7:10am | | X | | JM |
| " | 7:11 | X | | TIN RANSU | 3w:cobre supe |
| " | 5:39 | | X | TIN RANSU | (415) 558-6514 |
| " | 10:20 | | X | | K? |
| " | 10:40am | X | | | JM |
| " | 11:30am | | X | | JM |
| " | 18:00 | X | | | K? |
| " | 6:20pm | X | | | JM |
| " | 8:45pm | | X | | JM |
| " | 8:00 | X | | MATT | |
| " | 8:00 | X | | HANNA | |
| " | 22:50 | | X | MATT | |
| " | 22:50 | | X | HANNA | |
| " | 11:30pm | X | | | JM |
| 6/1/18 | 8:15am | | X | | JM |
| " | 9:15am | X X | | | JM |
| " | 10:40 | | X | | K? |
| " | 11:30am | | X | | JM |

(51)

| DATE GUEST | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 6-1-18 | 17:55 | X | | | K.P. |
| " | 18:00 | | X | | K.P. |
| " | 18:35 | X | | | K.P. |
| " | 21:00 | | X | | K.B |
| " | 23:20 | X | | | K.P. |
| 6/2/18 | 12:23 | X | | | JM |
| " | 10:20 am | | X | | JM |
| " | 14:35 | | X | | K.P. |
| " | 6:42 pm | X | | | JM |
| " | 7:06 pm | X | | * Mike | |
| " | 7:50 pm | | X | * Mike | |
| " | 8:15 pm | | X | | JM |
| 6/3/18 | 1:07 am | X | | | JM |
| " | 8:00 am | | X | | JM |
| " | 10:00 am | | X | | JM |
| " | 8:00 pm | X | | | JM |
| " | 8:31 pm | | X | | JM |
| " | 20:30 | X | | | K.B |
| " | 20:45 | | X | | K.P |
| " | 22:35 | X | | | K.P. |
| 6/4/18 | 9:30 am | X | | | JM |
| | 10:10 | | X | | K.P |

(52)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 6-4-18 | 11:28pm | | X | | JM |
| " | 2:03am | X | | | JM |
| " | 3:36am | | X | | JM |
| " | 5:26am | X | | | JM |
| " | 18:0) | | x | | K? |
| " | 8:06pm | | X | | JM |
| " | 9:03pm | X | | | JM |
| 6/5/18 | 9:42am | | X | | JM |
| " | 10:05 | | x | | F.? |
| " | 4:10pm | X | | | JM |
| " | 5:34pm | | X | | JM |
| " | 17:55 | X | | | K.? |
| " | 10:55 | | x | | K? |
| " | 10:56pm | X | | | JM |
| " | 23:30 | X | | | K? |
| 6-6-18 | 10:01am | | x | | K.? |

(52)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|------|----|
| 6-4-18 | 11:28pm | | X | | JM |
| " | 2:03am | X | | | JM |
| " | 3:36am | | X | | JM |
| " | 5:26am | X | | | JM |
| " | 18:01 | X | | | KP |
| " | 8:06am | | X | | JM |
| " | 9:03pm | X | | | JM |
| 6/5/18 | 9:42am | | X | | JM |
| " | 10:05 | | X | | KP |
| " | 4:10pm | X | | | JM |
| " | 5:34pm | | X | | JM |
| " | 17:55 | X | | | KP |
| " | 10:55 | | X | | KP |
| " | 10:36pm | X | | | JM |
| " | 23:30 | X | | | KP |
| 6-6-18 | 10:01pm | | X | | KP |
| " | 11:45 | | X | | JM |
| " | 1C:15 | X | | | KP |
| " | 12:30 | | X | | KP |  GHANGED JCO oko B9 SHALL WE TALK? |
| " | 17:20 | X | | | KP |
| " | 18:35 | X | X | X | |
| " | 20:55 | X | | | |

| DATE | TIME | in | out | GUEST | us |
|------|------|-----|-----|-------|-----|
| 6/6/18 | 9:00 pm | X | | | JM |
| " | 9:50 pm | | X | | Jm |
| 6/7/18 | 12:15 am | X | | | Jm |
| " | 8:05 | ———→ | | → | GOT SERVER COUNT |
| | | | | → | PASER & 0 ENTER |
| | | | | → | ORDER FROM (cont) |
| " | 11:10 am | X | | *Shawn | |
| " | 11:34 am | | X | *Shawn | Jose M |
| " | 11:42 am | X | | | JM |
| " | 11:48 am | | X | | Jm |
| " | 3:34 pm | X | | | JM |
| " | 3:5 pm | X | | | Kalle |
| " | 16:45 | | X | | V.M. |
| " | 16:25 | | X | | K.P. |
| " | 9:12 pm | X | | | JM + KP |
| | 22:10 | | X | | K3 |
| 6-8-18 | 01:00 AM | X | | | K.P. |
| " | 11:30 am | | X X | | JM |
| " | 12:05 | | X X | | K3 |
| " | 15:15 | X | X | | K3 |
| " | 18:35 | X | | | K3 |
| " | 15:40 | | X | | K3 |
| " | 8:35 pm | X | | | JM |

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 6/8/18 | 9:14pm | | X | | JM |
| 6/9/18 | 12:24am | X | | | JM |
| " | 1:14am | X | | *Rob | |
| " | :40am | | X | *Rob | |
| " | 10:00 | X | | | K.? |
| " | 10:20am | | X | | JM |
| " | 15:20 | | X | | K.? |
| " | 15:90 | X | | | K.? |
| " | 8:21pm | X | | | JM |
| " | 9:13pm | | X | | K.P. JM |
| 6-10-18 | 00:00 | X | | | K.?. |
| " | 3:00am | X | | | JM |
| " | 8:30 | | X | | K.P |
| " | 10:30 | | X | | JM |
| " | 21:20 | X | | | K.?. |
| " | 10:21 | X | | | JM |
| " | 10:30am | | X | | JM+ KP. |
| 6-/11/18 | 12:02am | X | | | JM+ KP. |
| " | 9:45am | | X | | JM |
| " | 13:48 | X | | | JM |
| " | 17:48 | X | | | K.P |
| " | 18:35 | | X | | K.P. |

(55)

| DATE | TIME | in | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 6/11/18 | 8:30pm | | X | | JM |
| " | 8:45pm | X | | | JM |
| 6/12/18 | 10:00 | X | | | K.? |
| " | 9:00am | | X | | JM |
| " | 10:35h | | X | | K.? |
| " | 3:25pm | | X | | JM |
| " | 3:44pm | | X | | JM |
| 6/11 | 6:33pm | X | X | | KP. |
| " | 18:40 | | X | | JM K.? |
| " | 7:29pm | X | X | *Mario | |
| " | 11-36pm | | X | *Mario | |
| " | 12:00pm | X | | | KP |
| 6/13/18 | 12:06am | | X | | JM |
| | | | | | |
| | | | | | |
| " | 12:11am | X | | | JM |
| " | 7:37am | | X | | JM |
| " | 9:12am | | X | | K.P. |
| " | 11:20am | | X | | JM K.? |
| " | 17:10 | X | | | K.P. |
| " | 18:15 | | ^ | | K.P. KP |
| " | 20:40 | ^ | X | | |

(56)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 6-13-18 | 9:15pm | X | | | JM |
| 6-14/18 | 7:30am | | X | | JM + KP (8:05 6-15-18 |
| 6/14/18 | 8:22pm | X | | | JM — NOTICED HALLWAY |
| '' | 2:37pm | | X | | JM — DOWNSTAIRS WAS |
| '' | 19:48 | X | | | KP — CLEANED BETTER |
| '' | 9:55pm | X | | | JM — EVER SINCE DECK |
| '' | 22:25 | | X | | KP — NOT THE CARPET |
| 6-15-18 | 23:45 | X | | | KP — OR STAIRS |
| '' | 7:05am | | X | | JM |
| '' | 9:42am | X | | | JM |
| '' | 10:35am | | X | | JM — JEANNE CLEAN |
| '' | 10:35 | | X | 10135 | KP — BEHIND GARBAGE |
| '' | 10:55am | X | | | JM — CANS ASKS ME |
| '' | 11:30am—11:36am | | X | | JM — WHAT IS GARAGE |
| '' | 18:25 | X | | | KP — DOOR CODE ? |
| '' | 8:55pm | X | | | JM — KP! 2009 |
| '' | 21:10 | X | X | MIKE | JM — IF YOU DIDN'T |
| '' | 10:00pm | | X | MIKE | KP — CHANGE IT, I DID |
| 6-16-18 | 2:39pm | X | | | JM — CHANGE IT SO IT'S |
| '' | 10:15 | | X | | JM — UNKNOWN DID |
| '' | 14:56 | | X | | KP — YOU HAVE TO |
| '' | 17:07 | X | | | KP — CHANGE IT AGAIN |
| '' | 17:30 | | X | | KP — TO SECURE THE DLRS |



| Date | Time | In | Out | Guests | Us (5) |
|------|------|----|----|--------|--------|
| 6-19-18 | 6:15 | | X | | K.P. |
| " | 20:16 | X | | | K.P. |
| " | 9:51pm | X | | | JM |
| " | 22:0. | | X | | K.? |
| " | 1120pm | | X | | JM |
| 6/20/18 | 12:05 am | X | | | JM |
| " | 1:40 A. | X | | | K.? |
| " | 7:53am | | X | | JM |
| " | 10:23 | X | | | J.? |
| " | 10:40 | | X | | K.? |
| " | 11:20 | X | | / | K.? |
| " | 11:34am | | X | | JM |
| " | 12:20 | | X | | K.? |
| " | 18:30 | X | | | K.? |
| " | 9:01 pm | X | | | JM |
| " | 21:30 | | X | | K.P. |
| " | 22:35 | X | | | K.? |
| " | 11:36pm | | X | | JM |
| 6-21-18 | 8:07 | X | | | J.? |
| " | 10:00 am | | X | | JM |
| " | 10:20 A | | X | | K.P. |
| " | 18:20 | X | | | K.? |
| " | 8:45pm | X | X | / | JM |

| DATE | TIME | IN | OUT | GUEST | LES |
|------|------|-----|-----|-------|-----|
| 6-21-18 | 4:35am | | X | | JM |
| " | 7:2TA | X | | | K? |
| 6-20-18 | 0:35AR | X | | | K? |
| " | 11:00am | X | | | JM |
| " | 4:45 | | X | | K.? |
| " | 1:02am | | X | | JM |
| " | 9:00 | X | | | K? |
| " | 9:26 | X | | | JM |
| " | 22:35 | X | | DAC:3 | |
| 6-23-18 | 0:14 | X | | OAC:1) | |
| " | 10:30am | | X | | JM |
| " | 4:50 | | X | | K? |
| " | 9:20 | X | | | K? |
| " | 0:00am | X | | | JM |
| " | 10:30am | | X | | JM |
| 7-24-18 | 5am | X | | | JM |
| " | 7:70 | | X | | K? |
| " | 12:52 | | X | | J.? |
| " | 14:45 | X | | | K? |
| " | 18:15 | X | | | K? |
| " | 1:54pm | | X | | JM |
| " | 10:35am | X | | | JM |
| " | 10:10am | | | | |



Pieper 000137

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| ~~GUEST~~ | | | | | |
| 6/26/18 | 7:00a | X | | ** Mario | |
| " | 2:00 | X | | | K.S. |
| " | 10:42 | | X | * Andrew | |
| " | 8:42 | | X | | J.A. |
| " | 9:40a | X | | | JM |
| " | 22:1~ | | X | | K.?. |
| " | 11:08 | | X | | JM |
| 6-27-18 | 2:55 | X | | | K.?. |
| " | 7:45a | | X | | JM |
| " | 11:15a | | X | | JM |
| " | 18:15 | | X | | K.? |
| " | 14:48 | | | | K.? |
| " | 15:12 | | X | | K.? |
| " | 9:00p | X | | | JM |
| " | 21:15 | X | | | K.? |
| 1/28/18 | 8:00a | X | | | JM |
| " | 9:03a | X | | | JM |
| ~~"~~ | ~~10:15a~~ | | ~~X~~ | | ~~K?~~ |
| " | 10:10 | | X | | K.? |
| " | 11:10a | | X | | JM |
| " | 13:0 | X | | | K.? |
| " | 21:45 | | X | | K.? |



| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 6-25-18 | 12:40 | x | | | K.P. |
| " | 1:24pm | X | | | JM |
| " | 7:10 | | X | | K.P. |
| " | 8:26pm | | X | | JM |
| " | 9:40 | x | | | K.P. |
| " | 10:45pm | X | | | JM |
| 6-30-18 | 5:00am | | X | | JM |
| " | 8:00 | x | X | | JM |
| " | 9:00 | | X | | JM |
| " | 6:50 | | x | | K.P. |
| " | 9:10 | x | | | K.P. |
| " | 19:00 | | x | | K.P. |
| " | 11:00 | X | | | JM |
| 7-7-18 | 8:45 | x | | | K.P. |
| " | 9:30 | | X | | JM |
| " | 10:00 | X | | | JM |
| " | 10:25am | | X | | JM |
| " | 11:27 | | X | | K.P. |
| " | 19:28 | x | | | K.P. |
| " | 15:05 | | X | | K.P. |
| " | 18:16 | x | | | K.P. |
| " | 8:12 | | X | | JM |
| " | 20:00 | | x | M.A. | |

Pieper 000139

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 7/1/18 | 8:25pm | | X | | JM |
| " | 9:00pm | X | | *Stephen | JM |
| " | 10:55 | | X | *MAX | |
| 7-2-18 | 10:05 | | X | | K.P |
| " | 11:10am | | X | *Stephen | |
| " | :58pm | | X | | JM |
| " | 5:25pm | X | | | JM |
| " | 7:10 | X | | | K.P |
| " | 8:30 | | X | | K.P |
| " | 20:25 | X | | | K.P |
| " | 8:22pm | | X | | JM |
| " | 8:00 | X | | Russel | |
| " | 22:40 | | X | Russel | |
| 7/3/18 | 12:33am | X | | | JM |
| " | 8:40am | | X | | JM |
| " | 10:08 | | X | | K.P |
| " | 14:00 | X | | | K.P |
| " | 19:03 | X | | | K.P. |
| 7-4-18 | 11:00 | | X | | K.P |
| " | 14:03 | X | | | K.P |



| DATE | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 7-4-18 | 11:58 | X | | Edw | |
| " | 12:10 | | X | Jorn | |
| " | 12:0 | X | | B | FB |
| " | 18:0 | X | | BB | KB |
| " | 20:00 | | X | | KB |
| " | 23:45 | | X | | KB |
| " | 11:50am | X | | | JM |
| " | 11:50am | | X | | JM |
| 7/5/18 | 8:00am | X | | | M |
| " | 9:00am | | X | | JM |
| " | 9:20am | X | | | JM |
| " | 10:30 | | X | | K.3 |
| " | 10:33 | X | | Matt | |
| " | 10:35am | | X | | Matt |
| " | 11:36am | | X | | JM |
| " | 8:00 | X | X | | K3 |
| " | 9:28pm | X | | | JM |
| " | 22:15 | | X | | K3 |
| " | 10:14pm | X | | angel | |
| " | 11:18am | | | angel | |
| " | 11:35am | | X | | JM |

Pieper 000141

(65)

| DATE | TIME | IN | OUT | QUESTIONS |
|------|------|-----|-----|-----------|
| 7-6-18 | 0:45 | X | | K.? |
| " | 8:02am | X | | JM |
| " | 8:10am | | X | JM |
| " | 10:10 | | X | K.?. |
| " | 9:00am | X | | JM |
| " | 11:30am | | X | JM |
| " | 18:15 | X | | K.?. |
| " | 20:50 | X | | Simon |
| " | 20:05 | | X | Simon |
| " | 9:00pm | X | | JM |
| " | 11:07pm | | | ※Brice |
| 7-7-18 | 12:00am | | X | ※Brice |
| " | 8:30am | | X | JM |
| " | 9:24am | X | | JM |
| " | 10:30am | | X | JM |
| " | 18:50 | | X | K.?. |
| " | 16:08 | X | | K.?. |
| " | 19:47 | X | | ※Carlos |
| " | 8:21pm | X | | JM |
| " | 20:45 | | X | ※Carlos |
| " | 8:83am | X | | JM |
| " | 21:05 | | X | KB |

(66)

| DATE | TIME | IN | OUT | GUEST | GS |
|------|------|----|----|-------|----|
| 7-7-18 | 23:25 | x | | | K.3. |
| 7-8-18 | 1:50am | X | | | JM |
| " | 11:15am | | X | | JM |
| " | 12:05 | | X | | K.3. |
| " | 14:02 | ^ | | | K.3. |
| " | 15:00 | X | | ISAAC | |
| " | 15:16 | X | | KENNY | |
| " | 8:25pm | X | | | JM |
| " | 9:06pm | | X | | JM |
| " | 23:00 | | | JOSH | |
| 7-9-18 | 1:10 | | | JOSH | |
| " | 1:20am | X | | | JM |
| " | 11:00 | | X | | K.?. |
| " | | | | | |
| " | 11:37am | | X | | JM |
| " | 3:40pm | X | | | JM |
| " | 5:22pm | | X | | JM |
| " | 17:40 | X | | | K? |
| " | 18:39 | | | | |
| " | 20:10 | X | | | |
| " | 11:10pm | X | | | JM |
| 7-10-18 | 10:15am | | X | | JM |

(67)

| DATE | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 7-10-18 | 10:00 | | X | | K.P. |
| " | 1:14pm | X | | | JM |
| " | 1:32pm | | X | | JM |
| " | 1:55pm | X | | | JM |
| " | 3:17pm | X | | *Matt | |
| " | 3:30pm | | | *Matt | |
| " | 3:37pm | | X | | JM |
| " | 5:15pm | X | | | JM |
| " | 18:10 | X | | | K.? |
| " | 6:44pm | | X | | JM |
| " | 18:34 | X | | | K? |
| " | 10:05 | X | | | K.O |
| " | 11:40pm | X | | | JM |
| 7-11-18 | 0:15 | X | | | K.? |
| " | 8:40am | | X | | JM |
| " | 9:3?am | X | | | JM |
| " | 10:00 | X | | | |
| " | 10:03 | X | | SFPD WILLIAM HEPPNER OFFICER CASTILLO | WILLIAM HEPPNER @ SFGOV.ORG |
| " | 10:20 | | X | | NET OJOO? + KACH INVESTIG AGAINST KACH SEX TRAFFICKING |
| " | 10:20 | | X | | |
| " | 11:10am | | X | | JM |
| " | 17:35 | | | | JM |
| " | 13:43pm | X | | | |

Pieper 000144



(68)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 7-11-18 | 10:23 | | X | | E.? |
| " | 19:34 | X | | | K.? |
| " | 20:11 | X | | | J.N |
| " | 21:02 | X | | *RYAN | |
| " | 22:14 | | X | *RYAN | |
| 7-12-18 | 7:56am | | X | | JM |
| " | 9:08 | X | | | J.N |
| " | 10:15 | | X | | K.? |
| " | 11:25pm | X | | | JM — had to se garage door bc key doesn't work too well. |
| " | 18:16 | X | | | K.?. |
| " | 9:00pm | X | | | JM |
| " | 22:25 | | X | | K.?. |
| " | 11:37pm | | | *Ben | |
| 7-13-18 | 12:00am | | X | *Ben | K.?. |
| " | 01:01 | X | | | K.?. |
| " | 9:25am | | X | | JM |
| " | 11:30 | | X | | K.?. |
| " | 4:33pm | X | | | JM |
| " | 17:50 | X | | | K.? |
| " | 6:15pm | | X | | JM |
| " | 8:19pm | X | | | JM |
| 7/14/18 | 9:50am | | X | | JM |
| " | 1:45pm | X | X | | JM |



69

| Date | Time | In | Out | Guests | Us. |
|---|---|---|---|---|---|
| 7/14/18 | 3:10pm | | X | | JM + K.P. |
| " | 6:29pm | X | | ED intivis JM | ED @ 636 |
| | | | | In front of | K.P. |
| | | | | 636 | |
| " | 18:30 | X | | | |
| " | 7:00pm | | X | | JM |
| " | 8:40pm | X | | | JM |
| " | 8:45 | | K | | K.? |
| " | 23:15 | X | | | K.?. |
| 7-15-18 | 10:41 | | X | | K.?. |
| " | 10:46 | X | | | K.?. |
| " | 12:33pm | | X | | JM + K.P. |
| " | 8:30pm | X | | | JM + K.P. |
| " | 9:40 | | X | | K.?. |
| " | 18:25 | X | | | K.?. |
| " | 10:10pm | X | | | JM + K.P. |
| " | 22:55 | X | | John | |
| " | 23:20 | | | " | |
| 7/16/18 | 7:24 | | X | | JM + K.P. |
| " | 1:55pm | X | | | JM + K.P. |
| " | 2:20pm | | X | | JM |
| " | 4:07pm | X | | | JM |
| " | 4:47pm | X | | | |
| " | 4:49pm | | X | | |
| " | 4:33pm | X | | * Trevel | |

(79)

| Date | Time | In | Out | Guests | JB |
|------|------|----|----|--------|----|
| 7/16/18 | 4:47pm | | X | *Travel | |
| " | 5:31pm | X | | *Scott | |
| " | 5:44pm | | X | *Scott | |
| " | 17:90 | | X | | K? |
| " | 18:90 | X | | | K? |
| " | 18:55 | | X | | K.P. |
| " | 19:15 | X | | | K? |
| " | 21:10 | | X | | K? |
| " | 23:00 | X | | | K? |
| 7/17/18 | 9:40am | | X | | JM |
| " | 10:00 | X | | | K? |
| " | 12:04pm | X | | | JM |
| " | 1:00pm | | X | | JM |
| " | 20:15 | X | | | K? |
| " | 9:14pm | X | | | JM |
| " | 21:15 | | X | | K? |
| 7-18-18 | 60:32 | X | | | K? |
| " | 3:07am | | X | | JM |
| " 10:20 | 11:30am | X | | | JM |
| " | 13:20 | XX | X | | K? |
| " | 21:15 | X | | | K? |
| " | 9:20pm | | X | | JM |

Pieper 000147

(21)

| DATE | TIME IN OUT | IN | OUT | GUEST | US |
|------|-------------|-----|-----|-------|-----|
| 7/18/18 | 11:10 pm | | X | | JM |
| 7/19/18 | 12:55 am | X | X | | JM |
| " | 6:25 am | | X | | JM |
| " | 10:14 am | X | | | JM |
| " | 10:58 | | X | | K.P. |
| " | 11:15 am | | X | | JM |
| " | 17:55 | 2 | | | K.P. |
| " | 9:24 pm | X | | | JM |
| " | 22:11 | | | | |
| 7-20-18 | 9:47 | X | | | K.P. |
| " | 7:20 am | | X | | JM |
| " | 8:45 am | X | | | JM |
| " | 10:32 | | X | | K.P. |
| " | 10:50 am | | X | | JM |
| " | 67:40 | X | | | K.P. |
| " | 20:27 | X | | JOSH TCA | JW |
| " | 9:28 pm | X | | | JM |
| " | 10:22 pm | | X | | JM |
| " | 21:47 | | X | JOSH TCA | KP |
| " | 21:49 | | X | | KP |
| " | 22:14 | X | | | JM |
| 7/21/18 | 1:54 am | X | | | |

| ① DATE | TIME | IN | OUT | GUEST | US ㉒ |
|---|---|---|---|---|---|
| 7-21-18 | 10:35 | | x | | J.M, 12:13 ™ INTERNE |
| " | 8:15 pm | X | | | JM   Car Darim |
| " | 16:16 | | X | | E.J.  WHATSASSCALL |
| " | 18:01 | X | | | K.J |
| " | 18:35 | | X | | KA |
| " | 22:25 | X | | | K2 |
| " | 22:35 | | X | | K?. |
| 7-22-18 | 1:00 | X | | | K.? |
| " | 8:10 am | | X | | J.M |
| " | 9:00 am | X | | | J m |
| " | 10:15 am | | X | | J M |
| " | 11:40 | | X | | K? |
| " | 16:00 | X | | | K.? |
| " | 20:15 | | | | K2. |
| " | 8:30 pm | X | | | JM |
| " | 10:38 pm | | X | | JM |
| 7-23-18 | 12:05 | X | | | K.? |
| " | 12:48 | X | | | JM |
| " | 9:15 am | | X | | JM ⎫ |
| " | 9:21 am | X | X | | JM ⎬ laundry |
| " | 9:22 am | | X | | JM ⎭ |
| " | 9:28 am | X | | | JM |
| " | 10:08 am | | X | | JM |

(73)

| DATE | TIME | IN | OUT | GUEST | W |
|------|------|----|-----|-------|---|
| 7-23/18 | 10<05 | | × | | K.? |
| " | 10:23am | × | | | JM → laundry |
| " | 10:44am | | × | | JM |
| " | 10:50am | × | | | JM |
| " | 12:40pm | × | | ✱ATand T | |
| " | 12:59pm | | × | ✱ATand T | |
| " | 1:45 | × | | | K.? |
| " | 1430 | | × | | k.? |
| " | 3:23pm | | × | | JM |
| " | 3:43pm | × | × | | JM |
| " | 7:00pm | × | × | | JM |
| " | 20:05 | × | | | K? |
| " | 9:07pm | × | | | JM |
| " | 11:40pm | | × | | JM |
| 7/24/18 | 1:04am | × | × | | JM |
| " | 9:53am | | × | | JM |
| " | 10:20 | | × | | K.?. |
| " | 1:23pm | × | | | JM |
| " | 3:40pm | | × | | JM |
| " | 7:33pm | × | | | J.B |
| " | 20:30 | × | | | K? |
| " | 22:10 | | × | | |

74

| DATE | TIME | IN | OUT | GUEST | WS |
|---|---|---|---|---|---|
| 7-25-18 | 0:45 | X | | | E.J |
| '' | 9:40am | | X | | JM |
| '' | 10:00 | | X | | K.? |
| '' | 12:10 | X | | | K.? |
| '' | 8:53PM | X | / | | JM |
| '' | 21:10 | X | #7 | | K.? |
| 7-26-18 | 8:55 | X | | XFINITY TECH Radis Radis | X FINITY |
| '' | 9:40 | | X | | |
| '' | 9:50am | | X | | JM |
| '' | 10:10 | | X | | K.? |
| '' | 11:10am | X | | | JM |
| '' | 11:31am | | X | | JM |
| '' | 19:30 | X | | | K.? |
| '' | 22:00 | | X | | K.? |
| '' | 11:01 | X | | | JM |
| '' | 11:30pm | | X | | JM |
| '' | 12:33am | X | | | JM |
| '' | 12:35 | X | | | K.? |
| '' | 6:55am | | X | | JM |
| '' | 10:01 | | X | | K.? |
| '' | ~~11:30~~ | X | | | |
| '' | 9:59am | X | | | JM |
| '' | 11:30 am | | X | | JM |

(75)

| DATE GUEST | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 7-27-18 | 18:15 | x | | | K.P |
| " | 21,05 | | x | | K.? |
| " | 10:06pm | x | | | JW |
| 7-28-18 | 0:20 | x | | | K.? |
| " | 9:53am | | x | | JW |
| " | 10:05 | | x | | K.P |
| " | 15:15 | x | | | K.P. |
| " | 7:50pm | x | | | JW |
| " | 8:48pm | | x | | Jhn |
| " | 9:55pm | x | | | JW |
| " | 21,11 | | x | | K.? |
| " | 23:41 | a | | | K.P. |
| 7-28-18 | 10:15am | | x | | JW |
| " | 15:05 | | x | | K.? |
| " | 18:55 | x | | | K.? |
| " | 7:45pm | x | | | Jhn |
| " | 8:20pm | | x | | JW |
| " | 9:44pm | x | | | JW |
| 7/30/18 | 6:48am | x | | | JW |
| " | 10:26 | | a | | K.P |
| | 10:46 | x | | | K.P |
| | 10:45 | | a | | K.P |
| | 10:47am | x | | | JW |

Pieper 000152



| DATE | TIME | IN | OUT | GUEST | WS | 76 |
|------|------|----|----|-------|----|-----|
| 7/30/18 | 11:45am | | X | | JM | |
| " | 17:25 | X | | | K.? | |
| " | 18:41 | X | | ALEXSFTik. | | |
| " | 21:14 | | X | ALEXSF | | |
| 7-31-18 | 10:00 | | X | | KF | |
| " | 16:20 | X | | | K.? | |
| " | 16:15 | | X | | K.? | |
| " | 4:30pm | X | | | JM | |
| " | 5:26pm | | X | | JM | |
| " | 9:12 | X | | | K.? | |
| " | 9:50pm | X | | | JM | |
| " | 10:30pm | | X | | K.P. | |
| " | 10:32pm | | X | | JM | |
| " | 11:50pm | X | | | JM | |
| 8-1-18 | 1:25 | X | | | K? | |
| " | 6:28am | | X | | JM | |
| " | 9:00am | X | | | JM | |
| " | 11:31am | | X | | JM | |
| " | 12:25 | | X | | K.? | |
| " | 17:25 | X | | | K.? | |
| " | 18:15 | | X | | K.? | |
| " | 8:48pm | X | | | JM | |
| " | 9:24pm | | X | | JM | |

| DATE | TIME | IN | OUT | GUEST | US | 77 |
|------|------|----|----|-------|----|----|
| 8-1-18 | 23:45 | X | | | K.D. | |
| 8-2-18 | 5:48am | X | | | JM | NON STOP NOISE |
| " | 7:38a | X | | | | FRONT DOOR + GATE |
| " | 11:15 | | X | | K.?. | IN AND OUT |
| " | 11:30am | | X | | JM | @ 1 APT. |
| " | 18:40 | X | | | K.?. | |
| " | 9:24pm | X | | | JW | |
| " | 21:55 | | X | | | |
| 8-3-18 | 5:55 | X | | | K.?. | |
| " | 8:40am | | X | | JM | |
| " | 9:29am | X | | | JW | |
| " | 10:27am | | X | | M | |
| " | 11:10 | | X | | K.?. | |
| " | 17:55 | X | | | KP. | |
| " | 10:52am | X | | | JW | |
| 8-4-18 | 7:31am | | X | | JW | |
| " | 9:14am | X | | | JW | |
| " | 11:35am | | X | | JM | |
| " | 15:09 | X | | Liz | | |
| " | 15:35 | X | | BRIANE EPHREM | | |
| " | 15:21 | | X | Liz | | |
| " | 15:21 | X | | BRIANE EPHREM | | |
| " | 9:37 | X | | | | |

Pieper 000154

(78)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|------|-------|-----|
| 8-4-18 | 9:10 Pm | | X | | JM |
| 1 | 22:45 | | X | | FB |
| 8-5-18 | 12:13 | X | | | JM |
| 11 | 01:35 | X | | | K.B |
| 11 | 9:50am | | X | | JM |
| 11 | 11:19 | X | | GEORGE | |
| 4 | 11:40 | | X | GEORGE | |
| 11 | 11:40 | | X | | KB. |
| 11 | 18:34 | X | | GEORGE | K |
| 4 | 18:39 | | X | | K.B. |
| 4 | 20:30 | | | | J.M. JEANNE HAD A VISITOR |
| 11 | 20:50 | X | X | GEORGE | A WHITE SUV PARKED OUTSIDE PAST MIDNIGHT |
| 8-6-18 | 7:03 | | X | | JM |
| 4 | 10:17 | | X | | K.B. |
| 11 | 10:42am | X | | | JM |
| 11 | 11:30am | | X | | JM |
| 11 | 11:40am | X | | | JM } laundry |
| 11 | 12:18pm | | X | | JM } |
| 11 | 12:25pm | X | | | JM |
| 11 | 1:32pm | | X | | JM |
| 11 | 4:30pm | X | | | JM |
| 4 | 7:16 | | X | | FB |

Pieper 000155

(79)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 8-6-18 | 18:25 | | X | | J.7- |
| " | 18:25 | | ↑ | | F.? |
| " | 21:20 | X | | | Uh. |
| " | 21:20 | X | | | K?- |
| 8-7-18 | 10:10 | | X | | K.? |
| " | 11:38am | | X | | JM |
| " | 5:39pm | X | | | JM |
| " | 18:30 | X | | | K.? |
| " | 21:05 | | X | | K.?? |
| " | 10:21pm | | X | | JM |
| " | 23:40 | X | | | K.? |
| " | 11:50pm | X | | | JM |
| 8/8/18 | 7:10am | | X | | JM |
| " | 9:35am | X | | | UM |
| " | 10:35 | | X | | K.?. |
| " | 11:30am | | X | | JM |
| " | 11:35 | X | | | F.B. |
| " | 11:45 | | X | | K.?. |
| " | 18:40 | X | | | F.? |
| " | 9:27pm | X | | | JM |
| 8/9/18 | 8:23am | | X | | JM |
| " | 8:33am | X | | | JM |
| " | 9:34am, Son | | ↑ | | |

| DATE | TIME | IN | OUT | GUEST | BY |
|------|------|-----|-----|-------|-----|
| 8/9/18 | 10:12am | | X | | JM + KP |
| " | 18:30 | X | | | K? |
| " | 6:48pm | X | | | JM |
| " | 21:30 | | X | | K.J. |
| " | 24:00 | X | | | KP. |
| 8-10-18 | 11:30am | | X | | JM |
| " | 12:15 | | X | | K? |
| " | 18:00 | X | | | K.J |
| " | 18:25 | | X | | K.J |
| " | 9:20pm | X | | | JM |
| " | 10:05pm | X | | | JM |
| 8-11-18 | 12:10 | X | | | K.J. |
| " | 12:35am | X | | | JM |
| " | 8:23am | | X | | JM |
| " | 9:15am | X | | | JM |
| " | 11:20am | X | | | JM |
| " | 8:44am | X | | | JM |
| " | 9:50 | | X | | JM   SMOKE DETECTOR |
| " | 17:42 | X | | CORT | on window |
| " | 21:47 | | X | CORT | FRAME |
| " | 11:40am | X | | | JM |
| 8-12-18 | 1:30a | X | | 4=am | KP.  GO's Grant date da |
| " | 11:30am | | X | | JM  closed 4 AM |

(81)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 8-12-18 | 8:24pm | X | | | JM |
| " | 12:0v | X | | | K.?. |
| 8-13-18 | 8:19am | | X | | JM |
| " | 10:17h | | X | | K.?. |
| " | 12:10pm | X | | | JM |
| " | 1:07pm | | | *Alex | |
| " | 2:23pm | | X | *Alex | JM |
| " | 18:55 | X | | | K.?. |
| " | 8:28pm | X | | | JM |
| " | 21:15 | | a | | K.? + JM |
| 8/14/8 | 12:40pm | X | | | JM + K.P. |
| " | 8:15 am | | X | | JM |
| " | 10:50 | | X | | K.? |
| " | 2:40pm | X | | | JM |
| " | 6:15pm | | X | | JM |
| " | 18:33 | X | | | K.?. |
| " | 7:30pm | X | | *Phillip | Jose |
| " | 8:10pm | | a | *Phillip | |
| " | 21:05 | | a | / | K.?. |
| " | 23:30 | a | | | K.P. |
| 8/15/8 | 9:37am | | X | | JM |
| " | 12:10 | | X | | K.P |

| DATE | TIME | IN | OUT | GUARD | WS | 82 |
|------|------|----|----|-------|------|-----|
| 8-15-18 | 15:45 | X | | | K? | |
| " | 9:00am | | X | | JM | |
| 8/16/18 | 7:10am | | X | | JM | |
| " | 10:27am | X | | | JM | |
| " | 10:40 | | X | | K? | |
| " | 11:30am | | X | | JM | |
| " | 18:27 | X | | | K? | |
| " | 9:15pm | X | | | JM | |
| " | 22:04 | | X | | K? | |
| 8-17-18 | 12:30 | X | | | K? | |
| " | 7:15am | | X | | JM | |
| " | 8:39am | X | | | JM | |
| " | 8:50am | | X | | JM | |
| " | 8:59am | X | | | JM | laundry |
| " | 9:42am | | X | | JM | |
| " | 9:46am | X | | | JM | |
| " | 10:45 | | X | | K? | |
| " | 11:30am | | X | | JM | |
| " | 17:40 | X | | | K? | |
| " | 20:15 | X | | COLT | | |
| " | 9:30pm | X | | | JM | |
| " | 10:00pm | | X | | JM | |

(83)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 8-17-18 | 22:15 | | X | CORG | KP |
| '' | 22:15 | | X | | KP |
| '' | 12:40 | X | | | K.P. |
| 8/18/18 | 2:17am | X | | | JM |
| '' | 9:30am | | X | | JM |
| '' | 11:12 | | X | | KP. |
| '' | 11:53 | X | | | KP. |
| '' | 15:00 | X | | GEORG | |
| '' | 15:45 | | X | GEORG | KP |
| '' | 15:45 | | X | | |
| '' | 19:50 | X | | GEORG | |
| '' | 18:15 | X | | | KP |
| '' | 8:10 pm | X | | | JM |
| '' | 22:02 22:41 | | X X | GEORG | KP KP. |
| 8-19-18 | 01:33 | X | | | KP. |
| '' | 10:30am | | X | | JM |
| '' | 10:35am | | X | | K.P. |
| '' | 9:34pm | X | | | JM |
| '' | 11:00pm | X | | | JM |
| 8/19/18 | 1:54pm | X | | | KP |
| 8/19/18 | 2:07am | X | | | JM |
| '' | 10:15 | | X | | KP JM |
| '' | 12:00 | | X | | |

ED COMING OUT OF
APT #1 HANGOVER
WHICH IN GOING
TO GRACE

(84)

| DATE | TIME | IN | OUT | G. WES | US |
|------|------|-----|-----|--------|-----|
| 8-20-18 | 7:25 | X | | | KP. |
| " | 6:52pm | X | / | | JM |
| " | 8:28pm | | X | | JM + KP. |
| 8-21-18 | 12:18am | X | | | JM + KD. |
| " | 8:74pm | | X | | JM |
| " | 10:33 | | X | | KD. |
| " | 12:28pm | X | | | JM |
| " | 1:47pm | | X | | JM |
| " | 6:54pm | X | | | JM |
| " | 8:05 | X | | | KP. |
| " | 21:22 | | X | | KP. |
| " | 11:08pm | | X | | JM |
| 8-22-18 | 00:05 | X | | | KP. |
| " | 12:50am | X | | | JM |
| " | 9:10am | | X | | JM |
| " | | | | | |
| " | 10:10am | X | | | JM |
| " | 11:30am | | X | | JM |
| " | 12:15 | | X | | KP. |
| " | 19:40 | X | | | KD. |
| " | 21:12 | X | | | J.M. |
| " | 9:15pm | X | | *Max | |
| " | 9:25pm | | X | *Max | |

(88)

| Date | time | In | Out | Guests | UT |
|------|------|----|----|--------|----|
| 8/23/18 | 6:53am | | X | | Jm |
| '' | 10:30am | | X | | K.P. |
| '' | 10:15am | X | X | | Jm |
| '' | 11:30am | X | X | | J.m |
| '' | 18:35 | X | | | K.? |
| '' | 9:15pm | X | | | Jm |
| '' | 9:40pm | | X | | Jm |
| '' | 10:05 | | X | | K.P. |
| 8-24-18 | 05:45 | X | | | K.? |
| '' | 1:51am | X | | | Jm |
| '' | 9:30am | | X | | Jw |
| '' | 9:45am | X | | | Jw |
| '' | 10:05 | | X | | K.? |
| '' | 10:30 | — | X | | Jm KP |
| '' | 18:00 | X | | | K.? |
| '' | 22:30 | | X | | Jm |
| '' | 9:71pm | X | | | K.?? |
| '' | 23:30 | X | | | Jm |
| 8-25-19 | 7:37am | | X | | Jm |
| '' | 9:08am | X | | | Jm 11:12am |
| '' | 9:55 | | X | | J.?? Jean came up the back door came upstairs |
| '' | 8:33pm | X | | | Jm apt #2 door is open |
| '' | 10:37pm | X | | ※ Police | |

(86)

| DATE | TIME | IN | OUT | GUEST | US. | |
|------|------|-----|-----|-------|-----|---|
| 8-26-18 | 1:30 | X | | | K? | 1:30 → 2 am |
| " | 2° Am | | | | | Loud voices |
| " | 10:05 | | X | | K? | APT #2 |
| " | 10:30 am | | X | | Jm | |
| " | 13:42 | X | | | K? | |
| " | 13:45 | | X | | K? | |
| " | 8:10 am | X | | | Jm | |
| " | 9:52 pm | | X | | Jm | |
| " | 23:30 | X | | | K? | |
| 8/27/18 | 1:30 am | X | | | Jm | |
| " | 7-33 am | | X | | Jm | |
| " | 9:41 am | X | | | Jm | |
| " | 9:53 am | | X | | Jm | |
| " | 10:30 am | X | | | Jm | |
| " | 10:25 | | X | | K? | |
| " | 11:40 am | | X | | Jm | |
| " | 17:19 | X | | | K? | |
| " | 18:35 | | X | | K? | |
| " | 23:60 | X | | | K? | |
| 8-28-18 | 10:21 am | | X | | K? | |
| " | 4:40 pm | X | | | Jm | |
| " | 5:14 pm | | X | | Jm | |
| " | 19:47 | X | | | K? | |

87

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|------|-------|-----|
| 8-28-18 | 7:16pm | X | | | JM |
| '' | 10:11pm | | X | | KP |
| '' | 11:12pm | | X | | JM |
| 8/29/18 | 12:49 | X | | | JM |
| '' | 01:03 | X | | | K.P. |
| '' | 11:35am | | X | | JM |
| '' | 12:12 | | X | | K.P. |
| '' | 12:10 | X | X | | K.P. |
| '' | 16:30 | X | | | K.P. |
| '' | 16:50 | | X | | K.P. |
| '' | 18:55 | X | | | K.P. |
| '' | 9:00pm | | X | | JM |
| 8/30/18 | 6:52am | | X | | JM |
| '' | 10:12am | X | | | JM |
| '' | 10:45 | | X | | K.P. |
| '' | 11:35am | | X | | JM |
| '' | 16:45 | X | | | K.P. |
| '' | 8:30pm | X | | | JM |
| '' | 21:40 | | X | | K.P. |
| 8-31-18 | 01:17 | X | | | K.P. |
| '' | 9:00am | | X | | JM |
| | 9:53am | X | | | JM |

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 8-31-18 | 10:42am | | X | | JM |
| " | 11:05am | X | | | JM |
| " | 11:30am | | X | | JM |
| " | 16:40 | X | | | KP |
| " | 18:43 | | X | | KP |
| " | 20:30 | X | | | KP |
| " | 9:00pm | X | | | JM |
| " | 11:36pm | | X | | JM |
| 9-1-18 | 12:48am | X | | | JM |
| " | 10:22am | | X | | J.M. |
| " | 13:48 | | X | | KP |
| " | 15:59 | X | | | KP |
| " | 17:30 | X | | YUAMS | |
| " | 7:00am | X | | | JM |
| " | 19:33 | | X | YUAMS | |
| " | 15:32 | | X | | KP |
| " | 7:45pm | X | | *JULIO | |
| " | 8:16pm | | X | *JULIO | |
| " | 9:44pm | | X | | JM |
| " | 21:57 | X | | | KP |
| 9/2/18 | 1:10am | X | | | JM |
| " | 10:27am | | X | | JM |

#1 LOUD NOISE ALL EVENING TEXT @ 1 AM TO ED & SEANG

(89)

| DATE | TIME | IN | OUT | GUEST(S) |
|------|------|-----|------|----------|
| 9-2-18 | 14:23 | X | | YVANS |
| " | 16:40 | | X | YVANS |
| " | 7:30PM | X | | JM |
| " | 8:00PM | | X | JM |
| " | 16:58 | X | X | GARY |
| " | 16:59 | X | | KIKO |
| " | 20:50 | | X | GARY |
| " | 23:50 | | X | KIKO |
| " | 22:10 | | X | K? |
| 9-3-18 | 12:19am | X | | JM  ran into Ed in the hallway |
| " | 1:03 | X | | K? |
| " | 9:16PM | | X | JM |
| " | 11:40 | | X | K.? |
| " | 11:45am | X | | JM |
| " | 15:45 | X | | K? |
| " | 15:55 | | X | K.G |
| 9-4-18 | 8:25am | | X | Jan |
| " | 10:15 | | X | K.?. |
| " | 18:55 | X | | K? |
| " | 7:00PM | X | | JM |
| " | 11:45PM | | X | JM |
| 9-5-18 | 12:30am | X | | Jan |

80

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 9-5-18 | 12:40 | X | | | K? |
| '' | 7:15am | | X | | JM |
| '' | 9:44am | X | | | JM |
| '' | 11:50 | | X | | K? |
| '' | 11:04 | | X | | JM |
| '' | 11:40 | X | | | K? |
| '' | 12:0 | | X | | K? |
| '' | 18:12 | X | | | K? |
| '' | 18:50 | | X | | K? |
| '' | 9:02pm | X | | | JM |
| '' | 9:27pm | | X | | JM |
| '' | 11:02pm | X | | | JM |
| '' | 11:05 | | X | | K? |
| 9-6-18 | 7:34am | | X | | JM |
| '' | 10:15am | X | | | JM |
| '' | 11:00am | | X | | JM |
| '' | 11:50 | | X | | K? |
| '' | 18:50 | X | | | K? |
| '' | 8:55pm | X | | | JM |
| '' | 22:12 | | X | | K? |
| 9-7-18 | 1:20 | X | | | JM |
| '' | 8:45am | | X | | JM |
| '' | 9:52am | X | | | K? |

(9)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 9-7-18 | 10:02 | | X | | KB |
| " | 11:30am | | X | | JK |
| " | 18:R | | X | | KB |
| " | 9:10 pm | X | | | JK |
| 9/8/18 | 7:05am | | X | | JK |
| | ~~10:10~~ | | ~~X~~ | | ~~JK~~ |
| " | 8:58am | X | | | JK |
| " | 10:10am | | X | | JK |
| " | 19,50 | X | | MARTINA | |
| " | 19:55 | | X | MARTINA | |
| " | 19,55 | | X | | KB |
| " | 19:R | X | | MARTINA | |
| " | 19:R | X | | | KB |
| " | 8:30pm | X | | | JK |
| " | 15:33 | X | | WOLFGANG | |
| " | 8:00 pm | | X | | JW |
| " | 9:10pm | X | | | JW |
| " | 21:58 | | X | MARTINA | |
| " | 21:58 | | X | WOLFGANG | |
| " | 10:25pm | | X | | JK |
| 9/9/18 | 1:35am | X | | | JK |
| | 10:23am | | X | | JK |

(52)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|-----|-------|-----|
| 9-9-18 | 11:17 | | X | | K? |
| " | 14:12 | X | | | K? |
| " | 14:45 | | X | | K? |
| " | 17:40 | X | | | K? |
| " | 8:45pm | X | | | JM |
| " | 15:55 | X | | ADRIAN | |
| " | 21:50 | | X | ADRIAN | |
| " | 9:37pm | X | | *Travis | |
| " | 9:53pm | | X | *Travis | |
| " | 10:30pm | | X | | JM |
| 9/10/18 | 1:57am | X | | | JM |
| " | 9:05am | X | | *Ismael | |
| " | 9:32am | | X | *Ismael. | |
| " | 9:47am | X | | | JM |
| " | 10:05A | | X | | K? |
| " | 3:10pm | | X | | JM |
| " | 18:55 | X | | | K? |
| " | 8:25pm | X | | | JM |
| 9/11/18 | 9:45am | | X | | JM |
| " | 10:10am | | X | | K.P. |
| " | 11:37am | X | | | JM |
| " | 1:10pm | | X | | JM |
| " | 4:22pm | X | X | | WM |

Pieper 000169

(93)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|-----|-------|-----|
| 5-11-18 | 18:17 | X | | | k? |
| " | 20:30 | | X | | k? |
| " | 23:05 | X | | | k? |
| 5/12/18 | 7:50am | | X | | JM |
| " | 10:01 | X | | | JM |
| " | 11:05 | | X | | k? |
| " | 11:38am | | X | | JM |
| " | 8:45pm | X | | | JM |
| " | 21:01 | X | | | k? |
| 9-13-18 | 0:23 ← | | | | |
| " | 12:13am | | X | | JM |
| " | 1:36am | X | | | JM |
| " | 8:31am | | X | | JM |
| " | 10:05 | X | | | k? |
| " | 11:45am | | X | | JM |
| " | 17:22 | X | | | k? |
| " | 09:04pm | X | | | JM |
| " | 22:25 | | X | | k? |
| 9-14-18 | 6A 12 | X | | | k? |
| " | 7:35am | | X | | JM |
| " | 9030 xx | | | | |
| " | 10:10am | X | | | JM |

white guy in his 30s long shaggy hair with a cigarette in his mouth, coming out of apt #2 to go smoke outside.

2♂ + 2♀
LATE 20 EARLY 30
ē WHITE VAN
ILLINOIS 3142902
MOVE STUFF INTO
#1 AND #2
DARK HAIR ○ SIRIS
ASKS IF IN NEAL
13:09 JASON + ♀
IN AND OUT OF #4
ON VIDEO

JASON HERE
TO DO "MINUTE
NAUCIE"
IN GARAGE

(94)

| DATE | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 9-14-18 | 10:20 AC | | X | | KP |
| \\ | 11:10am | | X | | JM |
| \\ | 17:20 | X | / | | KP |
| \\ | 9:45pm | X | | | JM |
| \\ | 10:05pm | | X | | JM |
| 9-15-18 | 12:15am | X | | | JM |
| \\ | 9:85am | | X | | JM |
| \\ | 10:07 | | X | | KP. |
| \\ | 11:40 | X | | | KP. |
| \\ | 14:50 | | X | | KP |
| \\ | 9:00pm | X | | | JM |
| \\ | 9:08pm | | X | | JM |
| \\ | 22:52 | X | | | KP |
| \\ | 11:08 | X | | | JM |
| 9/16/18 | 9:25pm | | X | | JM |
| \\ | | | / | X | |
| \\ | 9:14pm | X | | | JM |
| \\ | 10:27am | | X | | JM |
| \\ | 18:15 | | X | | KP. |
| \\ | 7:00pm | X | | | JM |
| \\ | 21:40 | X | | | KP |
| \\ | 22:00 | | X | | KP |
| 9-17-18 | 0:30 | X | | | KP |

The lights in the Hallway are not on. It's dark.

Pieper 000171

| DATE | TIME | IN | OUT | GUEST | US | (95) |
|---|---|---|---|---|---|---|
| 9-17-18 | 9:42 m | | X | | K.? | |
| " | 10:00am | | X | | JM | |
| " | 12:50pm | X | | | JM | |
| " | 19:00 | X | | | K.? | |
| " | 3:58pm | | X | | JM | |
| " | 6:44pm | X | | | JM | |
| " | 9:35pm | | X | | JM | |
| " | 9:50pm | X | | | Jam | |
| 9/18/18 | 8:25am | | X | | JM | |
| " | 10:05 | | X | | K.? | |
| " | 5:30pm | X | | | JM | |
| " | 5:50pm | | X | | JM | |
| " | 19:05 | X | | | KB | |
| " | 7:22pm | X | | | JM | |
| " | 22:12 | X→ | X | | K.?. | |
| 9-19-18 | R:55 | X | | | K.?. | |
| " | 8:24am | | X | | JM | |
| " | 10:00 | | X | | K.?. | |
| " | 10:17am | X | | | JM | |
| " | 11:09am | X | | | K.P. | |
| " | 11:13 | X | | | K.P | |
| " | 11:20am | | X | | JM | |

(96)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 9-15-18 | 11:37 | | X | | K.P. |
| ,, | 20:02 | X | | | K.P. |
| ,, | 8:55pr | X | | | JM |
| ,, | 10:05pr | | X | | JM |
| ,, | 11:30pm | X | | | JM |
| 9/20/18 | 8:30am | | X | | JM |
| ,, | 9:45am | X | | | JM |
| ,, | 8:55am | | X | | JM |
| ,, | 10:05 | | X | | K.P. |
| ,, | 8:59am | X | | | JM |
| ,, | 9:56am | | X | | JM |
| ,, | 9:59am | X | | | JM |
| ,, | 11:30am | | X | | JM |
| ,, | 16:15 | X | | | K.P. |
| ,, | 16:25 | | X | | K.P. |
| ,, | 18:47 | X | | | K.P. |
| ,, | 8:42pm | X | | | JM |
| ,, | 21:45 | | X | | K.P. |
| ,, | 11:30 pm | | X | | JM |
| 9/21/18 | 12:05am | X | | | JM |
| ,, | 12:22am | X | | | K.P. |
| ,, | 6:56am | | X | | JM |

Jose's Laundry

| DATE GUEST | TIME | IN | OUT | GUEST | WS |
|---|---|---|---|---|---|
| 9-21-18 | 10:16am | X | | | JM |
| " | 10:30am | | X | | K.P. |
| " | 11:30am | | X | | JM |
| " | 19:20 | X | | | K.P. |
| " | 10:00pm | X | | | JM |
| " | 10:78pm | | X | | JM |
| 9/22/18 | 1:11am | X | | | JM |
| " | 7:07am | | X | | JM |
| " | 16:23 | | | | |
| " | 17:1 | X | | GEORGE | |
| " | 17: | X | | MICHAEL | |
| " | 17:20 | X | | PAUL | |
| " | 20:40 | | X | GEORGE | |
| " | 20:40 | | X | MICHAEL | |
| " | 21:42 | | X | PAUL | |
| " | 23:10 | | X | ? | K.P. |
| 9-23-18 | 12:50 AM | X | | | K.P. |
| " | 10:55 AM | | X | | KP |
| " | 13:05 | X | | | K.P. |
| " | 14:05 | | X | | K.P |
| " | 21:02 | X | | | KP. |
| " | 2c-33 | | X | | KB |

*(marginal note, right side):*
NEAC
SANTIAGO
CLAUDIO
DCAG
STEFI
RUE
MINI
COOPER

82

Pieper 000174

97.5

| DATE | TIME | IN | OUT | GUEST | US CLOUD CONUER. |
|------|------|----|----|----|----|
| 9-24-18 | 1:05 | X | | ← | K? ASTON IN #1 |
| " | 10:33 | | X | | K? AT GUEST 2 TORE |
| " | 1:07 pm | X | | | JM |
| " | 2:12 pm | | X | | JM |
| " | 3:01 pm | X | | | JM |
| " | 8:08 pm | X | | * Orion | 21:35 VISITOR STIPPED |
| " | 8:30 pm | | X | * Orion | OUT FOR STINKS SHORT OG BEARD LIGHT PANTS |
| " | 18:55 | X | | | K-? DOORS SCANNIN |
| " | 23:17 | ← | | | #1 + #2 + FRONT GATE |
| 9/25/18 | 6:39 am | | X | | JM VISITORS LEAVIN |
| " | 18:42 | | X | | K? |
| " | 8:34 pm | X | | | JM YOUNG J DOWN |
| " | 1:00 | | X | 21:? | K? SKATE BOARDER |
| " | 9:00 pm | X | | * Orion | VISITIN #B |
| " | 9:22 pm | | X | * Orion | STAZ? @ FRONT USE 10 DAR GATE MEETIN |
| " | 23:80 | X | | | K? JESS COHON |
| 9/26/18 | 9:48 am | | X | | JM |
| " | 10:22 | | X | | K? |
| " | 11:04 | X | | | K? |
| " | 10:30 am | X | | | JM |
| " | 11:30 am | | X | | JM |
| " | 11:30 | | X | | K? |
| " | 16:20 | X | | | K? |
| " | 16:20 | | X | | K? |

98

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|----|
| 9-26-18 | 17:40 | X | | | K.P. |
| " | 18:15 | | ✓ | | K.? |
| " | 22:30 | X | | | J.M. |
| " | 22:30 | ✓ | | | K.? |
| -"- | 10:32pm | X | | | JM+KP. |
| 9-27-18 | 7:20 am | | X | | JM |
| " | 11:07am | | X | | K.P. |
| " | 11:10am | | X | | JM |
| " | 9:40pm | X | | | JM |
| " | 22:25 | X | | | K? |
| 9-28/18 | 7:42am | | X | | JM |
| " | 8:35 A | | X | | K.? |
| " | 11:30am | | X | | JM |
| " | 17:25 | X | | | K? |
| " | 19:00 | | X | | K.? |
| " | 9:55pm | X | | | JM |
| " | 11:20pm | ✓ | X | | JM |
| " | 23:50 | X | | | K? JM |
| 9/29/18 | 1:05am | X | | | JM |
| " | 1:27am | | X | | JM |
| " | 21:40am | X | | | JM |
| | 10:25am | | X | | JM |

(95)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 9-29-18 | 15:09 | X | | JEWAYNE | |
| " | 18:42 | | X | JEWAYNE | |
| " | 7:27pm | X | | | JM |
| " | 10:10pm | | X | | JM |
| 9/30/18 | 1:45am | α | | | JM |
| " | 4:20 | | √ | | JM |
| " | 15:10 | | X | | E? |
| " | 7:45pm | X | | | JM |
| 10-1-18 | 0:24 | X | | | E? |
| " | 8:02am | ⟵ | | | Neil took our camera from the main door. |
| " | 10:02 | | X | | E? |
| " | 11:53am | | | *Zac | Jose accidentally locked himself out, left his keys and phone in his room. Used firescape to get in and retrieve his keys. |
| " | 1:00pm | | X | *Zac | |
| " | 2:15pm | | α ⟶ | JM | |
| " | 18:55 | X | | | E? |
| " | 19:20 | | ⟵ | | DAN DECIDED MAIC FOR ED TO |
| " | 8:50pm | X | | | JM OAU IN #1 |
| " | 9:30pm | | α | | |
| " | 26:05 | | X | | E? |
| 10-2-18 | 0:25 | X | | | E? |
| " | 3:13am | X | | | JM |
| " | 9:14am | | X | | JM |

Pieper 000177

(100)

| DATE | TIME | IN | OUT | GUEST | WS |
|------|------|----|----|-------|----|
| 10-2-18 | 10:15 | | X | | K.? |
| " | 6:00 pm | X | | | JM |
| " | 19:00 | X | | | K.? |
| " | 22:30 | | X | | K.? |
| 10-3-18 | 0:50 | X | | | K.? |
| " | 7:40 am | | X | | JM |
| " | 8:40 | | X | | K.? |
| " | 10:30 am | X | | | K? |
| " | 11:05 | | X | | K.? |
| " | 10:09 am | X | | | JM |
| " | 11:39 am | | X | | JM |
| " | 11:55 | X | | | K.? |
| " | 12:02 | | X | | K.? |
| " | 16:42 | X | | | K? |
| " | 20:05 | | X | | K.? |
| " | 8:44 pm | X | | | JM |
| 10-4-18 | 0:52 | X | | | K.? |
| " | 6:35 am | | X | | JM |
| " | 10:20 am | X | | | JM |
| " | 10:22 | | X | | K.? |
| " | 11:25 am | | X | | JM |
| " | 18:48 | X | | | K? |
| " | 8:45 pm | X | | | JM |

O IN 20 TIES
BLACK HAIR
CHUBBY
WANDERING
HALLWAY
OUT HOME

(101)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 10-4-18 | 21:50 | | X | | K.P |
| '' | 10:30 PM | | X | | JM |
| 10/5/18 | 12:25 | X | | | JM |
| '' | R:28 | X | | | K.? |
| '' | 10:30 | | X | | K? |
| '' | 10:16 am | | X | | JM |
| '' | 10:21 am | X | | | JM |
| '' | 11:03 | | X | | JM } laundry |
| '' | 11:06 am | X | | | JM |
| '' | 11:30 am | | X | | JM |
| '' | 13:40 | X | | | K.? |
| '' | 9:30 pm | X | | | JM |
| 10/6/18 | 1:02 am | | X | | JM |
| 10/6/18 | 2:13 am | X | | | JM |
| '' | 8:31 am | | X | | JM |
| '' | 9:27 am | X | | | JM |
| '' | 15:08 | X | | Russel | |
| '' | 15:50 | | X | Russel | |
| '' | 15:42 | | X | | K.P |
| '' | 7:30 pm | X | | | JM |
| 10-7-18 | 01:10 | X | | | K.? |
| '' | 10:30 am | | X | | JM |

Pieper 000179





(703)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 10/10/18 | 8:55pm | X | | | Jm |
| 10-11-18 | 01:02 | X | | | K? |
| " | 10:05 | | X | | K.P. |
| " | 11:35am | | X | | Jm |
| " | 20:02 | X | | | K.P |
| " | 8:55pm | X | | | Jm |
| " | 9:15pm | | X | | Jm |
| " | 9:30am | X | | | Jm |
| 10-12-18 | 10:45 | | X | | K.P. |
| " | 11:30am | | X | | Jm |
| " | 18:05 | X | | | K.P. |
| " | 8:35pm | X | | | Jm |
| " | 9:05pm | | X | | Jm |
| 10/13/18 | 12:05am | X | | | Jm |
| " | 10:31am | | X | | Jm |
| " | 18:44 | X | | | J.m |
| " | 22:10 | | X | | K.P |
| 10-14-18 | 1:20 | X | | | K.P. |
| " | 10:30am | | X | | Jm |
| " | 17:02 | | X | | K.P |
| " | 14:41 | X | | | K.P. |
| " | 15:02 | | X | | K.P |
| " | 17:00 | X | | X | K.P. |

Pieper 000182

(109)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 10-14-18 | 8:00am | X | | | J → M |
| " | 20:35 | X | | TERRENCE | |
| " | 21:55 | | X | TERRENCE | |
| 10-15-18 | 10:15 | | X | X | KP |
| " | 10:45am | | X | | JM |
| " | 2:28pm | X | | | JM |
| " | 2:45pm | | X | | JM |
| " | 4:15pm | | X | | JM |
| " | 16:33 | | X | | KP |
| " | 18:47 | X | | | KB |
| " | 11:14pm | X | | | JM |
| 10-16-18 | 10:42 | | X | | KB |
| " | 1:58pm | | X | | JM |
| " | 18:22 | X | | | KP |
| " | 8:35pm | X | | | JM |
| " | 20:03 | X | | Kiko | |
| " | 21:52 | | X | Kiko | |
| " | 22:18 | | X | | KB |
| 10-17-18 | 1:00 | X | | | KP |
| " | 10:50 | | X | | KP |
| " | 11:30am | | X | | JW |
| " | 18:50 | X | | | KB |
| " | 8:35pm | X | | | JM |

Pieper 000183

| DATE | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 10-17-18 | 23:10 | X | | | SMOKE ALARM IN FRONT |
| 10-18-18 | 1:05 | | X | JW | OF #1 GOING OF FOG IN |
| '' | 9:08 | X | | | AIR ON STAIRS CALLED REG FOG |
| 18 | 17:30 | X | | K? | JUSTIN H. HARASSED, |
| '' | 18:00 | | X | K? | JOSE WHEN GETTING INTO CAR |
| '' | 22:00 | X | | K? | HAIR TO STAY |
| '' | 22:25 | | X | K? | JOSE RETURNS FROM |
| '' | 23:30 | X | | V.W | VOLUNTEERING |
| 10-19-18 | 0:35 | X | | K? | |
| '' | 11:15am | | X | JW | |
| '' | 11:40 | | X | K? | |
| '' | 18:55 | X | | K? | |
| '' | 19:05 | | X | K? | |
| '' | 9:00pm | X | | JW | |
| '' | 10:10pm | | X | JW | |
| '' | 23:33 | X | | K? | |
| 10/20/18 | 2:07am | X | | JW | |
| '' | 10:05 | | X | K? | |
| '' | 10:25am | | X | JW | |
| '' | 11:27 | X | | K? | |
| '' | 14:45 | | X | K? | |
| '' | 8:42pm | X | | JW | |
| '' | 21:30 | | X | K? | |

165

(106)

| DATE | TIME | IN | OUT | GUEST | US |
|---|---|---|---|---|---|
| 10/20/18 | 10:50 pm | | X | | JM |
| 10/21/18 | 1:15 am | X | X | | JHS |
| '' | 10:30 am | | X | | JM |
| '' | 11:45 → 12:30 | ← | | | HADDEAKS |
| '' | 18:15 | | ∝ | | K? |
| '' | 8:21 pm | ∝ | | | JM |
| '' | 22:50 | ∝ | | | K? |
| 10-22-18 | 10:17 | | X | | K? |
| '' | 11:00 am | | X | | JM |
| '' | 18:47 | ∝ | | | K? |
| '' | 21:30 | | X | | K? |
| '' | 22:03 | ∝ | | | K? |
| 10-23-18 | 5:55 | | X | | K? |
| '' | 16:15 | X | | | K? |
| '' | 10:15 | | X | | K? |
| '' | 4:00 pm | X | | | JM |
| '' | 4:40 pm | | X | | JM |
| '' | 18:12 | X | | | K? |
| '' | 6:16 pm | X | | | JM |
| '' | 6:42 | X | | *Dan *Dan | |
| '' | 6:51 pm | | X | | K5.3 |
| '' | 21:15 | | X | | JM |
| '' | 10:45 am | | X | | |

CONSTRUCTION
IN #1
AND COVATI
IN ED'S GARAGE

(107)

| DATE | TIME | IN | OUT | GUEST | WS |
|------|------|-----|-----|-------|-----|
| 10-23-18 | 23:35 | X | | | KP |
| 11 | 11:54 | X | | | JM |
| 10/24/18 | 10:15 | | X | | K? |
| 11 | 10:57am | X | | | KP |
| 11 | 11:32am | | X | | KP |
| 11 | 11:32am | | X | | JM |
| 11 | 1:32 | | X | | K? |
| 11 | 18:50 | X | | | K? |
| 11 | 9:00 | X | | | JM |
| 10-25-18 | 10:10 | | X | | J.? |
| 11 | 10:14 | X | | | J.? |
| 11 | 10:30 | | X | | K? |
| 11 | 10:10am | | X | | JM |
| 11 | 10:14am | X | | | JM |
| 11 | 10:59am | | X | | JM | } laundry |
| 11 | 11:04am | X | | | JM |
| 11 | 11:35am | | X | | JM |
| 11 | 18:44 | X | | | K? |
| 11 | 9:27pm | X | | | JM |
| 11 | 8:54pm | | X | | JM |
| 11 | 21:21 | | X | | K? |
| 11 | 23:37 | X | | | K? |
| 10/26/18 | 12:50 | X | | | JM |

103

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 10-26-18 | 10:57am | | X | | JW |
| " | 10:03 | | X | | KB |
| " | 18:40 | X | | | K? |
| " | 15:40 | X | | Russel | |
| " | 20:32 | X | | | V·R |
| " | 21:50 | X | X | Russel | |
| " | 10:10pm | | X | | JW |
| 10/27/18 | 2:57am | X | | | JW |
| " | 9:15am | | X | | JW |
| " | 9:55am | X | | | JW |
| " | 10:30am | | X | | JW |
| " | 17:15 | | X | | F? |
| " | 6:55pm | X | | | JW |
| " | 10:09pm | | X | | JW |
| " | 23:23 | X | | | JW |
| 10/28/18 | 3:45am | X | | | JW |
| " | 10:35am | | X | | JW |
| " | 19:30 | | X | | K? |
| " | 7:54pm | X | | | Su |
| " | 23:07 | X | | | K? |
| 10/29/18 | 9:10am | | X | | JW |
| " | 10:10 | | X | | K? |
| " | 11:55am | X | | | JW |

Pieper 000187

(109)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|----|
| 10/29/18 | 12:42pm | X | | ✳ \smel | |
| " | 142pm | | X | ✳ \smel | |
| " | 150pm | | X | | JM |
| " | 16:35 | X | ✓ | | K? |
| " | 4:32pm | X | | | JM |
| " | 5:45pm | | X | | JM |
| " | ~~6:23~~ 7:57pm | | | | JM |
| " | 8:25pm | | X | | JM |
| " | 22:00 | X | | | K? |
| 10/30/18 | 12:32am | X | | | JM |
| " | 10:08a | | X | | K.P. |
| " | 10:15a | | X | | JM |
| " | 11:20 | X | | | K? |
| " | 10:37 | | X | | K? |
| " | 3:21pm | X | | | JM |
| " | 3:30pm | | X | | JM |
| " | 17:50 | X | | | K? |
| " | 18:12 | | X | | K? |
| " | 10:16pm | X | | | JM |
| 10-31-18 | 01:16 | X | | | K.P. |
| " | 11:28a | | X | | JM |
| H.90 " | 11:40A | | X | | K? |
| " | 16:48 | X | | | K? |

(110)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|-----|-------|-----|
| 10-31-18 | 12:05 | | X | | k.? |
| " | 19:25 | X | | | AB |
| " | 8:30pm | X | | | JW |
| " | 9:30pm | | X | | JW |
| " | 9:57pm | X | | | JW |
| 11/1/18 | 8:28 | | X | | JW |
| " | 9:25am | X | | | JW |
| " | 10:02 | | X | | k.? |
| " | 11:20am | | X | | JW |
| " | 18:58 | X | | | k.?. |
| " | 9:03am | X | | | JW |
| " | 20:07 | | X | | k.? |
| 11-2-18 | 01:02 | X | | | k.? |
| " | 10:02 | | X | | k... |
| " | 11:30am | | X | | JW |
| " | 17:50 | X | | | k.?. |
| " | 12:49 | X | | | V.M |
| " | 15:53 | | X | | k.?. |
| " | 9:31pm | | X | | JW |
| 11-3-18 | 1:05 | X | | | k.? |
| " | 8:01am | X | | | Jas |
| " | 16:17am | | X | | JW |
| " | 11:53am | | | | |

① AM 0:0:21
DISITES IN
#C DOOR TO
# 1 OPENS
USE
DIDN'T SAY
HELLO @ 7:20

Pieper 000189

(111)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 11-3-18 | 15-17 | | X | | K.P. |
| " | 7:40pm | X | | | JM |
| " | 8:42am | | X | | JM |
| " | 21:21 | X | | | K.P. |
| 11/4/18 | 4:12am | X | | | JM |
| " | 9:05am | | X | | JM |
| " | 9:79 | | X | | K.? |
| " | 11:40 | X | | | K.? |
| " | 13:27 | | X | | K.? |
| " | 7:51pm | X | | | JM |
| " | 9:25pm | | X | | JM |
| " | 11:55pm | X | | | JM |
| 11-5-18 | 0:07 | X | | | K.? |
| " | 10:47pm | | X | | JM |
| " | 5:57pm | X | | | JM |
| " | 6:10pm | | X | | JM |
| " | 19:12 | X | | | K.? |
| " | 10:33am | X | | | JM |
| 11-6-18 | 10:20am | | X | | K.? |
| " | 2:55pm | X | | | JM |
| " | 18:45 | X | | | K.? |
| " | 6:57pm | X | | | JM |
| " | 20:55 | | X | | K.? |

| DATE | TIME | IN | OUT | GUEST | us |
|---|---|---|---|---|---|
| 11-6-18 | 23:34 | X | | | K? |
| 7.Bam | → | | X | ← | Jm |
| c u | 8:57am | X | | | Jm |
| n | 10:53 | | X | | K? |
| )) | 11:30am | | X | | Jm |
| 11 | 18:30 | X | | | K? |
| 11 | 20:03 | X | M | BEN | |
| 11 | 21:48pm | X | | | Jm |
| 9 | 21:52 | | x | BEN | |
| 11 | 22:16 | ← | | | |
| 11-8-18 | 10:10 | | X | | K? |
| 11 | 11:13am | — | X | | Jm |
| 11 | 18:27 | X | | | K? |
| 11 | 9:05pm | X | | | Jm |
| 11 | 22:15 | | X | | K? |
| 11-9-18 | 0:50 | X | | | K? |
| 11 | 10:05 | | X | | K.P. |
| 11 | 11:20am | | X | | Jm |
| n | 19:53 | X | | | K? |
| n | 19:43 | | X | | K? |
| | 8:02pm | X | | | Jm |
| | 9:10 pm | X | | | Jm |
| 11 | 23:02 | α | | | K? |

VISITOR
NOISE (112)
5 An 11-7-18
DOOR SCAN
VISITOR CHECK
LOUD EVENT
IN #11/6 AM
WINDOW SCAN

LOUD DOOR
SCAN FRONT
DOOR

(163)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 11/9/18 | 11:22 pm | X | | | JM |
| " | 11:42 pm | | X | | JM |
| 11/10/18 | 1:44 am | X | | | JM |
| " | 10:30 am | X | | | JM |
| " | 13:55 | X | | JONAS JACKIE | |
| " | 14:12 | | X | JONAS | |
| " | 14:43 | | X | | KB |
| " | 17:07 | X | | | K? |
| " | 18:45 | X | | CORT | |
| " | 21:56 | | X | CORT | |
| " | 22:22 | | X | | K? |
| " | 11:20 AM | X | | | JM |
| 11-11-18 | 0:15 | X | | | K? |
| " | 10:25 | | X | | K? |
| " | 10:10 am | | X | | JM |
| " | 16:22 | X | | | K? |
| " | 16 | | | | |
| 11/12/18 | 1:13 am | X | | | JM |
| " | 1:50 am | | X | | JM |
| " | 7:05 am | X | | | JM |
| " | 10:45 am | | X | | JM |
| " | 10:12 | | X | | K.? |
| " | 1:00 pm | X | | | JM |

Pieper 000192

(114)

| Date | Time | In | Out | Guests | US |
|---|---|---|---|---|---|
| 11/12/18 | 2:30 pm | | X | | JM   K.? |
| | 16:33 | X | | | K.? |
| | 16:40 | | X | | K.? |
| | 16:55 | X | | | K.? TROAT TIRE |
| 11-13-18 | 16:20 | | X | BIKE FLAT | K? OF BIKE IN GARAGE FLAT |
| " | 12:30 pm | X | | | JM |
| " | 3:45 pm | | X | | JM |
| " | 5:20 pm | X | | | JM |
| " | 18:55 | X | | | K.C. |
| " | 19:00 | | X | | K.P |
| " | 20:18 | X | | | K.? |
| " | 22:30 | | X | | K.? |
| 11-14-18 | 1:05 | X | | | K.? |
| " | 8:47 | ← | | ⎱NEAL MARTINSON LEAVE | |
| " | 8:51 | ← | | 3 BLDG AND 2 | |
| " | 8:00 | ← | | OTHER MAN INDIVIDUAL? | |
| " | 9:45 | | X | OVER NIGHT | JM INCREASED FROM |
| " | 11:17 | | X | | ICU DOOR ACTIVITY FOR 2 OR 3 DAYS! |
| " | 18:59 | X | | | K.?. |
| " | 9:06 pm | X | | | JM |
| 11/15/18 | 10:13 am | | X | | JM |
| " | 11:02 | X | X | | K.P. JM |
| " | 11:55 pm | | X | | |

(115)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 11-15-18 | 18:51 | | | | K.P. |
| " | 8:55pm | X | | | JM |
| " | 22:15 | | X | | K.P. |
| 11-16-18 | 12:52^M | X | | | K.P. |
| " | 10:37^ | | X | | K.P. |
| " | 11:30am | | Y | | JM |
| " | 12:10 | X | | | K.P. |
| " | 11:10pm | X | | | JM |
| 11-17-18 | 10:02 | | X | | K.P. |
| " | 10:10am | | X | | JM |
| " | 7:43pm | X | | X Wendy | JM |
| " | 22:07 | X | | | K.P. |
| " | 18:30 | | X | WENDY | |
| " | 20:30 | | X | JOSE → J.N. | |
| 11/18/18 | 9:35am | | X | | JM |
| " | 14:00 | | X | | K.P. |
| " | 18:36 | X | | | K.P. |
| " | 19:12 | X | | HECTOR | |
| " | 20:56 | | X | HECTOR | |
| " | 2:05pm | X | | | JM |
| " | 22:25 | | X | | K.P. |
| " | 10:58pm | | X | | JM |
| 11-19-18 | 0:53 | | X | | K.P. |

Pieper 000194

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 11-19-18 | 2:04 am | X | | | JM |
| " | 10:12 | | X | | K.P. |
| " | 12:00 pm | | X | | JM |
| " | 12:33 pm | X | | | JM |
| " | 1:07 pm | | X | | JM |
| " | 10:33 | X | | | K.P. |
| " | 10:35 | | X | | K.P. |
| " | 4:33 am | X | | | JM |
| " | 5:48 pm | | X | | JM |
| " | 6:27 pm | X | | ✶ Julian | |
| " | 6:43 pm | | X | ✶ Julian | |
| " | 10:42 | X | | | K.P. |
| " | 10:23 | | X | | K.P. |
| 11/20/18 | 10:35 am | | X | | JM |
| " | 3:54 pm | X | | | JM |
| " | 5:39 pm | | X | | JM |
| " | 18:50 | X | | | K.P. |
| " | 8:16 pm | X | | | JM |
| " | 22:00 | | X | | K.P. |
| 11-21-18 | 12:45 am | X | | | K.P. |
| " | 11:05 am | | X | | JM |
| " | 12:00 | | x | | K." |



Pieper 000195



| DATE | TIME | IN | OUT | GUEST | WS |
|------|------|----|-----|-------|-----|
| 11-21-18 | 12:02 | X | | | t.? |
| " | 12:17 | | X | | t.? |
| " | 9:20 pm | X | | | J m |
| " | 2:00 | X | | | t? |
| " | 2:35 | | X | | k? |
| 11-22-18 | 1:12 | X | | | t? |
| " | 9:02 am | | X | | J m |
| " | 11:57 | | X | | t? |
| " | 12:13 | X | | | t? |
| " | 10:30 | | X | | k? |
| " | 4:00 pm | X | | | J m |
| " | 10:00 pm | | X | | J m |
| 11/23/18 | 1:50 am | X | | | J m |
| " | 10:20 am | | X | | J m |
| " | 13:30 | X | | | k? |
| " | 3:40 pm | X | | | J m |
| " | 5:31 pm | | X | | J m |
| " | 7:28 pm | X | | | J m |
| " | 20:15 | | X | | t? |
| " | 23:37 | X | | | t? |
| 11-24-18 | 4:01 | X | | GARRY | |
| " | 1:30 pm | | X | | J m |
| " | 13:55 | | X | GARRY | |

117

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 11-24-18 | 12:55 | | X | | K.? |
| " | 15:00 | " | | | K.J. |
| " | 7:30 | X | | | JM |
| 11/26/18 | 8:30 | | X | | JM |
| " | 10:07 | | X | | K.P. |
| " | 2:50 | X | | | JM |
| 11/26/18 | 3:10pm | X | | *steve | |
| " | 3:27pm | | X | *steve | |
| " | 5:10pm | | X | | JM |
| " | 5:32pm | X | | | JM } laundry |
| " | 6:09pm | | X | | JM |
| " | 6:13pm | X | | | JM |
| " | 19:05 | X | | | K.? |
| " | 8:50pm | | X | | JM |
| 11/27/18 | 8:32am | X | X | | JM |
| " | 8:42am | | X | | JM |
| " | 10:17 | | X | | K.? |
| " | 2:15pm | X | | | JM |
| " | 17:45 | X | | | K.P. |
| " | 8:10 | X | | RUSSELL ᴮʳᵘ | |
| " | 21:05 | | X | RUSSELL ᴮʳᵘ | |
| " | 22:00 | | X | | K.B |
| 11-28-18 | 12:22 | X | | | K.T |

(118)

(19)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|----|
| 11-28-18 | 11:30 | | X | | K? |
| " | 11:37am | | X | | JM |
| " | 12:28 | X | | | K? |
| " | 12:50 | | X | | K? |
| " | 20:07 | X | | | K? |
| " | 9:05pm | X | | | JM |
| 11-29-18 | 10:50 | | X | | K? |
| " | 11:15am | | X | | JM |
| " | 17:30 | X | | | K? |
| " | 17:38 | | X | | K? |
| " | 20:28 | X | | | K? |
| " | 22:10 | | X | | K? |
| " | 11:40 | | X | | JM |
| 11-30-18 | 0:42 | X | | | K? |
| " | 8:05am | | X | | JM |
| " | 10:15 | | X | | K? |
| " | 17:25 | X | | | K? |
| " | 18:47 | X | | RUSSEL OT | |
| " | 21:50 | | X | RUSSEL OT | |
| " | 10:55pm | X | | | JM |
| 12-1-18 | 10:25am | | X | PAOCO | JM |
| " | 18:25 | X | | ECIANO FRILL | JM |
| " | 17:47 | | | X PAOCO, ECIANO, FABIANO | |

Pieper 000198

(120)

| DATE | TIME | IN | OUT | GUEST | WS |
|------|------|----|-----|-------|----|
| 12-1-18 | 8:17pm | X | | | JW |
| " | 20:55 | | X | | K? |
| " | 23:90 | X | | | K B |
| 12-2-18 | 10:15am | | X | | JW |
| " | 13:54 | X | | GEORGE | |
| " | 14:33 | | X | GEORGE | K? |
| " | 7:12 | X | | GEORGE | + K? |
| " | 7:43pm | X | | | JW |
| " | 8:10pm | | X | | JW |
| " | 20:14 | | X | GEORGE | |
| " | 10:11pm | X | | | JW |
| 12-3-18 | 10,33 | | X | | K? |
| " | 10:58am | X | | ✳ | |
| " | 11:33am | | X | ✳ | |
| " | 13:25 | X | | | K? |
| " | 13:40 | | X | | K? |
| " | 2:25pm | | X | | JW |
| " | 2:33pm | X | | | JW |
| " | 3:24pm | | | | JW |
| " | 3:29pm | | | | JW |
| " | 3:40pm | | | | JW |
| " | 3:56pm | | X | | |
| " | 4:00pm | X | | | |
| 11-20-10 | 14:00 | | | | |

} laundry

→ Moved some ___ from the recycle ___ to trash bc the ___ not properly ___



| DATE | TIME | IN | OUT | GUEST | IAS |
|------|------|-----|-----|-------|-----|
| 12-3-18 | 7:13pm | | X | | JM |
| " | 18:34 | X | | | J.T |
| " | 19:36 | X | | | KD |
| 12-4-18 | 10:22 | | X | | K.? |
| " | 10:30 | | X | | JM |
| " | 8:15pn | X | | | JM |
| " | 5:45pn | | X | | JM |
| " | 8:40a | X | | | JM |
| " | 21:05 | X | | | KD |
| " | 9:45pm | | X | | JM KD |
| 12/5/18 | 12:40 a | X | | | JM |
| " | 1:40 | X | | | K.? |
| " | 0:30 | | X | | KD |
| " | 11:24am | | X | | JM |
| " | 11:27 | X | | | K? |
| " | 1:15? | | X | | K.? |
| " | 19:30 | X | | | K? |
| " | 10:05m | X | | | JM |
| " | 10:07m | | X | | JM |
| " | 10:27a | X | | | JM |
| " | 11:10pn | | X | | JM |
| 12/6/18 | 1:10am | X | | | JM |
| " | 4:20 a | | X | | KD |



| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 12-3-18 | 7:13 A | | X | | JM |
| " | 18:38 | X | | | J.N |
| " | 19:30 | X | | | KP |
| 12-4-18 | 10:22 | | X | | KP. |
| " | 10:30 | | X | | JM |
| " | 5:15A | X | | | JM |
| " | 5:45A | | X | | JM |
| " | 5:40A | X | | | JM |
| " | 21:05 | X | | | KP |
| " | 9:45A | | X | | JM |
| 12/5/18 | 12:40 A | X | | | JM |
| " | 1:40 | X | | | KP. |
| " | 10:30 | | X | | KP. |
| " | 11:24 A | | X | | JM |
| " | 11:37 | X | | | KP |
| " | 4:52 | | X | | KP. |
| " | 9:35 | X | | | KP |
| " | 10:05A | X | | | JM |
| " | 10:07A | | X | | JM |
| " | 10:27A | X | | | JM |
| " | 11:10A | | X | | JM |
| 12/6/18 | 1:10 A | X | | | JM |
| " | 1:35 A | | X | | KP. |

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 12-6-18 | 9:55 | | X | | JM |
| " | 11:30 | | X | | KP |
| " | 19:52 | X | | | KP |
| " | 21:50 | | X | | KP |
| 12-7-18 | 03:55 | X | | | KP |
| " | 1:00am | X | | | JM |
| " | 11:55am | | X | | KP |
| " | 16:06 | X | | | KP |
| " | 18:08 | | X | | KP |
| " | 0:20am | X | | | JM |
| 12-8-18 | 12:37 | | X | | KP |
| | 9:23am | | X | | JM |
| 12-8-18 | 9:05 | | | | |
| " | 15:05 | X | | ALFRED | |
| " | 17:27 | | X | ALFRED | KP |
| " | 19:20 | | X | | KP |
| " | 11:31am | X | | | JM |
| 12/9/18 | 12:31am | | X | | JM |
| " | 1:40am | X | | | JM/KP |
| " | 9:25am | | X | | JM |
| " | 12:47 | | X | | KP |
| " | 19:10 | X | | | KP |

BROUGHT DOWN
RECYCLING
ED HEARD
ME USE RESTROOM
CAME FURTHER &
LOOKED AS HE
STATED · WENT
TO #1
HE DID THE
SAME AT
12:08 CORRECT

Pieper 000202

(123)

| DATE | TIME | IN | OUT | GUESTS | US |
|------|------|----|----|--------|----|
| 12-9-18 | 20:07 | | X | | L.? |
| " | 9:35₥ | X | | | JM |
| " | 23:30 | ✓ | | | K.P. |
| 12-10-8 | 10:17 | | ✓ | | k.? |
| " | 1:44₥ | | X | | JM |
| " | 2:14₥ | X | | | JM. |
| " | 17:15 | X | | | K.P. |
| " | 18:25 | | X | | K.? |
| " | 19:42 | X | | | K.P. |
| " | 20:02 | | XX | | K.P. + JM |
| " | 22:04 | XX | | | JM + KP |
| 12-11-18 | 10:22 | | X | | K.? |
| " | 16:35₥ | | X | | JM |
| " | 19:08 | X | | | K.? |
| " | 22:10 | | X | ← | K.? |
| 12-12-18 | 0:52 | X | | | L.? |
| " | 11:40 | | X | | L.? |
| " | 17:03 | X | | ← | L.? |
| " | 5:43 | X | | | JM |
| " | 17:47 | | XX | | K.? + JM |
| " | 22:25 | XX | | | JM + K.? |
| 12/13/18 | 12:15₥ | | X | | JM |
| " | 1:15₥ | X | | | JM |

(AS I'M LEAVING
PASSING #2
ON BACKSTAIRS
DOOR OPENS
GO CHECKS
ON ME WALKIN
TO MY CAR
JUSTIN AND
DAV OUTSIDE
TALKING

| DATE | TIME | IN | OUT | GUEST | US | |
|---|---|---|---|---|---|---|
| 12-13-18 | 9:10am | | X | | JM | ENTRANCE |
| " | 10:27 | | X | | K?P | WOODEN |
| " | 18:30 | X | | | F? | DOOR |
| " | 19:47 | | X | | K.?. | DOOR STOPPAGE |
| " | 8:50 pm | X | | | JM | OF FAULTY |
| " | 9:13 pm | | X | | JM | CARD SCAN |
| 12/14/18 | 12:33am | X | | | JM | JUSTIN |
| " | 0:42 | X | | | K? | HUTTO |
| " | 9:33am | X | | *Axi | | VIDEO TAPE |
| " | 10:15am | | X | *Axi | | ME WHILE |
| " | 10:22 | | X | | K.?. | I PULL OUT |
| " | 10:44am | | X | | JM | OF GARAGE |
| " | 17:44 | X | | | K.? | JUSTIN HUTTO |
| " | 18:55 | | X | | K?. | BLOCKING MY |
| " | 8:19 pm | X | | | JM | DRIVEWAY |
| " | 9:05 pm | | X | | JM | |
| " | 12:00 | X | | | JM | DAN ASKED |
| 12-15-18 | 12:09 | X | | | K.?. | ABOUT JUSTIN |
| " | 9:38am | | X | | JM? | VIDEOTAPING |
| " | 12:56 | | X | | K.? | ME 12-13-18 |
| 12-16-18 | 01:10 | X | | | K.? | |
| " | 01:20 | X | | | J.M. | |
| " | 9:22 | | X | | JM | |

Pieper 000204



| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 12-16-18 | 15:00 | X | | ANDY | |
| " | 15:59 | | X | ANDY | |
| " | 16:15 | | X | | K.P. |
| " | 17:30 | X | | | K.P. |
| " | 18:45 | X | | ROBERT | |
| " | 20:53 | | X | ROBERT | |
| " | 10:00pm | X | | | JM |
| " | 23:00 | | X | | KP |
| " | 11:11p | | X | | JM |
| " | 23:23 | X | | | K.P. |
| " | 11:38pm | X | | | JM |
| 2/17/18 | 9:50am | | | | JM |
| " | 10:23 | | X | | K.P. |
| " | 11:30am | X | | ✳Martin | JM |
| " | 11:43a | | X | ✳Martin | JM |
| " | 2:55pm | X | | | JM |
| " | 3:50pm | X | | ✳Jackson | |
| " | 4:56pm | | X | ✳Jackson | |
| " | 8:46pm | | X | | JM |
| " | 18:50 | X | | | K.P. |
| " | 19:40 | | X | | K.P. |
| " | 9:34p | X | | | JM |
| " | 23:12 | X | | | K.P. |

(126)

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|-----|-------|-----|
| 12-18-18 | 10:37 | | x | | K.P. |
| `` | 1:05pm | | X | | Jm |
| `` | 2:10Am | X | | | Jm |
| `` | 14:55 | X | | | K.P. |
| `` | 5:45 | | X | | Jm |
| `` | 18:18 | X | | | KP |
| `` | 21:15 | X | | | KP. |
| `` | 23:44 | X | | | KP. |
| 12/19/18 | 9:50am | X | | | Jm |
| `` | 11:25am | | X | | Jm |
| `` | 12:22 | | X | | KP. |
| `` | 18:00 | X | | | K.P. |
| `` | 20:18 | | X | | KP. |
| `` | 9:10pm | X | | | Jm |
| 12-20-18 | 0:27 | X | | | KP. |
| `` | 10:17 | | X | | KP. |
| `` | 4:35am | | X | | Jm |
| `` | 12:55 | X | | | KP. |
| `` | 13:01 | X | | JA7 x702D. | |
| `` | 13:20 | | X | 1A7 x702D | |
| `` | 13:47 | | X | | K.P. |
| `` | 18:33 | X | | | KP. |

Pieper 000206

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|-----|------|-------|-----|
| 12-20-18 | 9:00pm | X | | J | Jm |
| " | 22:17 | | X | | KP |
| " | 10:35pm | | X | | Jm |
| 12-21-18 | 0:57 | | | | KP |
| " | 11:00am | X | | | Jm |
| " | 11:10 | | X | | KP |
| " | 11:41am | | X | | Jm |
| " | 18:17 | X | | | KP |
| " | 10:15pm | X | | | Jm |
| 12-22-18 | 10:42pm | | X | | Jm |
| " | 9:43 | | X | | KP |
| " | 11:13 | X | | | KP |
| " | 12:30 | X | | YUANS | |
| " | 15:33 | | | YUANS | |
| " | 16:01 | | X | | KP |
| " | 7:50pm | X | | | Jm |
| " | 23:12 | X | | | KP |
| " | 23:14 | | X | | KP |
| 12-23-18 | 0:29 | X | | | K.P. |
| " | 1:20pm | | X | | Jm |
| " | 2:22pm | X | | | Jm |
| " | 10:25am | | X | | Jm |
| " | 10:42 | | X | | KP |

Pieper 000207

128

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|----|
| 12-23-18 | 15:59 | X | | | K.P. |
| " | 16:20 | | X | | K.P. |
| " | 16:53 | XA | | PAOLO | K.P. |
| " | 16:54 | | X | PAOLO | |
| " | 8:15pm | X | | | JM |
| " | 8:54pm | X | | **Kevin, Hunter | |
| " | 9:50pm | | X | **Kevin, Hunter | K.P. |
| " | 22:05 | | X | | K.P. |
| 12-24-19 | 1:02 | X | | | K.P. |
| " | 9:15 | | X | | K.P. |
| " | 11:02 | X | | | K.P. |
| " | 12:30 | | X | | JM |
| " | 15:17 | X | | YUANS | |
| " | 17:55 | | X | YUANS | |
| 12-25-18 | 11:41 | | X | | K.P. |
| " | 16:52 | X | | | K.P. |
| 12-26-18 | 10:50 | | X | | K.P. |
| " | 11:35 | X | | | K.B. |
| " | 14:35 | | X | | K.B. |
| " | 16:53 | X | | | K.P. |
| 12-27-18 | 11:42 | | X | | K.P. |
| " | 2:53pm | X | | | JM |
| " | 3:25pm | | X | | JM |

Pieper 000208

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 12-27-18 | 18:04 | X | | | K.P. |
| " | 21:43 | | X | | K.P. |
| 12-28-18 | 6:37 | X | | | K.P. |
| " | 10:17 | | X | | K.P. |
| " | 17:51 | | | | |
| " | 18:22 | | X | | K.P. |
| " | 22:45 | X | | | K.P. |
| " | 10:50am | X | | | JM |
| 12-28-18 | 11:00am | | X | | JM |
| " | 13:30 | X | | | |
| " | 1:44pm | X | | | JM |
| " | 14:07 | | X X | | K.P. JM |
| " | 11:10pm | X | | | JM |
| " | 11:30pm | | X | | JM |
| 12-30-18 | 01:10 | X | | | K.P. |
| " | 1:16am | X | | | JM |
| " | 10:50 | | X | | K.P. |
| " | 11:00am | | X | | JM |
| " | 11:07 | X | | | K.P. |
| " | 12:50 | | X | | K.P. |
| " | 7:46pm | X | | * Jared | JM |
| " | 20:55 | X | | | K.P. |
| " | 10:15pm | | X | * Jared | JM |

(159)

SPOKE c̄
DAN A. ABOUT
GARBAGE V RECYC.
HE SAID "SOMEONE
IN NY SAID
'RECYCL. IS NOT
REAL'".

| DATE | TIME | IN | OUT | GUEST | US |
|------|------|----|----|-------|-----|
| 12-30-18 | 22:33 | | X | | KP. |
| 12-31-18 | 01:52 | X | | | KP. |
| 12/31/18 | 12:47 | X | | | JM |
| " | 1:10 pm | | X | | JM |
| " | 11:39 | X | | DAN E. | JM |
| " | 14:00 | | X | | |
| " | 2:59pm | X | | | JM |
| " | 18:55 | | X | | JM |
| " | 15:50 | | X | | KP. |
| 1/1/19 | 1:52am | X | | | JM + KP |
| " | 2:25am | | X | | JM |
| " | 3:17am | X | | | JM |
| " | 10:50am | | X | | JM |
| " | 12:13 | | X | | KP. |
| " | 8:17 PM | X | | | JM |
| " | 9:12pm | | X | | JM |
| " | 10:00pm | X | | | JM |
| " | 10:47 | X | / | | KP. |
| 1-2-19 | 11:07 | | X | | K.P. |
| " | 11:37am | | X | | JM |
| " | 17:07 | X | | | K.P. |
| " | 18:24 | X | | RUSSEL | |
| " | 20:40 | | X | RUSSEL | |
| " | 3:25pm | | X | | " |

| Date | Time | In | Out | Guests | US |
|---|---|---|---|---|---|
| 3/2/19 | 8:30pm | X | | | Jm |
| " | 21:35 | | X  X | | K? J^ |
| " | 23:17 | X X | | | J.^. K? |
| 1-3-19 | 10:14 | | X | | K? |
| " | 11:33am | | X | | Jm |
| " | 14:25 | X | | | K? |
| " | 14:42 | | X | | K? |
| " | 18:35 | X | | | K? |
| " | 9:02pm | X | | | Jm |

**EXHIBIT 10**

# FEBRUARY 23, 2018
# THREE-DAY NOTICE TO QUIT
### (MAINTAINING A NUISANCE/ ILLEGAL ACTIVITY)

**TO:** Mr. Karl-Heinz Pieper

    **PLEASE TAKE NOTICE** that <u>at the expiration of **THREE (3) days**</u> after service of this notice upon you, you are hereby requested to quit, and return possession of the premises now held and occupied by you at <u>640 Octavia St., #3, San Francisco, CA 94102</u>.

The reason for terminating your tenancy is as follows:

You have received several prior warnings and written notices about nuisance, as well as a Three-Day Notice to Quit or Cure. You are committing or permitting to exist a continuous nuisance in the rental unit and to the common areas of the building containing the rental unit, and are creating unreasonable interference with the comfort, safety and enjoyment of any other residents of the building.

September 28-30, 2017:

        On an ongoing and constant basis at all hours, including between the hours of 11pm and 3am, there was a parade of random people traveling in and out of the lessee's unit and fumbling around the building, disturbing the quiet and enjoyment of the other tenants. Some of the subjects inexplicably have keys (which were apparently given to them by you), some forcibly access the building, and some stand outside ringing every doorbell to the building. All these individuals were apparently going to your unit. This is a violation of your rental agreement/ lease and jeopardizes the safety of all residents.

October 1-31, 2017

        Nearly every day at all hours, including between the hours of 11pm and 3am, there was a parade of random people traipsing in and out of the lessee's unit and fumbling around the building, disturbing the quiet and enjoyment of the other tenants.

        There were multiple occasions of strangers using keys to access the common areas of the building in order to go to your unit. This is a violation of your rental agreement/lease and jeopardizes the safety of all the tenants in the building.

November 17-19, 2017

        Despite being on notice of the aforementioned violations, the inexplicable stream of strangers accessing the building continued, with strangers gathering outside, going inside (sometimes with keys), and going into your unit for 15 minutes or so before leaving. Some of the strangers even forcibly accessed the building, and some stand outside ringing every doorbell to the building.

file

**December 10-17, 2017**

Random strangers gathered outside late at night in a threatening manner and loudly rang all of the buzzers in the building attempting to get into your unit and also trying to pick the locks to the front door to gain access.

**December 24-28, 2017**

Random strangers were coming into the building during all hours of the day and night, this time by accessing the back stairs to avoid being seen in the front of the building. This commotion was disturbing the tenant next door as well as a short-term tenant inside the building, who was frightened and had to lock himself inside his unit. He had difficulty sleeping due to the nightly disturbance and also felt unsafe due to the traffic of strangers going in and out of the building for apparently illicit purposes.

**January 5-28, 2018**

Approximately 35 strangers went in and out of the building, fumbling around the common areas before entering your unit. They stayed for a brief time, between 15 and 45 minutes, before leaving.

**February 1-22, 2018**

The front door locks to the building needed to be changed because someone had kicked it in from the inside. Strangers are now accessing the building by using the code to the garage door to get in and take the back stairs up to your unit. You still refuse to give the landlord the keypad code to the garage which you changed without notice or permission, also in violation of your lease. Due to this obstruction, the garbage man is unable to access the building to get the trash.

You have received a prior written Three-Day Notice to Quit or Cure about discontinuing this nuisance on December 15, 2017, as well as a previous Three-Day Notice to Quit on January 29, 2018. Since you failed to heed this notice, **pursuant to the San Francisco Rent Ordinance, Sections 37.9(a)(3) and 37.9(c), if you fail to vacate within THREE (3) days after service of this notice upon you, the undersigned will commence legal proceedings against you to 1) declare a forfeiture of your rental agreement/ lease, 2) to recover possession of the premises, and 3) to recover damages for each day you occupy the premises after the periods covered by this notice and costs of suit.**

Please refer to the attached San Francisco Rent Board Notice if you need further advice.

Dated: February 23, 2018

Gregory S. Walston
Attorney for 640 Octavia, LLC

The Walston Law Group
Four Charlton Court
San Francisco, CA 94123
T: 415-956-9200
Email: gwalston@walstonlaw.com



## San Francisco Residential Rent Stabilization and Arbitration Board

# Notice to Tenant Required by Rent Ordinance §37.9(c)

*Effective March 19, 2016, a copy of this Notice to Tenant must be attached to every notice to terminate tenancy.*

### 租客通知 (Chinese)

您的房東已向您發出終止租約通知。如租客未能及時採取行動回應該通知，可能導致房東提出訴訟驅逐租客。如果您需要獲得有關終止租約通知的建議，請洽詢三藩市稅務委員會。地址：25 Van Ness Avenue, Suite 320, San Francisco, CA 94102。辦公時間：週一至週五，上午 8:00 - 下午 5:00（節假日除外）。您也可以致電諮詢員，電話：(415) 252-4602 上午 9:00 - 下午 12:00 及下午 1:00 - 4:00。相關資訊可參閱網站：www.sfrb.org。

您可能有資格申請可負擔房屋計劃和公寓。請上網 www.sfmohcd.org 瀏覽市長的住房與社區發展辦公室 (MOHCD) 網站，以獲知有關現有住屋、等候名單和計劃參加資格加賓格申請。如果您因為建物所有人或親戚要遷入您的住宅單位或由於艾利斯法而被驅逐，您可能有資格獲得可負擔房屋的抽籤優先權。如需更多有關本地住房資源的資訊，請上網 http://sfmohcd.org/san-francisco-housing-resource-guide 瀏覽三藩市住房資源指南。

### УВЕДОМЛЕНИЕ АРЕНДАТОРУ ЖИЛЬЯ (Russian)

Арендодатель вручил вам уведомление о расторжении договора аренды жилого помещения. В случае несвоевременных действий арендатора в ответ на данное уведомление арендодатель может подать в суд иск о выселении арендатора. Если вам необходима консультация по поводу уведомления о расторжении договора, вы можете обратиться в Комитет аренды жилья города Сан-Франциско, расположенный по адресу: 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Часы работы Комитета — с понедельника по пятницу с 8:00 до 17:00 (за исключением праздничных дней). С консультантами можно также связаться по телефону (415) 252-4602 с 9:00 до 12:00 и с 13:00 до 16:00. Кроме того, информация размещена на веб-сайте www.sfrb.org.

Вы, возможно имеете право на участие в программах по предоставлению доступного жилья и квартир. Посетите веб-сайт мэра города, раздел жилищного строительства и развития общин («МОНСD»), www.sfmohcd.org, где вы сможете получить дополнительную информацию о предоставляемом жилье, списках ожидания и ваших правах на участие в подобного рода программах. Если вас выселяют, потому что владелец или родственники владельца здания должны въехать в вашу квартиру, соответственно закону «Ellis Act», то у вас, возможно, есть право претендовать на определенные преимущества при участии в лотерее по предоставлению доступного жилья. За более подробной информацией о помощи по предоставлению жилья  просьба обращаться к руководству г. Сан-Франциско по предоставлению подобной помощи на веб-сайте http://sfmohcd.org/san-francisco-housing-resource-guide.

### ABISO  SA NANGUNGUPAHAN (Filipino)

Nabigyan na kayo ng nagpapaupa ng abiso tungkol sa pagwawakas sa inyong pangungupahan. Ang hindi pagkilos sa tamang oras ng nangungupahan sa pagtugon sa abiso ng pagwawakas sa pangungupahan ay posibleng mauwi sa paghahabla ng nagpapaupa para ma-evict o mapaalis sa tahanan ang nangungupahan. May makakuhang payo tungkol sa abiso ng pagwawakas sa pangungupahan mula sa San Francisco Rent Board (Lupon para sa Pangungupahan sa San Francisco) na nasa 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Bukas ang opisina tuwing Lunes hanggang Biyernes, 8:00 am - 5:00 pm, maliban sa mga pista opisyal. May mga tagapayo rin na makakausap sa telepono sa (415) 252-4602 sa pagitan ng 9:00 am - 12:00 pm at ng 1:00 pm - 4:00 pm. Makakakuha rin ng impormasyon sa www.sfrb.org.

Posibleng kuwalipikado kayo para sa mga abot-kayang pabahay at apartment. Pumunta sa Opisina para sa Pabahay at Pagpapaunlad sa Komunidad (Office of Housing and Community Development, MOHCD) ng Alkalde sa www.sfmohcd.org  para sa karagdagang impormasyon tungkol sa makukuhang bahay, waiting lists (listahan para sa naghihintay makapasok) at mga kinakailangan para maging kuwalipikado. Kung pinapaalis kayo sa inyong tahanan dahil titira na sa inyong unit ang may-ari ng building o ang kanyang kamag-anak, o dahil sa Ellis Act, posibleng kuwalipikado rin kayo para sa abot-kayang pabahay sa pamamagitan ng lottery preference (pagbibigay-preperensiya batay sa ala-suwerteng bunutan). Para sa karagdagang impormasyon tungkol sa mapagkukunan ng tulong para sa lokal na pabahay, matitingnan ang *San Francisco Housing Resource Guide*  (Gabay para sa Mapagkukunan ng Impormasyon at Tulong ukol sa Pabahay sa San Francisco) sa http://sfmohcd.org/san-francisco-housing-resource-guide.

# EXHIBIT 11

 Gmail

**Neil Martinson <herrneilson@gmail.com>**

## Authority to Secure premesis 640 Octavia building from Jan 1 2018-March 31,2018

**Ed Essene** <essenestudented@gmail.com>          Thu, Mar 1, 2018 at 3:00 PM
To: Neil Martinson <herrneilson@gmail.com>

This is from 640 LLC,and Odlaw,Inc.owners of 640 LLC,and owner of 640 Octavia building:Neil Martinson, appointed agent for 640 LLC, has been hired to secure the premesis at 640 Octavia building for the owners and managers of the building since Dec 22,2016, and to make sure garbage is collected by Recology for the benefit of resident of premesis Kalle Pieper;to secure and mantain the security door(s) to building and assure owners and sole resident Kalle Pieper that both fron doors are fixed after being vandalized by unknown persons in Feb 2018;to secure witness that the garage door code,previously only know to Edward Kountze, Kalle pieper,Jean boldan, was changed by an unknown suspect in January or Febuary 2018,and to secure the entering and exiting through garage door to 640 Octavia by only Kalle Pieper and Edward Kountze and Jean Boldan;to secure the common hallway as safe for all resident(s) and to provide security to the four separate apartments from tampering vandalism, and to secure the common circuit breakers in the garage at 640 Octavia from tampering and vandalism.

# EXHIBIT 12

## NOTICE TO QUIT

### (BASED ON LANDLORD'S FORTHCOMING
### NOTICE OF INTENT TO WITHDRAW UNITS UNDER ELLIS ACT)

DATE: JANUARY 16, 2019

TO:   **Mr. Karl Heinz-Pieper, also known as "Kalle Pieper" and "Karl-Heinz Pieper"**
("Tenant"), AND ALL OTHER OCCUPANT(S)-IN-POSSESSION, including but
not limited to the unauthorized occupant (if he claims or is in possession) Jose Montoya,
also known as "Jose Garcia Montoya" and "Jose Montoya Garcia":

TENANT IS IN POSSESSION OF THE REAL PROPERTY LOCATED AT:

640 Octavia Street, #3, San Francisco, CA 94102.

**NOTICE IS HEREBY GIVEN** that 640 Octavia, LLC, a Wyoming limited liability company, the
"Landlord" under that certain Residential Lease Agreement dated on or about September 9, 1993 (the
"Lease"), by which you as Tenant hold possession of the premises commonly known as 640 Octavia
Street, #3, San Francisco, CA 94102 (the "Premises"), has elected forfeiture and termination of your
Lease, for just cause pursuant to Chapter 37 of the San Francisco Administrative Code – The
Residential Rent Stabilization and Arbitration Ordinance, Rent Ordinance 37.9(a)(13), as the
Landlord wishes to withdraw from rent or lease all rental units located at 640 Octavia Street, San
Francisco, CA 94102, including but not limited to the Premises under the Lease, 640 Octavia Street,
#3, San Francisco, CA 94102.

Landlord will be filing a Notice of Intent To Withdraw Rental Units with the San Francisco Rent
Board in coming days. WITHIN ONE HUNDRED AND TWENTY (120) days after Landlord's
filing of the Notice of Intent to Withdraw Rental Units with the San Francisco Rent Board (you will
receive a notice of filing of Notice of Intent to Withdraw Rental Units with the San Francisco Rent
Board from Landlord confirming such filing), you are hereby required to vacate and deliver up
possession of said Premises, 640 Octavia Street, #3, San Francisco, CA 94102, to Landlord, by
delivering up possession to Landlord's law firm handling the Ellis Act withdraw from rent or lease of
all units located at 640 Octavia Street, San Francisco, CA 94102, who's address is:

Stimmel, Stimmel & Smith, PC
48 Gold Street, Second Floor
San Francisco, CA 94133
Phone: 415-392-2018

You, as Tenant, and all other occupants in possession, must therefore vacate the Premises on or
before **MAY 26, 2019**.

Heinz- Pieper

Should you fail to vacate the Premises on or before **MAY 14, 2019,** Landlord will institute legal proceedings against you to recover possession of said Premises and all monetary damages available, which may include reasonable attorneys' fees and court costs.

If you wish to discuss this matter, you may call our law firm handling the Ellis Act withdraw from rent or lease of all units located at 640 Octavia Street, San Francisco, CA 94102, as follows:

Stimmel, Stimmel & Smith, PC
48 Gold Street, Second Floor
San Francisco, CA 94133
Phone: 415-392-2018

You, as the sole Eligible Tenant, are entitled to a Relocation Payment relating this this notice and removal of the Premises from rent or lease under the Ellis Act. The required relocation payments are set forth in the attached Relocation Payments for Tenants Evicted Under the Ellis Act. One-half of the required payment, in the amount of $3,316.20, is enclosed for you. The remainder is due upon your vacating the Premises.

While Landlord asserts and maintains that Jose Montoya is an unauthorized occupant (if he claims or is in possession) and hence is not an Eligible Tenant and is without any purported right to possession, one-half of the Relocation Payment is also enclosed for Jose Montoya. The payment is made under protest to defeat any purported asserted procedural defenses by Tenant or such unauthorized occupant, with a reservation of rights to contest any purported right to occupancy.

Please see the attached San Francisco Rent Board Form 1007 - Notice to Tenant Required By Rent Ordinance 37.9(c), which contains more information about your rights as Tenant.

Please Also See Rent Ordinance 37.9(a) relating to your rights as Tenant under an Ellis Act removal from rent or lease eviction.

Thank you for your prompt attention to this matter.



**San Francisco Residential Rent Stabilization and Arbitration Board**

# Notice to Tenant Required by Rent Ordinance §37.9(c)

*Effective March 19, 2016, a copy of this Notice to Tenant must be attached to every notice to terminate tenancy.*

## NOTICE TO TENANT (English)

The landlord has served you with a notice to terminate your tenancy. A tenant's failure to timely act in response to a notice to terminate tenancy may result in a lawsuit by the landlord to evict the tenant. Advice regarding the notice to terminate tenancy is available from the San Francisco Rent Board located at 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Office hours are Monday to Friday, 8:00 am - 5:00 pm, except holidays. Counselors are also available by telephone at (415) 252-4602 between 9:00 am - 12:00 pm and 1:00 pm - 4:00 pm. Information is also available at www.sfrb.org.

You may be eligible for affordable housing programs and apartments. Visit the website of the Mayor's Office of Housing and Community Development (MOHCD) at www.sfmohcd.org for information about available homes, waiting lists and program eligibility. If you are being evicted because the building's owner or relative is moving into your unit or because of the Ellis Act, you may qualify for an affordable housing lottery preference. For more information about local housing resources, the *San Francisco Housing Resource Guide* is available at http://sfmohcd.org/san-francisco-housing-resource-guide.

## NOTIFICACIÓN AL INQUILINO (Spanish)

El arrendatario le ha dado a usted un aviso de desalojo de su inquilinato. Si el inquilino no actúa a tiempo en respuesta a un aviso de desalojo, el arrendatario podría demandar legalmente al inquilino para desalojarlo. Puede obtener asesoría sobre el aviso de desalojo de su inquilinato en la Junta del Control de Rentas de San Francisco ubicada en 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. El horario de atención es de lunes a viernes de 8:00 am a 5:00 pm, excepto feriados. Consejeros están disponibles por teléfono en el (415) 252-4602 entre las 9:00 am - 12:00 pm y 1:00 pm - 4:00 pm. También hay información disponible en www.sfrb.org.

Puede ser que usted reúna los requisitos para programas de vivienda y apartamentos a precios asequibles. Visite el sitio web de la Oficina de Desarrollo de Vivienda y la Comunidad del Alcalde (Mayor's Office of Housing and Community Development o MOHCD) en www.sfmohcd.org para obtener información sobre viviendas disponibles, listas de espera y requisitos para el programa. Si está siendo desalojado porque un familiar del propietario del inmueble se está mudando a su unidad o debido a la Ley Ellis, se le podría dar preferencia en el sorteo de viviendas a precios asequibles. Para información sobre recursos de vivienda local, la *Guía de Recursos para Vivienda de San Francisco* está disponible en http://sfmohcd.org/san-francisco-housing-resource-guide.

## THÔNG BÁO CHO NGƯỜI THUÊ NHÀ (Vietnamese)

Chủ nhà đã tống đạt cho quý vị thông báo chấm dứt hợp đồng thuê nhà. Nếu người thuê không hành động kịp thời để đáp ứng thông báo chấm dứt hợp đồng thuê nhà thì có thể dẫn đến việc chủ nhà nộp đơn kiện để trục xuất người thuê đó. Quý vị có thể được tư vấn về thông báo chấm dứt hợp đồng thuê nhà này tại San Francisco Rent Board (Ủy Ban Kiểm Soát Tiền Thuê Nhà San Francisco), địa chỉ 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Văn phòng mở cửa từ Thứ Hai đến Thứ Sáu, 8:00 giờ sáng - 5:00 giờ chiều, không kể ngày lễ. Quý vị cũng có thể nói chuyện với người tư vấn qua điện thoại tại số (415) 252-4602 từ 9:00 giờ sáng - 12:00 giờ trưa và 1:00 - 4:00 giờ chiều. Thông tin cũng có sẵn tại trang web www.sfrb.org.

Có thể quý vị hội đủ điều kiện tham gia chương trình trợ cấp nhà ở và căn hộ chung cư với chi phí vừa túi tiền. Hãy xem trang web của Sở Phát Triển Nhà Ở Và Cộng Đồng Của Thị Trưởng (Mayor's Office of Housing and Community Development - MOHCD) tại địa chỉ www.sfmohcd.org để biết thêm thông tin về các loại nhà có sẵn, danh sách chờ đợi và các điều kiện của chương trình. Nếu quý vị đang bị trục xuất khỏi nhà vì điều luật Ellis hoặc vì chủ nhà hay người thân của chủ nhà sắp dọn vào ở nhà của quý vị, có thể quý vị hội đủ điều kiện được ưu tiên trong cuộc rút thăm trúng nhà thuê vừa túi tiền. Để biết thêm thông tin về các nguồn trợ giúp trong địa phương về nhà ở, quý vị có thể tìm đọc *Cẩm Nang Các Nguồn Trợ Giúp Về Nhà Ở San Francisco (San Francisco Housing Resource Guide)* tại địa chỉ http://sfmohcd.org/san-francisco-housing-resource-guide.



## San Francisco Residential Rent Stabilization and Arbitration Board

# Notice to Tenant Required by Rent Ordinance §37.9(c)

*Effective March 19, 2016, a copy of this Notice to Tenant must be attached to every notice to terminate tenancy.*

### 租客通知 (Chinese)

您的房東已向您发出終止租約通知。如租客未能及時採取行動回應該通知，可能導致房東提出訴訟驅逐租客。如果您需要獲得有關終止租約通知的建議，請沿洽三藩市租務委員會。地址: 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102。辦公時間: 週一至週五，上午 8:00 - 下午 5:00（節假日除外）。您也可以致電諮詢員，電話: (415) 252-4602 上午 9:00 - 下午 12:00 及下午 1:00 - 4:00。相關資訊可參閱網站: www.sfrb.org。

您可能有資格申請可負擔房屋計劃和公寓。請上網 www.sfmohcd.org 瀏覽市長的住房與社區發展辦公室 (MOHCD) 網站，以獲知有關現有住屋、等候名單和計劃參加資格等資訊。如果您因為建物所有人或親戚要遷入您的住宅單位或由於艾利斯法而被驅逐，您可能有資格獲得可負擔房屋的抽籤優先權。如需更多有關本地住房資源的資訊，請上網 http://sfmohcd.org/san-francisco-housing-resource-guide 瀏覽三藩市住房資源指南。

### УВЕДОМЛЕНИЕ АРЕНДАТОРУ ЖИЛЬЯ (Russian)

Арендодатель вручил вам уведомление о расторжении договора аренды жилого помещения. В случае несвоевременных действий арендатора в ответ на данное уведомление арендодатель может подать в суд иск о выселении арендатора. Если вам необходима консультация по поводу уведомления о расторжении договора, вы можете обратиться в Комитет аренды жилья города Сан-Франциско, расположенный по адресу: 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Часы работы Комитета — с понедельника по пятницу с 8:00 до 17:00 (за исключением праздничных дней). С консультантами можно также связаться по телефону (415) 252-4602 с 9:00 до 12:00 и с 13:00 до 16:00. Кроме того, информация размещена на веб-сайте www.sfrb.org.

Вы, возможно имеете право на участие в программах по предоставлению доступного жилья и квартир. Посетите веб-сайт мэра города, раздел жилищного строительства и развития общин («МОНCD»), www.sfmohcd.org, где вы сможете получить дополнительную информацию о предоставляемом жилье, списках ожидания и ваших правах на участие в подобного рода программах. Если вас выселяют, потому что владелец или родственники владельца здания должны въехать в вашу квартиру, соответственно закону «Ellis Act», то у вас, возможно, есть право претендовать на определенные преимущества при участии в лотерее по предоставлению доступного жилья. За более подробной информацией о помощи по предоставлению жилья просьба обращаться к руководству г. Сан-Франциско по предоставлению подобной помощи на веб-сайте http://sfmohcd.org/san-francisco-housing-resource-guide.

### ABISO SA NANGUNGUPAHAN (Filipino)

Nabigyan na kayo ng nagpapaupa ng abiso tungkol sa pagwawakas sa inyong pangungupahan. Ang hindi pagkilos sa tamang oras ng nangungupahan sa pagtugon sa abiso ng pagwawakas sa pangungupahan ay posibleng mauwi sa paghahabla ng nagpapaupa para ma-evict o mapaalis sa tahanan ang nangungupahan. May makakuhang payo tungkol sa abiso ng pagwawakas sa pangungupahan mula sa San Francisco Rent Board (Lupon para sa Pangungupahan sa San Francisco) na nasa 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Bukas ang opisina tuwing Lunes hanggang Biyernes, 8:00 am - 5:00 pm, maliban sa mga pista opisyal. May mga tagapayo rin na makakausap sa telepono sa (415) 252-4602 sa pagitan ng 9:00 am - 12:00 pm at ng 1:00 pm - 4:00 pm. Makakukuha rin ng impormasyon sa www.sfrb.org.

Posibleng kuwalipikado kayo para sa mga abot-kayang pabahay at apartment. Pumunta sa Opisina para sa Pabahay at Pagpapaunlad sa Komunidad (Office of Housing and Community Development, MOHCD) ng Alkalde sa www.sfmohcd.org para sa karagdagang impormasyon tungkol sa makukuhang bahay, waiting lists (listahan para sa naghihintay makapasok) at mga kinakailangan para maging kuwalipikado. Kung pinapaalis kayo sa inyong tahanan dahil titira na sa inyong unit ang may-ari ng building o ang kanyang kamag-anak, o dahil sa Ellis Act, posibleng kuwalipikado rin kayo para sa abot-kayang pabahay sa pamamagitan ng lottery preference (pagbibigay-preperensiya batay sa ala-suwerteng bunutan). Para sa karagdagang impormasyon tungkol sa mapagkukunan ng tulong para sa lokal na pabahay, matitingnan ang *San Francisco Housing Resource Guide* (Gabay para sa Mapagkukunan ng Impormasyon at Tulong ukol sa Pabahay sa San Francisco) sa http://sfmohcd.org/san-francisco-housing-resource-guide.

**City and County of San Francisco**

**Residential Rent Stabilization and Arbitration Board**

# Relocation Payments for Tenants Evicted Under the Ellis Act*

| Date of Service of Notice of Termination of Tenancy ("Eviction Notice") | Relocation Amount Due Per Tenant | Maximum Relocation Amount Due Per Unit | PLUS Additional Amount Due for Each Elderly (62 years or older) or Disabled Tenant |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

*See Ordinance Section 37.9A for additional relocation requirements for evictions under 37.9(a)(13) (Ellis Act).

## Pagos de traslado para inquilinos desalojados según la Ley Ellis*

| Fecha del servicio de entrega del aviso de desalojo | Monto de traslado correspondiente por inquilino | Monto de traslado máximo correspondiente por unidad | ADICIONAL Monto adicional correspondiente por cada persona mayor de edad (62 años o más) o inquilino discapacitado |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

* Ver la Sección 37.9A de la Ordenanza para obtener los requisitos adicionales de traslado por desalojo según 37.9(a)(13) (Ley Ellis).

578 Relocation Payments-37.9A 9/25/18

25 Van Ness Avenue #320
San Francisco, CA 94102-6033

Page 1 of 2

Phone 415.252.4602
FAX 415.252.4699

**City and County of San Francisco**

**Residential Rent Stabilization and Arbitration Board**

## 《艾利斯法案》(Ellis Act) 規定的迫遷搬遷費*

| 送達迫遷通知的日期 | 每位房客應得的搬遷費金額 | 每個單位應得的最高搬遷費金額 | 外加 每位老年（62 歲或以上）或殘障房客應得的額外金額 |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

*請參閱《租賃條例》第 37.9A 節中有關依照第 37.9(a)(13) 節（《艾利斯法案》）迫遷的額外搬遷費要求。

## Bayad para sa Rekolasyon ng mga Umuupa (Tenant) na Napaalis sa Ilalim ng Batas Ellis*

| Petsa ng Pagbibigay ng Abiso para sa Pagtatapos ng Pagpapaupa o Termination of Tenancy ("Abiso ng Pagpapaalis o Eviction Notice") | Halaga para sa Relokasyon na Kailangang Bayaran sa Bawat Umuupa | Pinakamataas nang Halaga para sa Relokasyon na Kailangang Bayaran para sa Bawat Unit | AT Karagdagang Halaga na Kailangang Bayaran para sa Bawat Matanda (60 taong gulang o mas matanda pa) o May Kapansanan na Umuupa o Kabahayan na may (mga) Anak na Menor de Edad |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

* Tingnan ang Ordinansa, Seksiyon 37.9A para sa iba pang itinatakda sa relokasyon para sa mga pagpapaalis na nasa ilalim ng 37.9(a)(13) (Batas Ellis).

578 Relocation Payments-37.9A 9/25/18
25 Van Ness Avenue #320
San Francisco, CA 94102-6033

Page 2 of 2

Phone 415.252.4602
FAX 415.252.4699

**EXHIBIT 13**

# NOTICE TO QUIT

## (BASED ON LANDLORD'S FORTHCOMING
## NOTICE OF INTENT TO WITHDRAW UNITS UNDER ELLIS ACT)

DATE: JANUARY 16, 2019

TO:   **Mr. Karl Heinz-Pieper, also known as "Kalle Pieper" and "Karl-Heinz Pieper"** ("Tenant"), AND ALL OTHER OCCUPANT(S)-IN-POSSESSION, including but not limited to the unauthorized occupant (if he claims or is in possession) Jose Montoya, also known as "Jose Garcia Montoya" and "Jose Montoya Garcia":

TENANT IS IN POSSESSION OF THE REAL PROPERTY LOCATED AT:

<u>640 Octavia Street, #3, San Francisco, CA 94102.</u>

**NOTICE IS HEREBY GIVEN** that 640 Octavia, LLC, a Wyoming limited liability company, the "Landlord" under that certain Residential Lease Agreement dated on or about September 9, 1993 (the "Lease"), by which you as Tenant hold possession of the premises commonly known as 640 Octavia Street, #3, San Francisco, CA 94102 (the "Premises"), has elected forfeiture and termination of your Lease, for just cause pursuant to Chapter 37 of the San Francisco Administrative Code – The Residential Rent Stabilization and Arbitration Ordinance, Rent Ordinance 37.9(a)(13), as the Landlord wishes to withdraw from rent or lease all rental units located at 640 Octavia Street, San Francisco, CA 94102, including but not limited to the Premises under the Lease, 640 Octavia Street, #3, San Francisco, CA 94102.

Landlord will be filing a Notice of Intent To Withdraw Rental Units with the San Francisco Rent Board in coming days. WITHIN ONE HUNDRED AND TWENTY (120) days after Landlord's filing of the Notice of Intent to Withdraw Rental Units with the San Francisco Rent Board (you will receive a notice of filing of Notice of Intent to Withdraw Rental Units with the San Francisco Rent Board from Landlord confirming such filing), you are hereby required to vacate and deliver up possession of said Premises, 640 Octavia Street, #3, San Francisco, CA 94102, to Landlord, by delivering up possession to Landlord's law firm handling the Ellis Act withdraw from rent or lease of all units located at 640 Octavia Street, San Francisco, CA 94102, who's address is:

Stimmel, Stimmel & Smith, PC
48 Gold Street, Second Floor
San Francisco, CA 94133
Phone: 415-392-2018

You, as Tenant, and all other occupants in possession, must therefore vacate the Premises on or before **MAY 26, 2019**.

Should you fail to vacate the Premises on or before **MAY 14, 2019**, Landlord will institute legal proceedings against you to recover possession of said Premises and all monetary damages available, which may include reasonable attorneys' fees and court costs.

If you wish to discuss this matter, you may call our law firm handling the Ellis Act withdraw from rent or lease of all units located at 640 Octavia Street, San Francisco, CA 94102, as follows:

Stimmel, Stimmel & Smith, PC
48 Gold Street, Second Floor
San Francisco, CA 94133
Phone: 415-392-2018

You, as the sole Eligible Tenant, are entitled to a Relocation Payment relating this this notice and removal of the Premises from rent or lease under the Ellis Act. The required relocation payments are set forth in the attached Relocation Payments for Tenants Evicted Under the Ellis Act. One-half of the required payment, in the amount of $3,316.20, is enclosed for you. The remainder is due upon your vacating the Premises.

While Landlord asserts and maintains that Jose Montoya is an unauthorized occupant (if he claims or is in possession) and hence is not an Eligible Tenant and is without any purported right to possession, one-half of the Relocation Payment is also enclosed for Jose Montoya. The payment is made under protest to defeat any purported asserted procedural defenses by Tenant or such unauthorized occupant, with a reservation of rights to contest any purported right to occupancy.

Please see the attached San Francisco Rent Board Form 1007 - Notice to Tenant Required By Rent Ordinance 37.9(c), which contains more information about your rights as Tenant.

Please Also See Rent Ordinance 37.9(a) relating to your rights as Tenant under an Ellis Act removal from rent or lease eviction.

Thank you for your prompt attention to this matter.



**San Francisco Residential Rent Stabilization and Arbitration Board**

# Notice to Tenant Required by Rent Ordinance §37.9(c)

*Effective March 19, 2016, a copy of this Notice to Tenant must be attached to every notice to terminate tenancy.*

## NOTICE TO TENANT (English)

The landlord has served you with a notice to terminate your tenancy. A tenant's failure to timely act in response to a notice to terminate tenancy may result in a lawsuit by the landlord to evict the tenant. Advice regarding the notice to terminate tenancy is available from the San Francisco Rent Board located at 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Office hours are Monday to Friday, 8:00 am - 5:00 pm, except holidays. Counselors are also available by telephone at (415) 252-4602 between 9:00 am - 12:00 pm and 1:00 pm - 4:00 pm. Information is also available at www.sfrb.org.

You may be eligible for affordable housing programs and apartments. Visit the website of the Mayor's Office of Housing and Community Development (MOHCD) at www.sfmohcd.org for information about available homes, waiting lists and program eligibility. If you are being evicted because the building's owner or relative is moving into your unit or because of the Ellis Act, you may qualify for an affordable housing lottery preference. For more information about local housing resources, the *San Francisco Housing Resource Guide* is available at http://sfmohcd.org/san-francisco-housing-resource-guide.

## NOTIFICACIÓN AL INQUILINO (Spanish)

El arrendatario le ha dado a usted un aviso de desalojo de su inquilinato. Si el inquilino no actúa a tiempo en respuesta a un aviso de desalojo, el arrendatario podría demandar legalmente al inquilino para desalojarlo. Puede obtener asesoría sobre el aviso de desalojo de su inquilinato en la Junta del Control de Rentas de San Francisco ubicada en 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. El horario de atención es de lunes a viernes de 8:00 am a 5:00 pm, excepto feriados. Consejeros están disponibles por teléfono en el (415) 252-4602 entre las 9:00 am - 12:00 pm y 1:00 pm - 4:00 pm. También hay información disponible en www.sfrb.org.

Puede ser que usted reúna los requisitos para programas de vivienda y apartamentos a precios asequibles. Visite el sitio web de la Oficina de Desarrollo de Vivienda y la Comunidad del Alcalde (Mayor's Office of Housing and Community Development o MOHCD) en www.sfmohcd.org para obtener información sobre viviendas disponibles, listas de espera y requisitos para el programa. Si está siendo desalojado porque un familiar del propietario del inmueble se está mudando a su unidad o debido a la Ley Ellis, se le podría dar preferencia en el sorteo de viviendas a precios asequibles. Para información sobre recursos de vivienda local, la *Guía de Recursos para Vivienda de San Francisco* está disponible en http://sfmohcd.org/san-francisco-housing-resource-guide.

## THÔNG BÁO CHO NGƯỜI THUÊ NHÀ (Vietnamese)

Chủ nhà đã tống đạt cho quý vị thông báo chấm dứt hợp đồng thuê nhà. Nếu người thuê không hành động kịp thời để đáp ứng thông báo chấm dứt hợp đồng thuê nhà thì có thể dẫn đến việc chủ nhà nộp đơn kiện để trục xuất người thuê đó. Quý vị có thể được tư vấn về thông báo chấm dứt hợp đồng thuê nhà này tại San Francisco Rent Board (Ủy Ban Kiểm Soát Tiền Thuê Nhà San Francisco), địa chỉ 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Văn phòng mở cửa từ Thứ Hai đến Thứ Sáu, 8:00 giờ sáng - 5:00 giờ chiều, không kể ngày lễ. Quý vị cũng có thể nói chuyện với người tư vấn qua điện thoại tại số (415) 252-4602 từ 9:00 giờ sáng - 12:00 giờ trưa và 1:00 - 4:00 giờ chiều. Thông tin cũng có sẵn tại trang web www.sfrb.org.

Có thể quý vị hội đủ điều kiện tham gia chương trình trợ cấp nhà ở và căn hộ chung cư với chi phí vừa túi tiền. Hãy xem trang web của Sở Phát Triển Nhà Ở Và Cộng Đồng Của Thị Trưởng (Mayor's Office of Housing and Community Development - MOHCD) tại địa chỉ www.sfmohcd.org để biết thêm thông tin về các loại nhà có sẵn, danh sách chờ đợi và các điều kiện của chương trình. Nếu quý vị đang bị trục xuất khỏi nhà vì điều luật Ellis hoặc vì chủ nhà hay người thân của chủ nhà sắp dọn vào ở nhà của quý vị, có thể quý vị hội đủ điều kiện được ưu tiên trong cuộc rút thăm trúng nhà thuê vừa túi tiền. Để biết thêm thông tin về các nguồn trợ giúp trong địa phương về nhà ở, quý vị có thể tìm đọc *Cẩm Nang Các Nguồn Trợ Giúp Về Nhà Ở Tại San Francisco (San Francisco Housing Resource Guide)* tại địa chỉ http://sfmohcd.org/san-francisco-housing-resource-guide.



### San Francisco Residential Rent Stabilization and Arbitration Board

# Notice to Tenant Required by Rent Ordinance §37.9(c)

*Effective March 19, 2016, a copy of this Notice to Tenant must be attached to every notice to terminate tenancy.*

## 租客通知 (Chinese)

您的房東已向您發出終止租約的通知。如租客未能及時採取行動回應該通知，可能導致房東提出訴訟驅逐租客。如果您需要獲得有關終止租約通知的建議，請洽詢三藩市租務委員會。地址: 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102。辦公時間: 週一至週五，上午 8:00 - 下午 5:00（節假日除外）。您也可以致電諮詢員，電話: (415) 252-4602 上午 9:00 - 下午 12:00 及下午 1:00 - 4:00。相關資訊可參閱網站: www.sfrb.org。

您可能有資格申請可負擔房屋計劃和公寓。請上網 www.sfmohcd.org 瀏覽市長的住房與社區發展辦公室(MOHCD) 網站，以獲知有關現有住屋、等候名單和計劃參加資格等資訊。如果您因為建物所有人或親戚要遷入您的住宅單位或由於艾利斯法而被驅逐，您可能有資格獲得可負擔房屋的抽籤優先權。如需更多有關本地住房資源的資訊，請上網 http://sfmohcd.org/san-francisco-housing-resource-guide 瀏覽三藩市住房資源指南。

## УВЕДОМЛЕНИЕ АРЕНДАТОРУ ЖИЛЬЯ (Russian)

Арендодатель вручил вам уведомление о расторжении договора аренды жилого помещения. В случае несвоевременных действий арендатора в ответ на данное уведомление арендодатель может подать в суд иск о выселении арендатора. Если вам необходима консультация по поводу уведомления о расторжении договора, вы можете обратиться в Комитет аренды жилья города Сан-Франциско, расположенный по адресу: 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Часы работы Комитета — с понедельника по пятницу с 8:00 до 17:00 (за исключением праздничных дней). С консультантами можно также связаться по телефону (415) 252-4602 с 9:00 до 12:00 и с 13:00 до 16:00. Кроме того, информация размещена на веб-сайте www.sfrb.org.

Вы, возможно имеете право на участие в программах по предоставлению доступного жилья и квартир. Посетите веб-сайт мэра города, раздел жилищного строительства и развития общин («МОНCD»), www.sfmohcd.org, где вы сможете получить дополнительную информацию о предоставляемом жилье, списках ожидания и ваших правах на участие в подобного рода программах. Если вас выселяют, потому что владелец или родственники владельца здания должны въехать в вашу квартиру, соответственно закону «Ellis Act», то у вас, возможно, есть право претендовать на определенные преимущества при участии в лотерее по предоставлению доступного жилья. За более подробной информацией о помощи по предоставлению жилья просьба обращаться к руководству г. Сан-Франциско по предоставлению подобной помощи на веб-сайте http://sfmohcd.org/san-francisco-housing-resource-guide.

## ABISO SA NANGUNGUPAHAN (Filipino)

Nabigyan na kayo ng nagpapaupa ng abiso tungkol sa pagwawakas sa inyong pangungupahan. Ang hindi pagkilos sa tamang oras ng nangungupahan sa pagtugon sa abiso ng pagwawakas sa pangungupahan ay posibleng mauwi sa paghahabla ng nagpapaupa para ma-evict o mapaalis sa tahanan ang nangungupahan. May makakuhang payo tungkol sa abiso ng pagwawakas sa pangungupahan mula sa San Francisco Rent Board (Lupon para sa Pangungupahan sa San Francisco) na nasa 25 Van Ness Avenue, Suite 320, San Francisco, CA 94102. Bukas ang opisina tuwing Lunes hanggang Biyernes, 8:00 am - 5:00 pm, maliban sa mga pista opisyal. May mga tagapayo rin na makakausap sa telepono sa (415) 252-4602 sa pagitan ng 9:00 am - 12:00 pm at ng 1:00 pm - 4:00 pm. Makakukuha rin ng impormasyon sa www.sfrb.org.

Posibleng kuwalipikado kayo para sa mga abot-kayang pabahay at apartment. Pumunta sa Opisina para sa Pabahay at Pagpapaunlad sa Komunidad (Office of Housing and Community Development, MOHCD) na Alkalde sa www.sfmohcd.org para sa karagdagang impormasyon tungkol sa makukuhang bahay, waiting lists (listahan para sa naghihintay makapasok) at mga kinakailangan para maging kuwalipikado. Kung pinapaalis kayo sa inyong tahanan dahil titira na sa inyong unit ang may-ari ng building o ang kanyang kamag-anak, o dahil sa Ellis Act, posibleng kuwalipikado rin kayo para sa abot-kayang pabahay sa pamamagitan ng lottery preference (pagbibigay-preperensiya batay sa ala-suwerteng bunutan). Para sa karagdagang impormasyon tungkol sa mapagkukunan ng tulong para sa lokal na pabahay, matitingnan ang *San Francisco Housing Resource Guide* (Gabay para sa Mapagkukunan ng Impormasyon at Tulong ukol sa Pabahay sa San Francisco) sa http://sfmohcd.org/san-francisco-housing-resource-guide.

**City and County of San Francisco**

**Residential Rent Stabilization and Arbitration Board**

## Relocation Payments for Tenants Evicted Under the Ellis Act*

| Date of Service of Notice of Termination of Tenancy ("Eviction Notice") | Relocation Amount Due Per Tenant | Maximum Relocation Amount Due Per Unit | PLUS Additional Amount Due for Each Elderly (62 years or older) or Disabled Tenant |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

*See Ordinance Section 37.9A for additional relocation requirements for evictions under 37.9(a)(13) (Ellis Act).

## Pagos de traslado para inquilinos desalojados según la Ley Ellis*

| Fecha del servicio de entrega del aviso de desalojo | Monto de traslado correspondiente por inquilino | Monto de traslado máximo correspondiente por unidad | ADICIONAL Monto adicional correspondiente por cada persona mayor de edad (62 años o más) o inquilino discapacitado |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

* Ver la Sección 37.9A de la Ordenanza para obtener los requisitos adicionales de traslado por desalojo según 37.9(a)(13) (Ley Ellis).

578 Relocation Payments-37.9A 9/25/18

25 Van Ness Avenue #320
San Francisco, CA 94102-6033

Page 1 of 2

Phone 415.252.4602
FAX 415.252.4699

**City and County of San Francisco**

**Residential Rent Stabilization and Arbitration Board**

## 《艾利斯法案》(Ellis Act) 規定的迫遷搬還費*

| 送達迫遷通知的日期 | 每位房客應得的搬還費金額 | 每個單位應得的最高搬還費金額 | 外加 每位老年 (62 歲或以上) 或殘障房客應得的額外金額 |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

*請參閱《租賃條例》第 37.9A 節中有關依照第 37.9(a)(13) 節 (《艾利斯法案》) 迫遷的額外搬還費要求。

## Bayad para sa Rekolasyon ng mga Umuupa (Tenant) na Napaalis sa Ilalim ng Batas Ellis*

| Petsa ng Pagbibigay ng Abiso para sa Pagtatapos ng Pagpapaupa o Termination of Tenancy ("Abiso ng Pagpapaalis o Eviction Notice") | Halaga para sa Relokasyon na Kailangang Bayaran sa Bawat Umuupa | Pinakamataas nang Halaga para sa Relokasyon na Kailangang Bayaran para sa Bawat Unit | AT Karagdagang Halaga na Kailangang Bayaran para sa Bawat Matanda (60 taong gulang o mas matanda pa) o May Kapansanan na Umuupa o Kabahayan na may (mga) Anak na Menor de Edad |
|---|---|---|---|
| 3/01/16 – 2/28/17 | $5,894.63 | $17,683.86 | $3,929.74 |
| 3/01/17 – 2/28/18 | $6,286.03 | $18,858.07 | $4,190.67 |
| 3/01/18 – 2/28/19 | $6,632.39 | $19,897.15 | $4,421.58 |

* Tingnan ang Ordinansa, Seksiyon 37.9A para sa iba pang itinatakda sa relokasyon para sa mga pagpapaalis na nasa ilalim ng 37.9(a)(13) (Batas Ellis).

**EXHIBIT 14**

*City and County of San Francisco*     *Residential Rent Stabilization and*
                                                   *Arbitration Board*

## Notice of Intent to Withdraw
## Residential Units from the Rental Market
### [RENT ORDINANCE SECTION 37.9A]

NOTE: Owners seeking to withdraw from the rental market their units which are subject to the San Francisco Rent Ordinance must submit this completed form to the Rent Board's office. Submittal may be by personal delivery, registered mail, or certified mail. Please refer to the specific procedures pursuant to Section 37.9A of the San Francisco Rent Ordinance.

**I.**   **OWNER INFORMATION** (All owners of the property must be listed. If additional space is needed, attach a separate sheet using the same format.)

**Name:**   640 Octavia, LLC, a Wyoming limited liability company

**Address:**   1712 Pioneer Ave., Suite 500, Cheyenne WY 82001

**Phone Number:** _____ **(primary)**      415-392-2018      **(other)**

**II.**   **PROPERTY INFORMATION**

**Address:**   640 Octavia Street #3 _____ San Francisco, CA 941 02
                   (street number and name)                                        (zip code)

**Block:** _793_        **Lot:** _22_

**Number of Residential Units:** ___4___

**III.**   **UNIT INFORMATION** (All units, including owner-occupied, commercial and vacant units, and all occupants of the property must be listed. If additional space is needed, attach a separate sheet using the same format.)

| UNIT # | DATE TENANCY COMMENCED | NAME OF EACH CURRENT OCCUPANT | CURRENT RENT |
|---|---|---|---|
| 3 | 9/9/1993 | Mr. Karl Heinz-Pieper, also known as "Kalle Pieper" and "Karl-Heinz Pieper" | $976.92 |
| | | | |
| 3 | unknown | unauthorized occupant that may still be in possession - Jose Montoya, also known as "Jose Garcia Montoya" and "Jose Montoya Garcia | |
| | | | N/A |

541/Ellisforms/Notice of Intent/1/3/17

FORM 3

25 Van Ness Ave., #320, San Francisco, CA 94102      415.252.4602      Fax 415.252.4699

# Notice of Intent to Withdraw
## Residential Units from the Rental Market *(continued)*
### [RENT ORDINANCE SECTION 37.9A]

## IV. OWNER'S DECLARATION

Do you certify that actions have been initiated as required by law to terminate all existing tenancies on the property by service of a written notice of termination of tenancy?   X Yes   _ No

I declare under penalty of perjury, under the laws of the State of California, that the information provided on this Notice of Intent to Withdraw Form, including any attachments, is true and correct to the best of my knowledge and belief.

Executed on ___January 24, 2019___   in _Cheyenne_, _WY 82001_
(date)                                        (city)

Edward Kountze, Sole LLC Owner
(EDWARD KOUNTZE) (print name)                        (signature)

**ALL OWNERS MUST SIGN.** Attach an additional declaration and signature for each owner of record. Attorneys and/or non-attorney representatives may **not** sign the owner's declaration on behalf of an owner.

541/Ellisforms/Notice of Intent/1/3/17                                                FORM 3

**EXHIBIT 15**

RECEIVED 06/12/2018 03:36PM 4159569205 WALSTON LAW GROUP
06/12/2018 15:47 Hemenway Associates Inc (FAX)4029599733 P.027/031

Case 3:16-cv-01047-WHA Document 124 Filed 03/13/19 Page 211 of 263

3

## STATE OF WYOMING
## Office of the Secretary of State

I, KAREN L. WHEELER, ACTING SECRETARY OF STATE of the STATE OF WYOMING, do hereby certify that according to the records of this office,

## 640 Octavia LLC

is a

## Limited Liability Company

formed or qualified under the laws of Wyoming did on **December 15, 2016**, comply with all applicable requirements of this office. Its period of duration is Perpetual. This entity has been assigned entity identification number **2016-000735911**.

This entity is in existence and in good standing in this office and has filed all annual reports and paid all annual license taxes to date, or is not yet required to file such annual reports; and has not filed Articles of Dissolution.

I have affixed hereto the Great Seal of the State of Wyoming and duly generated, executed, authenticated, issued, delivered and communicated this official certificate at Cheyenne, Wyoming on this 20th day of February, 2018 at 9:27 AM. This certificate is assigned 025594835.

*Karen L. Wheeler*
Acting Secretary of State

Notice: A certificate issued electronically from the Wyoming Secretary of State's web site is immediately valid and effective. The validity of a certificate may be established by viewing the Certificate Confirmation screen of the Secretary of State's website http://wyobiz.wy.gov and following the instructions displayed under Validate Certificate.

**EXHIBIT 16**



**Wyoming**
Secretary of State

**Wyoming Secretary of State**

2020 Carey Avenue
Suite 700
Cheyenne, WY 82002-0020
Ph. 307-777-7311

<u>For Office Use Only</u>
**Ed Murray, WY Secretary of State**
**FILED: Dec 15 2016  3:32PM**
**Original ID: 2016-000735911**

# Limited Liability Company
## Articles of Organization

**I. The name of the limited liability company is:**

640 Octavia LLC

**II. The name and physical address of the registered agent of the limited liability company is:**

Capital Administrations LLC
1712 Pioneer Ave Ste 115
Cheyenne, WY 82001

**III. The mailing address of the limited liability company is:**

1712 Pioneer Ave.
Ste. 500
Cheyenne, WY 82001

**IV. The principal office address of the limited liability company is:**

1712 Pioneer Ave.
Ste. 500
Cheyenne, WY 82001

**V. The organizer of the limited liability company is:**

Capital Administrations, LLC
1712 Pioneer Ave., Ste. 115, Cheyenne, WY 82001

**VI.** The purpose for which the limited liability company is organized is: any lawful purpose except for the purposes of banking and insurance.

**VII.** The remaining members of the limited liability company, if any, shall have the right to continue the business on the death, retirement, resignation, expulsion, bankruptcy or dissolution of a member or occurrence of any other event which terminates the continued membership of a member of the limited liability company, unless otherwise stated in the Membership Operating Agreement.

**Signature:**    *DeAnna Montemayor*              Date:  **12/15/2016**

Print Name:    **DeAnna Montemayor**

Title:    **Organizer**

Email:    **tax@wyomingcompany.com**

Daytime Phone #:    **(307) 632-3333**

Page 1 of 4



Secretary of State

**Wyoming Secretary of State**

2020 Carey Avenue
Suite 700
Cheyenne, WY 82002-0020
Ph. 307-777-7311

☑ I am the person whose signature appears on the filing; that I am authorized to file these documents on behalf of the business entity to which they pertain; and that the information I am submitting is true and correct to the best of my knowledge.

☑ I am filing in accordance with the provisions of the Wyoming Limited Liability Company Act, (W.S. 17-29-101 through 17-29-1105) and Registered Offices and Agents Act (W.S. 17-28-101 through 17-28-111).

☑ I understand that the information submitted electronically by me will be used to generate Articles of Organization that will be filed with the Wyoming Secretary of State.

☑ I intend and agree that the electronic submission of the information set forth herein constitutes my signature for this filing.

☑ I have conducted the appropriate name searches to ensure compliance with W.S. 17-16-401.

**Notice Regarding False Filings: Filing a false document could result in criminal penalty and prosecution pursuant to W.S. 6-5-308.**

> **W.S. 6-5-308. Penalty for filing false document.**
>
> (a) A person commits a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both, if he files with the secretary of state and willfully or knowingly:
>
> (i) Falsifies, conceals or covers up by any trick, scheme or device a material fact;
>
> (ii) Makes any materially false, fictitious or fraudulent statement or representation; or
>
> (iii) Makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry.

☑ I acknowledge having read W.S. 6-5-308.

F er is:   ☐ An Individual   ☑ An Organization

The Wyoming Secretary of State requires a natural person to sign on behalf of a business entity acting as an incorporator or organizer. The following individual is signing on behalf of all Organizers or Incorporators.

**Filer Information:**
**By submitting this form I agree and accept this electronic filing as legal submission of my Articles of Organization.**

Signature:   *DeAnna Montemayor*                    Date:   12/15/2016

Print Name:   **DeAnna Montemayor**

Title:   **Organizer**

Email:   **tax@wyomingcompany.com**

Daytime Phone #:   **(307) 632-3333**



**Secretary of State**

Wyoming Secretary of State
2020 Carey Avenue
Suite 700
Cheyenne, WY 82002-0020
Ph. 307-777-7311

## Consent to Appointment by Registered Agent

**Capital Administrations LLC**, whose registered office is located at **1712 Pioneer Ave Ste 115, Cheyenne, WY 82001**, voluntarily consented to serve as the registered agent for **640 Octavia LLC** and has certified they are in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

I have obtained a signed and dated statement by the registered agent in which they voluntarily consent to appointment for this entity.

Signature:     *DeAnna Montemayor*                    Date:   **12/15/2016**

Print Name:     **DeAnna Montemayor**

Title:     **Organizer**

Email:     **tax@wyomingcompany.com**

Daytime Phone #:     **(307) 632-3333**

# STATE OF WYOMING
## Office of the Secretary of State

I, ED MURRAY, Secretary of State of the State of Wyoming, do hereby certify that the filing requirements for the issuance of this certificate have been fulfilled.

## CERTIFICATE OF ORGANIZATION

**640 Octavia LLC**

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this **15th** day of **December, 2016** at **3:32 PM.**

Remainder intentionally left blank.

Filed Date: 12/15/2016

_____
Secretary of State

Filed Online By:

DeAnna Montemayor

on 12/15/2016

**EXHIBIT 17**

<u>RESOLUTIONS ADOPTED BY ORGANIZER</u>
<u>OF</u>
<u>640 Octavia LLC</u>

The undersigned, being the sole Organizer of the Limited Liability Company hereby adopts the following resolutions:

**RESOLVED**, that a copy of the Certificate of Organization of the Limited Liability Company, together with the original receipt showing payment of the statutory organization tax and filing fee, be inserted in the Minute Book of the Limited Liability Company.

**RESOLVED**, that the form of the Operating Agreement submitted to the meeting be, and the same hereby are, adopted as and for the Operating Agreement of the Limited Liability Company, and that a copy thereof be placed in the Minute Book of the Limited Liability Company.

**RESOLVED**, that the following persons be, and hereby are, elected as Member(s) of the Limited Liability Company, to serve until the first annual meeting, and until their successors are elected and qualify.

**FURTHER RESOLVED**, that the following persons be, and is given full authority to manage, control and operate the said Limited Liability Company.

**RESOLVED FURTHER**, that the following person(s), is authorized to make decisions in the ordinary course of business, including, but not limited to, decisions regarding sales, purchases and employees. As well as the right to open a bank account, lines of credit, contractual agreements, and other financial agreements in the name of the Limited Liability Company for the deposit of funds belonging to the Limited Liability Company, such funds to be withdrawn only by lawful banking transactions signed by authorized parties.

**ODLAW INC**

**IN WITNESS WHEREOF**, the undersigned has executed this written consent, dated this 15th day of December, 2016, at Cheyenne, Wyoming.

Organizer, Capital Administrations, LLC

**EXHIBIT 18**

# From Itamar Herzberg (917) 494 – 3402 texted to Edward Kountze (202) 677 - 2271

## From Itamar Herzberg (917) 494 – 3402 to Edward Kountze (202) 677 - 2271

## 02/04/2017 at 5:46pm

Hi Ed – This is itamar from 640 Octavia st apt #4. I got this phone # from the FedEx package you sent me last weekend. I left you a phone message and this text to confirm that I left the rent under your mat (could not get under the door). I left it on Tue morning but see you haven't picked it up so hope it is ok. Also, given your are the new landlord, I'd like to know who to contact re: my broken heater (confirmed by pge) and other future matters. Thank you in advance for your prompt response.

Itamar

## From Edward Kountze (202) 677 – 2271 to Itamar Herzberg (917) 494 – 3402

## 02/05/2017 at 10:01pm

Hello itamar, and thanks for the rent payment – yesterday I arranged for an assessment for your heater replacement per your text and pge exam of the same, I anticipate them contacting me early Monday, and until noticed otherwise contact me for any issues regarding your apt. Thanks, Ed Kountze.

## From Itamar Herzberg (917) 494 – 3402 to Edward Kountze (202) 677 - 2271

## 02/08/2017 at 6pm

Thanks Ed. Did you get any update re: the heater by chance? Also, I was wondering if you were forwarded anything form the previous owners' agent whom I was corresponding with?

Bolden000223

### From Itamar Herzberg (917) 494 – 3402 to Edward Kountze (202) 677 - 2271

### 02/10/2017 at 9:35am

Hi Ed – thank you for the update. Do let me know what the plan/timing is once you get the contractor's estimate... Allison had mentioned she let the new buyer know that I had received a buyout offer from the previous owner.

### From Edward Kountze (202) 677 – 2271 to Itamar Herzberg (917) 494 – 3402

### 02/13/2017 at 6:27pm

Itamar, good to finally meet you. I am just getting back to the apt, have spoken to the heater contractor today, and contacted pge regarding shutting off gas while heater is replaced or fixed. The flu or cold that was coming on is full blown today so it might be best to do this by text. I also contacted my lawyer regarding the payout, as I have several partners in the ownership of 640 Octavia. I have to run this by them. I will text you when I'm back at the apt. My goal is to get the heater problem-free asap. Yours, Ed Kountze

### From Itamar Herzberg (917) 494 – 3402 to Edward Kountze (202) 677 - 2271

### 02/13/2017 at 6:28pm

Hey Ed. Great catching up yesterday, hope you had a great evening. Did wanted to talk again tonight? If so, what time would work?

### From Edward Kountze (202) 677 – 2271 to Itamar Herzberg (917) 494 – 3402

### 02/13/2017 at 7:12pm

Thank you Itamar, I appreciate it. Ed Kountze.

Bolden000224

### From Edward Kountze (202) 677 – 2271 to Itamar Herzberg (917) 494 – 3402

### 02/17/2017

Hi Itamar – I emailed the other partners and asked what they want to do, haven't heard back. Told contactor to get ready to fix the heater as the replacement ordered is a month out, he wanted to know if you had any papers from pge regarding shutting off heater. I'm still sick but will be calling pge in the morning, can't think of any6thing needing at this time. Yours, Ed Kountze

### From Itamar Herzberg (917) 494 – 3402 to Edward Kountze (202) 677 - 2271

### 02/17/2017 at 12:11am

Hi Ed – just checking in. Hope you are feeling better. Do you need anything from my end?

### From Edward Kountze (202) 677 – 2271 to Itamar Herzberg (917) 494 – 3402

### 02/21/2017 at 8:55pm

This is a 48 hour notice given before entering 640 Octavia, no. 4, to repair and replace heating unit. Ed Kountze

### From Itamar Herzberg (917) 494 – 3402 to Edward Kountze (202) 677 - 2271

### 02/21/2017 at 9:09pm

Acknowledged – thanks for the chat. I'm going to get some rest from the long trip. Good night

Bolden000225

### From Edward Kountze (202) 677 – 2271 to Itamar Herzberg (917) 494 – 3402

### 02/25/2017 at 5:28am

Just got back to the apartment, but may be going out in a bit. Would really love to talk asap. Hope the session went well with pge, though my heater isn't working so it couldn't have gone too well.

### From Itamar Herzberg (917) 494 – 3402 to Edward Kountze (202) 677 - 2271

### 02/23/2017 at 4:39pm

Hi Ed. Following up on our conversation. 1) did the heating contractor come by yesterday or today. As of last night, my heating unit did not appear untouched. 2) have you aligned with your partners? I'm happy to work through you, but with the documents I received (w/ your signature), I need to be able to resolve in a timely manner. Thanks, Itamar.

Bolden000226

**EXHIBIT 19**

1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3

4    640 OCTAVIA LLC,

5              Plaintiff,

6         vs.                              No. C-18-01047

7    KARL HEINZ PIEPER, et al.;

8              Defendants.

9    ~~~~~~~~~~~~~~~~~~~~~~~~~~

10

11

12                         DEPOSITION OF

13                        EDWARD KOUNTZE

14                          VOLUME I

15

16                        June 10, 2018

17                         11:24 a.m.

18

19

20                       22 Battery Street

21                   San Francisco, California

22

23          THERESA A. NARDELLO, CSR NO. 9966

24

25



1

2

3

4

5

6

7              Deposition of EDWARD KOUNTZE, VOLUME I,

8     taken at 22 Battery Street, Suite 200 San Francisco,

9     California, beginning at 11:24 a.m. and ending at

10    8:32 p.m. on Sunday, June 10, 2018, before THERESA A.

11    NARDELLO, Certified Shorthand Reporter No. 9966.

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                    APPEARANCES OF COUNSEL

2    For Plaintiff:

3         THE WALSTON LAW GROUP
          BY:   GREGORY S. WALSTON, ESQ.
4         4 Charlton Court
          San Francisco, California  94123
5         415.956.9200  Fax 415.956.9205
          Email:  gwalston@walstonlaw.com
6

7    For Defendant:

8         PERETZ & ASSOCIATES
          BY:   DANIEL CRAVENS, ESQ.
9         22 Battery Street, Suite 200
          San Francisco, California  94111
10        415.732.3777  Fax 415.732.3791
          Email:  yperetz@peretzlaw.com
11

12   Also Present:  Karl Heinz Pieper

13

14

15

16

17

18

19

20

21

22

23

24

25



1                    INDEX OF EXAMINATION

2    WITNESS:  EDWARD KOUNTZE, VOLUME I

3

4    EXAMINATION                                      PAGE

5        BY MR. CRAVENS                                  6

6

7

8                      ---oOo---

9

10                 INDEX TO EXHIBITS

11                                                    PAGE

12    Exhibit 1      Deposition Notice of Edward Kountze      6

13    Exhibit 2      Deposition Notice of PMQ regarding      37
                     Plaintiff's claims

14
15    Exhibit 3      Karl Heinz Pieper's 9/9/93 Lease       106
                     Agreement with Bob Dare, 2 pages

16    Exhibit 4      January 25 - October 26 Text           107
                     messages, 9 pages

17
      Exhibit 5      Declaration of Sam Brown               120
18
      Exhibit 6      650 Octavia Trespassing Individuals    155
19                   to Apartment 3, each occurrence
                     separate John Does
20                   March 14 - May 21, 2017

21    Exhibit 7      3/28/17 SFPD Incident Report           183
                     3 pages

22
      Exhibit 8      2/11/18 SFPD Incident Report           223
23
      Exhibit 9      8/21/17 SFPD Incident Report           225
24
      Exhibit 10     2/10/18 SFPD Incident Report           226
25



```
 1               INDEX TO EXHIBITS (continued)

 2                                                    PAGE

 3    Exhibit 11    April 25-26, 2018 Email chain       233
                    Subject:  KALLE PIEPER STOVE
 4                  REPAIR

 5    Exhibit 12    April 23-24, 2018 Email chain       233
                    Subject:  Reply to "Mr Kountze
 6                  to Mr. Pieper regarding stove
                    - April 23 2018"
 7

 8    Exhibit 13    April 25-26, 2018 Email chain       234
                    Subject:  KALLE PIEPER STOVE
 9                  REPAIR

10    Exhibit 14    April 28-29, 2018 Email chain       236
                    Subject:  PGE visit to 640
11                  Octavia #3, 4-28-2018 6:49 PM

12    Exhibit 15    Text messages between Kalle and     237
                    Ed regarding stove
13

14    Exhibit 16    8/26/17 Fax from Ed Kountze to      238
                    Kalle Pieper, 2 pages
15

16    Exhibit 17    11/14/17 Letter from The Walston    241
                    Law Group to Karl Heinz Pieper
17

18    Exhibit 18    11/29/17 Email from Kalle Pieper    246
                    to Jean Boldan, Subject:  Ed's
19                  letter regarding the incident on
                    Aug 21st 2017, 2 pages
20

21    Exhibit 19    Ten-Day Notice to Cure of Quit      250
                    dated 12/1/17
22

23    Exhibit 20    12/6/17 Letter from Ashley Klein    250
                    to Greg Walston, 2 pages
24

25    Exhibit 21    12/15/17 Three-Day Notice to Quit   251
                    or Cure

      Exhibit 22    12/19/17 Letter from Ashley Klein   251
                    to Greg Walston, 2 pages

      Exhibit 23    Declaration of Edward Kountze        251
```



1              San Francisco, California;

2           Sunday, June 10, 2018; 11:24 a.m.

3              (Deposition Exhibit 1 marked.)

4                     EDWARD KOUNTZE,

5   having been first duly sworn, testified as follows:

6                     EXAMINATION

7   BY MR. CRAVENS:

8       Q   Good morning, Mr. Kountze.

9       A   Good morning.

10      Q   Thank you for coming in on a Sunday.  My name's

11  Daniel Cravens.  I am the attorney who is representing

12  Mr. Pieper in this matter.  Have you ever had your

13  deposition taken before?

14      A   Yes.

15      Q   All right.  On how many occasions have you had

16  your deposition taken?

17      A   I don't remember exactly.

18      Q   All right.  Well, I'm entitled to your best

19  recollection, the fullest extent of your memory and

20  sometimes if you can't remember exactly, that's an

21  estimate.  You know, two to three times, 10 to 15 times,

22  I mean, sometimes for experts it's literally 200 to 300

23  times, but the fullest extent of your memory, whatever

24  that is, I'm entitled to.  So what is your best estimate

25  as to the number of times you've been deposed?



```
1        Q   All right.  Is that action resolved now?
2        A   Yes.
3        Q   Now, have you -- do you recall any other
4    depositions that you have given?
5        A   I don't remember.
6        Q   Okay.  Have you ever brought a lawsuit for
7    unlawful detainer besides this one?
8        A   I don't remember.
9        Q   Have you ever been involved in a lawsuit besides
10   the -- the incident action here and the two actions that
11   you've already mentioned?
12       A   No, I don't believe so.
13       Q   Okay.  Have you ever owned real property?
14       A   Yes.
15       Q   At present, what real property do you own?
16       A   I own property in Florida; I own property in
17   California.  At present, those are the only two that I
18   can think of.
19       Q   Okay.  Let's start with California.  What
20   property do you own in California?
21       A   I'm the main partner on a LLC out of Wyoming
22   that owns 640 Octavia.
23       Q   Who are the other partners?
24       A   There are none.
25       Q   Well, when you say you're the main partner, that
```



```
 1   sounds --

 2       A   I meant that I am the sole partner.

 3       Q   All right.

 4       A   Could you ask the question again?

 5       Q   I think I asked the question, and I think I have

 6   an answer.  Did you --

 7       A   Could you ask the question again?

 8       Q   No, I'm not going to ask the question again.  If

 9   you want to change your answer, you can change your

10   answer.  That's okay.

11       A   I'm not asking you to change my answer.  I'm

12   asking you to be more specific on the questions.

13       Q   Okay.  Do you own any other property besides 640

14   Octavia?

15       A   As I said before, I don't directly own 640

16   Octavia.  I'm the main partner of a Wyoming LLC that owns

17   640 Octavia in San Francisco.

18       Q   You say you're the main partner, and I will

19   represent to you that the main partner makes it sounds

20   like there's an additional partner --

21       A   There is not an additional partner.

22           MR. WALSTON:  Wait for him to finish the

23   question.

24           THE WITNESS:  All right.

25   BY MR. CRAVENS:
```



1      Q    I just want to be clear that at some point if we

2   discover there is another partner, and if you refer back

3   to this and you say, Well, look, I said I was the main

4   partner, I'll then say, Look, I made it very clear, and

5   you made it very clear that you were the sole partner.

6      A    That's why I asked you to ask the question with

7   more specificity.

8      Q    Now, were there ever any other partners at 640

9   Octavia from the time that it was formed until the

10   present?

11     A    No.

12     Q    So from the time that 640 Octavia LLC was formed

13   to the present, you were the sole partner; is that

14   correct?

15     A    Correct, the sole partner, hundred percent

16   partner.

17     Q    All right.  And sometimes an LLC is referred to

18   as having members.

19     A    Correct.

20     Q    It would also be true that you were the sole

21   member, correct?

22     A    Correct.

23     Q    Okay.  All right.  Now, other than 640 Octavia,

24   did you have -- do you have, at present, an ownership

25   interest in any other property in California?



1      A    No.

2      Q    Okay.  Are you a member or owner of any

3   organization that owns property in California?

4      A    Repeat the question.

5      Q    Sure.  Are you a member or owner of any

6   organization, a corporation or LLC, partnership or

7   otherwise, that owns property in California besides 640

8   Octavia, LLC?

9      A    I think I answered that.  I am not -- I do not

10  have -- I have no interest in any other LLC that owns any

11  property in California.

12     Q    And you limited it to LLC, which I appreciate,

13  but it requires me now to ask a follow-up question.  Are

14  you -- let me ask it this way:  Do you have an interest

15  in any organization besides 640 Octavia, LLC that has an

16  ownership interest in any property in California?

17     A    No.

18     Q    Now, did you own -- since 2016, did you have an

19  ownership interest in any property in California other

20  than 640 Octavia Street?

21     A    Could you repeat the question?

22     Q    Sure.  Since 2016, did you have an ownership

23  interest in any other property besides 640 Octavia?

24          MR. WALSTON:  Anywhere?

25          MR. CRAVENS:  In California.



 1      A   No.

 2      Q   Okay.  Now, in Exhibit 23 when you wrote that

 3   you're part owner of 640 Octavia, was that just a

 4   mistake?

 5      A   Can you point out where it is?

 6      Q   No. 1, it says, "I am part owner of 640 Octavia,

 7   LLC."  Was that a mistake or was that an accurate

 8   statement?

 9      A   That was a mistake.

10      Q   All right.  Did you review your declaration

11   before you signed it?

12      A   Yes, but I believe this might have been a

13   mistake that I inadvertently -- I was -- on March 28th, I

14   believe I was -- might have been in Wyoming that day or

15   Colorado.  I don't know.  I travel a lot.

16      Q   All right.  In Paragraph 3 where you wrote that

17   some of the people that you observed looked disheveled

18   and menacing.  What did you mean by menacing?

19           MR. WALSTON:  I'm sorry.  You said Paragraph 3?

20   BY MR. CRAVENS:

21      Q   Paragraph 3.

22      A   All right.  Paragraph three on Page 1.

23      Q   On Page 2 at Line 1?

24      A   Page 2.  Let's see.  Page 2, line 1.  Repeat the

25   question, please.



**EXHIBIT 20**

Pages 1 - 176

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

640 Octavia, LLC,                     )
                                      )
            Plaintiff,                )   **No.  CV 18-1047 WHA**
                                      )
vs.                                   )   (**Pages 15-56 placed under**
                                      )    **seal by Order of the Court)**
Karl Heinz-Pieper,                    )
                                      )
            Defendant.                )
_____)

San Francisco, California
Monday, July 16, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:          THE WALSTON LAW GROUP
                        Four Charlton Court
                        San Francisco, CA   94123
                   **BY: GREGORY WALSTON, ESQ.**
                        **CLARA PORTER, ESQ.**


For Defendant:          PERETZ & ASSOCIATES
                        22 Battery Street, Suite 200
                        San Francisco, CA   94111
                   **BY: YOSEF PERETZ, ESQ.**
                        **DAVID GARIBALDI, ESQ.**

                        CRAVENS & ASSOCIATES
                        516 West Shaw Avenue, Suite 200
                        Fresno, CA   93704
                   **BY: DANIEL J. CRAVENS, ESQ.**


Reported By:            Vicki Eastvold, RMR, CRR
                        Official Reporter

<u>**I N D E X**</u>

Monday, July 16, 2018 - Volume 1


**<u>PLAINTIFF'S WITNESS</u>**

<u>MONTOYA, JOSE</u>
    Under Seal by Court Order
    (Pages 15-56)

| **<u>DEFENDANT'S WITNESSES</u>** | **<u>PAGE</u>** | **<u>VOL.</u>** |
|---|---|---|
| **<u>BROWN, SAMUEL</u>** | | |
| (SWORN) | 57 | 1 |
| Direct Examination by Mr. Cravens | 58 | 1 |
| Cross-Examination by Mr. Walston | 69 | 1 |
| Redirect Examination by Mr. Cravens | 73 | 1 |
| **<u>KOUNTZE, EDWARD</u>** | | |
| (SWORN) | 75 | 1 |
| Direct Examination by Mr. Peretz | 75 | 1 |
| Cross-Examination by Mr. Walston | 94 | 1 |
| Redirect Examination by Mr. Peretz | 114 | 1 |
| **<u>PIEPER, KARL</u>** | | |
| (SWORN) | 143 | 1 |
| Direct Examination by Mr. Peretz | 144 | 1 |
| Cross-Examination by Mr. Walston | 161 | 1 |

PROCEEDINGS

```
 1   Monday - July 16, 2018                           7:57 a.m.

 2                     P R O C E E D I N G S

 3                         ---oOo---

 4        THE CLERK:  Calling Civil Action 18-1047, 640 Octavia,

 5   LLC, versus Heinz-Pieper.

 6      Counsel, please approach the podium and state your

 7   appearances for the record.

 8        THE COURT:  Whoever that is back there can have a

 9   seat.

10        MR. WALSTON:  Good morning, Your Honor.  Gregory

11   Walston for the plaintiff.

12        THE COURT:  Welcome.

13        MR. PERETZ:  Good morning, Your Honor.  Yosef Peretz,

14   Daniel Cravens, and David Garibaldi for the defendant.

15        THE COURT:  Welcome to you.  All right.  We're here

16   for an evidentiary hearing.  Anything -- let me hear from you

17   as to what witnesses we're going to hear from this morning.

18   Let's hear from the plaintiff first.

19        MR. WALSTON:  All right.  We will call all the

20   declarants that we offered for our motion for a preliminary

21   injunction.  That is, Kountze, Martinson, Brown.

22        THE COURT:  Why are you going to call them if I've

23   already seen their declarations?

24        MR. WALSTON:  If it's the Court's intention to limit

25   this proceeding only to what was unearthed during recent
```

```
 1          THE COURT:  All right.  Back to work.  Please be
 2    seated.  Thank you.
 3       Mr. Peretz, you can call your next witness.
 4          MR. PERETZ:  Thank you, Your Honor.  The defendant
 5    will call Edward Kountze to testify on cross.
 6          THE COURT:  Okay.  Mr. Kountze.  Please come forward.
 7                     EDWARD KOUNTZE,
 8    called as a witness for the Defendant, having been duly sworn,
 9    testified as follows:
10          THE CLERK:  Please be seated.  Please state your full
11    name and spell your last name for the record.
12          THE WITNESS:  Edward Harris Kountze.  Spelled
13    K-O-U-N-T-Z-E.
14          THE COURT:  Welcome again.
15       Please go ahead, counsel.
16          MR. PERETZ:  Thank you, Your Honor.
17                   DIRECT EXAMINATION
18    BY MR. PERETZ:
19    Q.   Good morning Mr. Kountze.  There is an binder, a black
20    binder there.  I'm going to make reference to it.
21    A.   Yes.
22    Q.   Okay.  Good.  So Mr. Kountze, at the first declaration you
23    submitted in this matter you stated that you are part owner of
24    640 Octavia, LLC, correct?
25    A.   I am the full owner of 640 Octavia, LLC.  Not part owner.
```

**KOUNTZE - DIRECT / PERETZ**

1   **Q.**   Who else owns Odlaw, Inc.?

2   **A.**   I own it completely.

3   **Q.**   Why did you state in your testimony that Odlaw, Inc., owns

4   640 Octavia, LLC, rather than yourself personally?

5   **A.**   I own the corporation that owns 640 Octavia, LLC, and I'm

6   the sole owner of 640 Octavia, LLC.

7   **Q.**   Earlier in your testimony you said that you're the owner

8   of 640 Octavia, LLC.  Correct?

9   **A.**   I am the sole partner and the sole owner.

10  **Q.**   Okay.  Now --

11          **THE COURT:**  Has there ever been at any time in the

12  past someone as a partner in -- or owner -- of Odlaw, Inc., or

13  640 Octavia other than yourself?

14          **THE WITNESS:**  No, sir.

15          **THE COURT:**  All right.

16  **BY MR. PERETZ:**

17  **Q.**   Now, you also stated that you're the owner of your house

18  -- of the house in Florida, correct?

19  **A.**   Yes, I am.

20  **Q.**   But the actual legal owner is a trust that your father

21  established.  Not yourself.  Correct?

22  **A.**   My father and I both established the trust, yes.

23  **Q.**   The name of this trust is Denman Kountze Trust.  Correct?

24  **A.**   Yes.

25  **Q.**   And who's Denman Kountze?

 1   **A.**   He's my father.

 2   **Q.**   And he established the trust, correct?

 3   **A.**   He established the trust, yes.

 4   **Q.**   And the trust owns the property in Florida, not yourself,

 5   correct?

 6   **A.**   Well, under advice of counsel, under Florida law it vests

 7   to the beneficiary on date of death.

 8          **THE COURT:**  Whose death?

 9          **THE WITNESS:**  On my father's death.

10          **THE COURT:**  And has he passed away?

11          **THE WITNESS:**  He passed away on August 25, 2005.

12          **THE COURT:**  All right.

13   **BY MR. PERETZ:**

14   **Q.**   And you don't remember Mr. Pieper ever having a roommate

15   at his unit, correct?

16   **A.**   I never was appraised of any legal roommate that he had,

17   no.

18          **MR. PERETZ:**  Your Honor, I'd like to read his

19   testimony.

20          **THE COURT:**  Read it exact.  You have to read the

21   question -- say "Question," read it exact, say "Answer," read

22   it exact.  No fixing it up.

23          **MR. PERETZ:**  That's not my practice, Your Honor.

24   **BY MR. PERETZ:**

25   **Q.**   At page 48, lines 23, to page -- sorry -- page 47, line

 1   That operating agreement names you as a member of the LLC,

 2   correct?

 3   **A.**   Do you want me to get this notebook back out?  The big --

 4   **Q.**   Yes.  No. 4.

 5   **A.**   No. 4?

 6   **Q.**   Yes.  In the plaintiff's binder.

 7   **A.**   All right.  Oh.  In the plaintiff binder.

 8   **Q.**   Yes.

 9          **THE COURT:**  Go help him, please.

10          **THE WITNESS:**  I have it right in front of me.  Yes.

11   **BY MR. PERETZ:**

12   **Q.**   That's the operating agreement.  It names you as the

13   member, correct?

14   **A.**   Correct.

15   **Q.**   And then --

16          **MR. PERETZ:**  May I approach, Your Honor?

17          **THE WITNESS:**  Could I go over this real quick?

18       Yes.

19   **BY MR. PERETZ:**

20   **Q.**   And then you gave a second declaration before this Court

21   that was filed on April 26, 2018.  And you have it before you

22   now, sir?

23   **A.**   Yes.  Let me move this notebook over.

24   **Q.**   That's the one --

25   **A.**   Yeah.  You just put this in front of me.

**KOUNTZE - REDIRECT / PERETZ**

1  **Q.**   And in paragraph 1 you say:  I have an ownership interest

2  in 640 Octavia, LLC.  Correct?

3  **A.**   Yes.

4  **Q.**   Then at the end of that paragraph you say:  No other

5  people have an ownership interest.  Correct?

6  **A.**   Correct.

7  **Q.**   Now, you earlier testified that the ownership of 640

8  Octavia, LLC, is through Odlaw, Inc., a company that you own?

9  **A.**   Yes.

10  **Q.**   So why is the operating agreement naming you as the member

11  and not Odlaw, Inc.?

12  **A.**   I don't believe we've activated the -- you'd have to ask

13  Ms. Hemingway.  She is the attorney, the California attorney,

14  that set all of this up.  She's spoken to Mr. Walston about

15  this.

16  **Q.**   And you testified that the operating agreement, Exhibit 4,

17  is the current operating agreement of the company, correct?

18  **A.**   Yes.

19  **Q.**   And in your declaration you say:  I have an ownership

20  interest in 640 Octavia, LLC.

21       And that's filed in April 26, 2018.  Why didn't you state

22  that you own 640 Octavia, LLC, through Odlaw?

23  **A.**   I'd have to refer to my attorney.  He talked to

24  Ms. Hemingway.  I allow attorneys to handle this.  I set up a

25  Delaware corporation, I set up a Wyoming LLC to have the

 1   ownership of the building.  There's no other owners.  I'm the

 2   sole partner, or sole owner, of 640, LLC.  I'm not certain if

 3   she's activated that corporation.  She spoke to my attorney

 4   about that.  All right?

 5   **Q.**   Now, you served two three-day notices on my client about

 6   the alleged illegal or nuisance activity at the building.

 7   Correct?

 8   **A.**   Through my attorney.  I did not serve them.  No, I did

 9   not.

10   **Q.**   You caused them to be served on my client, correct?

11   **A.**   Yes.

12   **Q.**   Okay.  And one of them is Exhibit 19, correct?

13   **A.**   All right.

14   **Q.**   In the defense binder.  The last binder.  Not that one.

15          **MR. PERETZ:**  May I approach, Your Honor?

16          **THE COURT:**  Go ahead.

17          **THE WITNESS:**  Oh, there.  Okay.  I've got a lot of

18   stuff here.

19   **BY MR. PERETZ:**

20   **Q.**   I understand.  Let me help you find 19.

21   **A.**   I've got 19 here.

22   **Q.**   Perfect.  So that's one of the notices, correct?

23   **A.**   Give me some time to read this.

24   **Q.**   Please.  Take your time.

25          (Pause.)

PROCEEDINGS

---oOo---

**CERTIFICATE OF REPORTER**

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Wednesday, July 25, 2018

_____/s/Vicki Eastvold_____

Vicki Eastvold, RMR, CRR
U.S. Court Reporter

# EXHIBIT 21

Pages 1 - 176

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

640 Octavia, LLC,              )
                               )
            Plaintiff,         )  **No.  CV 18-1047 WHA**
                               )
vs.                            )  (**Pages 15-56 placed under**
                               )   **seal by Order of the Court)**
Karl Heinz-Pieper,             )
                               )
            Defendant.         )
_____)


                         San Francisco, California
                         Monday, July 16, 2018

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:          THE WALSTON LAW GROUP
                        Four Charlton Court
                        San Francisco, CA   94123
                   **BY:  GREGORY WALSTON, ESQ.**
                        **CLARA PORTER, ESQ.**


For Defendant:          PERETZ & ASSOCIATES
                        22 Battery Street, Suite 200
                        San Francisco, CA   94111
                   **BY:  YOSEF PERETZ, ESQ.**
                        **DAVID GARIBALDI, ESQ.**


                        CRAVENS & ASSOCIATES
                        516 West Shaw Avenue, Suite 200
                        Fresno, CA   93704
                   **BY:  DANIEL J. CRAVENS, ESQ.**


Reported By:            Vicki Eastvold, RMR, CRR
                        Official Reporter

<u>**I N D E X**</u>

Monday, July 16, 2018 - Volume 1


<u>**PLAINTIFF'S WITNESS**</u>

<u>MONTOYA, JOSE</u>
        Under Seal by Court Order
        (Pages 15-56)


| <u>**DEFENDANT'S WITNESSES**</u> | <u>**PAGE**</u> | <u>**VOL.**</u> |
|---|---|---|
| <u>**BROWN, SAMUEL**</u> | | |
| (SWORN) | 57 | 1 |
| Direct Examination by Mr. Cravens | 58 | 1 |
| Cross-Examination by Mr. Walston | 69 | 1 |
| Redirect Examination by Mr. Cravens | 73 | 1 |
| | | |
| <u>**KOUNTZE, EDWARD**</u> | | |
| (SWORN) | 75 | 1 |
| Direct Examination by Mr. Peretz | 75 | 1 |
| Cross-Examination by Mr. Walston | 94 | 1 |
| Redirect Examination by Mr. Peretz | 114 | 1 |
| | | |
| <u>**PIEPER, KARL**</u> | | |
| (SWORN) | 143 | 1 |
| Direct Examination by Mr. Peretz | 144 | 1 |
| Cross-Examination by Mr. Walston | 161 | 1 |

1  <u>**Monday - July 16, 2018**</u>                              <u>**7:57 a.m.**</u>

2                          <u>**P R O C E E D I N G S**</u>

3                              **---oOo---**

4          **THE CLERK:**  Calling Civil Action 18-1047, 640 Octavia,

5   LLC, versus Heinz-Pieper.

6      Counsel, please approach the podium and state your

7   appearances for the record.

8          **THE COURT:**  Whoever that is back there can have a

9   seat.

10         **MR. WALSTON:**  Good morning, Your Honor.  Gregory

11  Walston for the plaintiff.

12         **THE COURT:**  Welcome.

13         **MR. PERETZ:**  Good morning, Your Honor.  Yosef Peretz,

14  Daniel Cravens, and David Garibaldi for the defendant.

15         **THE COURT:**  Welcome to you.  All right.  We're here

16  for an evidentiary hearing.  Anything -- let me hear from you

17  as to what witnesses we're going to hear from this morning.

18  Let's hear from the plaintiff first.

19         **MR. WALSTON:**  All right.  We will call all the

20  declarants that we offered for our motion for a preliminary

21  injunction.  That is, Kountze, Martinson, Brown.

22         **THE COURT:**  Why are you going to call them if I've

23  already seen their declarations?

24         **MR. WALSTON:**  If it's the Court's intention to limit

25  this proceeding only to what was unearthed during recent

1        **MR. WALSTON:**  Yes.

2        **THE COURT:**  So I want to see it.  Even if I have to

3   see it as a supplement, I want to see it before we -- I make

4   any final decisions.

5        **MR. WALSTON:**  All right.

6        **THE COURT:**  All right.  I'll see you in 45 minutes.

7        **MR. PERETZ:**  Thank you, Your Honor.

8             (Recess taken at 11:22 a.m.)

9             (Proceedings resumed at 11:57 a.m.)

10        **THE COURT:**  One of the issues on the diversity of

11   jurisdiction point is that if the LLC is owned by the

12   corporation, as stated in one of the emails, then we need to

13   get into where that principal place of business is and/or where

14   it's incorporated.  Does the record help me on this point?

15        **MR. WALSTON:**  No, it does not.  Because it's our

16   contention that the corporation does not own the LLC despite

17   what the emails say.

18        **THE COURT:**  But your own client has said otherwise.

19        **MR. WALSTON:**  My own client said -- has said otherwise

20   to various people.  I would --

21        **THE COURT:**  What am I supposed to believe?

22        **MR. WALSTON:**  You're supposed to believe the

23   documents.  I think that my client has made it clear that he --

24        **THE COURT:**  The document said that the corporation

25   owned it.

1          **MR. WALSTON:**  No, they don't.  They say that

2     Mr. Kountze owns 640 Octavia, LLC.

3          **THE COURT:**  I'll find what I'm referring -- he sent an

4     email to somebody.  And am I supposed to just disregard that?

5          **MR. WALSTON:**  Well, I think that there's a reasonable

6     explanation for it.  Because my client has clearly said he

7     makes these statements for purposes of negotiating.  But he's

8     produced -- look, he's produced documents that say otherwise.

9     And I think with a reasonable explanation, the documents are to

10    be believed.  And the documents say on page 2 of the operating

11    agreement under the LLC that Mr. Kountze is 100 percent owner

12    of 640 Octavia, LLC.

13         **MR. PERETZ:**  Your Honor, that's a different email.

14    The email you're referencing is Exhibit 24.  It's not about

15    negotiating with any buyout.  It's to his dear friend,

16    Mr. Martinson.

17         **THE COURT:**  The one that I'm referring to is --

18         Can somebody go get my glasses?  I think I left them in

19    the --

20         What I'm referring to is a gmail to Mr. Essene that

21    begins:  This is from 640 Octavia and Odlaw, Inc., owners of

22    640, LLC, and owner of 640 Octavia building.

23         I don't see how that was negotiating anything.

24         **MR. WALSTON:**  It probably wasn't, and I don't know why

25    he did it.  But the fact is that he said it's not true.  And I

 1   think anybody who looks -- when you look at the documents, it's

 2   clear that it's not true.  The documents unequivocally say --

 3        **THE COURT:**  Show me that you're referring to that

 4   operating agreement.  Where can I find the operating agreement

 5   again?

 6        **MR. WALSTON:**  The operating agreement is Exhibit 4

 7   from our exhibits.

 8        **THE COURT:**  All right.  So this is a -- this is not an

 9   official document.  This is not something that's filed with the

10   -- that is certified by the Secretary of State.  This is just

11   some internal document that for all we know is a draft.

12        **MR. WALSTON:**  Well, that's true.  So -- the official

13   filed document is Exhibit 3.  That references 640 Octavia, LLC,

14   being a limited liability company on file with the state of

15   Wyoming.

16        There are, in turn, attached as Exhibit 4 and 5, the

17   articles of incorporation and operating agreement for 640

18   Octavia, LLC; and neither of which say anything about Odlaw.

19   It's clear from the operating agreement on page 2, initial

20   members, one member, Edward Kountze, with an ownership interest

21   listed at 100 percent.  And the testimony is clear that there

22   is no superseding or subsequent documents.

23        So I --

24        **THE COURT:**  Whose testimony?

25        **MR. WALSTON:**  My client, Mr. Kountze.

**EXHIBIT 22**

1              UNITED STATES DISTRICT COURT

2                        FOR THE

3              NORTHERN DISTRICT OF CALIFORNIA

4

5   640 OCTAVIA, LLC,                )
                                     )
6                   Plaintiff,       )
                                     )
7   vs.                              )   No.
                                     )   3:18-cv-01047-WHA
8   KARL-HEINZ PIEPER, et al.,       )
                                     )
9                   Defendants.      )
    _____    )

10

11

12

13          DEPOSITION OF NEIL B. MARTINSON

14                      Volume I

15              San Francisco, California

16               Monday, June 11th, 2018

17

18

19

20

21   REPORTED BY:
     MONICA LEPE-GEORG
22   CSR No. 11976

23   Job No. J2381630

24

25   PAGES 1 - 93



1

2

3          DEPOSITION OF NEIL B. MARTINSON, VOLUME

4   NO. I, taken on behalf of DEFENDANTS, at 22 Battery

5   Street, Second Floor, San Francisco, California,

6   beginning at 3:08 p.m. and ending at 5:04 p.m., on

7   Monday, June 11th, 2018, before Monica Lepe-Georg,

8   Certified Shorthand Reporter No. 11976.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1                        APPEARANCES

 2

 3   FOR PLAINTIFF:

 4          THE WALSTON GROUP

 5          BY:  GREGORY S. WALSTON, ESQ.

 6          Four Charlton Court

 7          San Francisco, California 94123

 8          Telephone:  415.956.9200

 9          Fax:  415.956.9205

10          E-mail:  gwalston@walstonlaw.com

11

12   FOR DEFENDANTS:

13          CRAVENS & ASSOCIATES

14          BY:  DANIEL J. CRAVENS, ESQ.

15          516 W. Shaw Avenue

16          Suite 200

17          Fresno, California 93704

18          Telephone:  559.421.9380

19          Fax:  855.273.3797

20          E-mail:  dcravens@cravenassociates.com

21

22   Also Present:

23          Karl-Heinz Pieper

24          Edward Kountze

25          Jose Montoya Garcia
```



```
 1              INDEX OF EXAMINATIONS

 2

 3                                              PAGE

 4   EXAMINATION BY MR. CRAVENS                    5

 5

 6

 7

 8              INDEX OF EXHIBITS

 9

10   EXHIBIT NO.        DESCRIPTION            PAGE

11   Exhibit 1     Subpoena to Testify at a       5

12                 Deposition in  Civil Action

13   Exhibit 2     Documents Bates-Nos.          10

14                 Martinson 000001 to

15                 Martinson 000045, e-mails and

16                 pictures

17   Exhibit 3     Text messages attached and    11

18                 replaced with new

19                 Bates-numbered Exhibit 3

20   Exhibit 3     Text messages, Bates-Nos.      22

21                 Martinson 000046 to

22                 Martinson 000064

23   Exhibit 4     Declaration of Neil Martinson  77

24

25
```



```
 1                San Francisco, California

 2                Monday, June 11th, 2018

 3                3:08 p.m. - 5:04 p.m.

 4                     ---oOo---

 5        (Exhibit 1 was marked for identification.)

 6

 7                NEIL B. MARTINSON,

 8    having been administered an oath, was examined and

 9    testified as follows:

10                     EXAMINATION

11    BY MR. CRAVENS:

12        Q.   Mr. Martinson, my name is Daniel Cravens,

13    and I'm representing Mr. Pieper in this litigation.

14    I appreciate you coming for your deposition today.

15            Have you ever been deposed before?

16        A.   Yes.

17        Q.   All right.  On how many occasions have you

18    been deposed?

19        A.   Once.

20        Q.   One occasion, all right.  When was that?

21        A.   It was in 2014.

22        Q.   Okay.  Were you a party to that -- were you

23    a party to the litigation in which you were deposed?

24        A.   Yeah.

25        Q.   All right.  Were you suing someone or were
```



 1   you being sued?

 2        A.   Being sued.

 3        Q.   Okay.  What was the case name for that?

 4        A.   Case name?

 5        Q.   Yeah.  What was the matter that you were

 6   being sued in?

 7        A.   It was an eviction case.

 8        Q.   An eviction case?

 9        A.   Yes.

10        Q.   You were being sued for eviction?

11        A.   Yes.

12        Q.   Where were you residing at the time?

13        A.   1082 Howard Street.

14        Q.   In what city?

15        A.   San Francisco.

16        Q.   Who was your landlord at 1082 Howard

17   Street?

18        A.   Pat.  I can't remember her last name.  Oh,

19   wait a minute.  Jurado.

20             THE REPORTER:  Jurado?

21             THE WITNESS:  J-u-r-a-d-o, Jurado --

22   Jurado.

23   BY MR. CRAVENS:

24        Q.   What was the resolution of the eviction in

25   2014?



1       A.   We settled it with a buyout, but there were
2    a few different cases.
3       Q.   What do you mean by that?
4       A.   My lawyer trounced her lawyer a couple
5    times.
6       Q.   You were -- there were multiple unlawful
7    detainers filed against you?
8       A.   I think so.  I'm not very good with legal
9    terminology.  Sounds about right.
10      Q.   These were in San Francisco?
11      A.   Uh-hm.
12      Q.   "Yes"?
13      A.   Uh-hm.
14      Q.   All right.  So you may know this from your
15   deposition before, but in a deposition, the real
16   rule is you tell the truth, the whole truth and
17   nothing but the truth.  Do you understand?
18      A.   Yes.
19      Q.   This is the same oath you'd take in front
20   of a judge if you were to give testimony at trial in
21   this matter.  Do you understand?  "Yes"?
22      A.   Yes.
23      Q.   One of the things -- although this is a
24   relatively informal setting, there are some things
25   that we need to do differently than in a normal



 1  conversation.  One of them is -- the court reporter

 2  here is --

 3        A.    I understand.

 4        Q.    -- writing everything that we say.

 5        A.    Uh-hm.

 6        Q.    So your natural tendency is to say "uh-hm"

 7  or "na-huh" --

 8        A.    "Yes," "no."

 9        Q.    -- or nod your head or shake your head.

10  Although I know what that means, in order for her to

11  have a nice clean record, it's important to use

12  words.

13        A.    I understand.

14        Q.    The other thing, it's perfectly natural to

15  interrupt each other in ordinary conversation, but,

16  again, it makes it difficult for the court reporter

17  to record that.  It's important that you wait until

18  I finish my question and I wait until you finish

19  your answer.  Do you understand?

20        A.    Yes.

21        Q.    All right.  Okay.  So where do you reside

22  at present?

23        A.    Los Angeles.

24        Q.    All right.  What's the address?

25        A.    3110 North Broadway, Los Angeles,



 1   California 90031.

 2       Q.   Okay.  And how long have you resided at

 3   that address?

 4       A.   Year and a half.

 5       Q.   Okay.  And are you -- what's your

 6   occupation?

 7       A.   I'm a writer and an impresario.

 8       Q.   Okay.  Writer, I think I understand.  What

 9   is an impresario?

10       A.   I host and promote musical events.

11       Q.   All right.  Have you ever been convicted of

12   a felony?

13       A.   No.

14       Q.   How do you -- how long ago did you meet

15   Mr. Kountze?

16       A.   I think it was about 25 years ago.

17   Somewhere in --

18       Q.   How did you meet Mr. Kountze?

19       A.   Through a mutual friend.

20       Q.   How would you describe your relationship

21   with Mr. Kountze over the last 25 years?

22       A.   We've been acquainted all that time.  In

23   and out of touch.  Friendly.

24       Q.   Okay.

25       A.   Friendly acquaintances.

